**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X

Chloe Coscarelli, Chef Chloe LLC, CC
Hospitality Holdings LLC, and CKC Sales,
LLC,

               Plaintiffs,

      -against-

ESquared Hospitality LLC and BC Hospitality
Group LLC (formerly CCSW LLC),

           Defendants.

------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:
:

INDEX NO.  18-cv-5943

**COMPLAINT**
**JURY TRIAL DEMANDED**

## INTRODUCTION

1.     Chloe Coscarelli ("Chloe") is universally and widely known as Chloe.

2.     Chloe attracted significant media attention in June 2010 as the first vegan chef to capture the top prize on a nationally televised cooking competition, Food Network's *Cupcake Wars*, and has since been recognized for bringing vegan cuisine to the mainstream as an award-winning chef, television personality, and best-selling cookbook author.

3.     Debunking the myth that vegan cooking is bland and visually unenticing, Chloe shares her bright, colorful, and tasteful recipes using fresh, healthy ingredients.  She has published four best-selling cookbooks, CHLOE'S KITCHEN (Simon & Schuster 2012), CHLOE'S VEGAN DESSERTS (Simon & Schuster 2013), CHLOE'S VEGAN ITALIAN KITCHEN (Simon & Schuster 2014), and CHLOE FLAVOR (Penguin Random House 2018).

4.     *The New York Times*, *Zagat*, and *Forbes* have each named Chloe to their "30 Under 30" lists.  Chloe cooked the first-ever sold out vegan dinner at South Beach Wine & Food Festival, and she makes annual appearances at the New York City Wine and Food Festival.

Chloe has also had the honor of hosting the very first vegan dinner at the prestigious James

Beard House.  Chloe is the celebrity chef for The Humane Society of the United States' annual

gala, a dinner which last year raised over 3 million dollars for animal welfare.

5.      Chloe makes frequent appearances on national television networks such as ABC,

NBC, CBS, CNN, VH1, Food Network, and The Cooking Channel, and she is a regular

contributor to NBC's *The TODAY Show*, where she demonstrates her vegan recipes to a large

national audience.

6.      Chloe has been featured in countless newspapers and magazines such as the *New

York Times*, the *Los Angeles Times*, *O, The Oprah Magazine*, *Everyday With Rachael Ray*,

*Martha Stewart's Whole Living*, *Vogue*, *Cosmopolitan Magazine*, *Glamour Magazine*, *People

Magazine*, *Self Magazine*, *Star Magazine*, *Fitness Magazine*, *Shape Magazine*, *VegNews

Magazine*, *Vegetarian Times Magazine* and featured on the cover of *Woman's World Magazine*

as well as *Vegan Lifestyle Magazine*.  Chloe has also been profiled in industry press outlets such

as *Business Insider*, *Wall Street Journal*, *Nation's Restaurant News*, *Zagat*, and *Bon Appetit*.

Chloe has been described as a "visionary vegan restaurateur" and "America's favorite vegan

chef," as she is known for her unique recipes and pioneering creativity with vegan cuisine.

7.      In late 2014, Chloe entered into a business partnership with ESquared Hospitality

LLC ("ESquared") for the limited purpose of establishing a vegan fast casual restaurant

operating under the name "by Chloe," which was chosen to take advantage of Chloe's fame and

reputation.  The vegan restaurant was owned by a company then called CCSW LLC ("CCSW"),

which subsequently changed its name to BC Hospitality Group LLC ("BCHG"), one of the

defendants in this action.  The agreement governing the partnership specified that Chloe (through

a wholly owned limited liability company called Chef Chloe LLC) and ESquared each own 50%

of BCHG (formerly CCSW).  Chloe brought recipes, expertise, and fame to the venture.  On

opening day in July 2015, there was a line around the block of customers waiting to try Chloe's

food.  Her vegan restaurant was an enormous hit in large part because of Chloe's name and

reputation in the vegan food space.

8.      Chloe also knew the value of her name and the importance of protecting it.  She

agreed BCHG could use her name only after BCHG expressly agreed that Chloe owns all right,

title, and interest to her name and rights of publicity, and that BCHG's use of "by Chloe" was

limited, conditional, and subject to Chloe's ownership rights.  Defendants further agreed that

BCHG could use Chloe's name only to the extent permitted by a separate Name, Face And

Likeness Agreement (the "NFL Agreement").  Under the NFL Agreement, BCHG was only

permitted to use Chloe's name or rights of publicity as a mere licensee, only in ways specifically

approved by Chloe, and only so far as BCHG abided by the terms and conditions set forth

therein.  In the event BCHG breached these provisions, or interfered with Chloe's continued

ownership and use of her name and rights of publicity, Chloe had the right to terminate BCHG's

license effective immediately.

9.      But Chloe's business relationship with ESquared soured and from mid-2016 to

early 2017 she and ESquared were involved in an arbitration proceeding that concluded on

March 21, 2017.  One day after the arbitration concluded, ESquared purported to exercise a

clause in the partnership agreement to expel Chef Chloe LLC from the Company and take

Chloe's 50% ownership of the Company for itself without paying any money in exchange.

Chloe is fighting this illegal and brazen attempt to steal her ownership interest.  BCHG currently

operates ten restaurants in the United States and one in London that they continue to represent as

"by Chloe," with plans to expand rapidly.

10.     But despite taking action to expel Chloe from the Company she founded and which operates restaurants that bear her name, from March 22, 2017 to the present, BCHG and ESquared have continued to willfully exploit Chloe's name, fame, and image for their own benefit, with no right whatsoever to do so.

11.     The Complaint sets forth these causes of action: (1) Breach of Contract and Request for a Preliminary and Permanent Injunction (NFL Agreement); (2) Breach of Contract and Request for a Preliminary and Permanent Injunction (Operating Agreement); (3) Declaratory Judgment that Chloe May Use Her Own Name in Selling Packaged Foods and Beverages and as a Chef; (4) Tortious Interference with a Business Relationship; (5) Declaratory Judgment that Chef Chloe LLC Owns 50% of BCHG and Request for a Preliminary and Permanent Injunction Protecting Chef Chloe LLC's Rights as a Member under the Operating Agreement; (6) Breach of Contract (Operating Agreement) and Request for a Preliminary and Permanent Injunction; (7) Violation of California Civil Code §3344; (8) Violation of California's Common Law Right of Publicity; (8) Violation of California's Common Law Right of Publicity; (9) Federal Unfair Competition (15 U.S.C. §1125); (10) Violation of California Business and Professions Code §17200; (11) Violation of California Business and Professions Code §17500; (12) Violation of the Common Law of Unfair Competition); (13) Unjust Enrichment; (14) Common Law Trademark Infringement; (15) Copyright Infringement; (16) Trademark Infringement under 15 U.S.C. §1114; (17) Violation of 15 U.S.C. §1125(d); (18) Violation of California Civil Code §17525; (19) Cancellation of U.S. Registration No. 4,833,607, False Suggestion of Association under Lanham Act §2(a); (20) Cancellation of U.S. Registration No. 4,833,607, Registration Without Written Consent under Lanham Act §2(c); and (21) Breach of Contract for Failure to Pay 1% Royalty (Contingent).

**PARTIES**

12.     Plaintiff Chloe Coscarelli ("Chloe") is an individual domiciled in Los Angeles County, California.

13.     Plaintiff Chef Chloe LLC ("Chef Chloe") is a California Limited Liability Company wholly owned by Chloe.

14.     Plaintiff CC Hospitality Holdings LLC ("CC Hospitality") is a single member limited liability company organized under the laws of New York, with Chloe as its member.  CC Hospitality owns trademark rights, including:

        a.     Registered trademark for the mark "CHEF CHLOE" for "Providing a website featuring information in the field of recipes and cooking" (Reg. No. 5269199);

        b.     Trademark application for "CHEF CHLOE" for "Catering services; Restaurant services" (Ser. No. 87633292); and

        c.     Trademark application for "CHLOE'S DELICIOUS" for "Sauces; salad dressings; savory sauces used as condiments; chutneys; packaged meals consisting primarily of pasta or rice; mixes for making baking doughs and batter" (Ser. No. 87671339).

15.     Plaintiff CKC Sales, LLC ("CKC Sales") is a single member limited liability company organized under the laws of New York, with Chloe as its member.  CKC Sales owns copyrights in original works of authorship by Chloe, including these cookbooks:

        a.     CHLOE'S KITCHEN;

        b.     CHLOE'S VEGAN ITALIAN KITCHEN;

        c.     CHLOE'S VEGAN DESSERTS; and

        d.     CHLOE FLAVOR.

16.     Defendant BC Hospitality Group LLC ("BCHG" or the "Company") is a limited liability company organized under the laws of New York with an address at 950 3rd Avenue, 22nd Floor, New York, New York 10022.  BCHG was formerly known as CCSW LLC and the terms BCHG and CCSW will be used interchangeably in this Complaint depending on the relevant time frame and events discussed.  BCHG owns certain vegan restaurants that still bear the name "by Chloe," including the "by Chloe" restaurant located at 2520 Glendale Blvd., Los Angeles, CA.

17.     Defendant ESquared Hospitality LLC ("ESquared") is a limited liability company organized under the laws of Delaware with an address at 950 3rd Avenue, 22nd Floor, New York, New York 10022.  ESquared has an ownership interest in BCHG, and through that ownership interest, it controls BCHG.  ESquared operates or controls certain restaurants owned by BCHG, including vegan restaurants that still bear the name "by Chloe," which includes the "by Chloe" restaurant located at 2520 Glendale Blvd Los Angeles, CA, which is listed on ESquared's website: http://e2hospitality.com/restaurants/by-chloe/

18.     BCHG and ESquared shall collectively be called "Defendants."

## JURISDICTION

19.     This action arises under federal law, the Federal Declaratory Judgment Act, 28 U.S.C. §2201, and state law.

20.     This Court has federal subject matter jurisdiction under 15 U.S.C. §§1121, 1125 and 28 U.S.C. §§1331 for cancellation of a federally registered trademark, for violating the federal trademark and copyright laws codified in Titles 15 and 17 of the United States Code, and violations against cyber piracy.

21.     This Court has pendent and supplemental jurisdiction under 28 U.S.C. §1367 for related state law claims.

22.     This Court has personal jurisdiction over the Defendants because they each reside in New York.

23.     Venue is proper in this district by agreement between the parties.  Venue is also proper under 28 U.S.C. §§1391(b) and (d) because both Defendants reside in this district.

## BACKGROUND ON CHLOE COSCARELLI

24.     Chloe is famous and widely known as "Chloe" and "Chef Chloe".

25.     Chloe is an award-winning chef, television personality, and best-selling culinary writer.

26.     Born and raised in California, Chloe is a graduate of the University of California, Berkeley, and the Natural Gourmet Institute in New York City.  She also holds a degree in Plant-Based Nutrition from Cornell University.

27.     She has spent years bringing healthy, delicious vegan cuisine to a wider audience. She has worked at some of the best-regarded gourmet vegan restaurants in America, including San Francisco's Millennium.

28.     After attracting significant media attention as the first vegan chef to win a culinary competition on national television, she authored many best-selling vegan cookbooks and has been recognized as a pioneer in promoting healthy vegan cuisine throughout the United States.

29.     Chloe's website is at this link and is incorporated by reference:

http://chefchloe.com.

30.     Chloe's Facebook page is at this link and is incorporated by reference:

https://www.facebook.com/ChloeCoscarelli.

31.     Chloe's Instagram account is at this link and is incorporated by reference:

https://www.instagram.com/chefchloe/.

7

32.     Chloe's Twitter account is at this link and is incorporated by reference:

https://twitter.com/ChloeCoscarelli.

## BACKGROUND ON DEFENDANTS

33.     BCHG (formerly CCSW) operates several fast casual vegan restaurants that still bear the name "by Chloe."

34.     ESquared is a private hospitality company based in New York City that operates certain vegan restaurants still bearing the name "by Chloe."  ESquared Hospitality is effectively controlled by James Haber through various limited liability companies and trusts.

35.     This is not the first time ESquared has tried to cheat a chef out of the restaurant brand they created, and to steal the chef's name for ESquared's own use.  ESquared and its CEO James Haber spent many years in litigation with Chef Laurent Tourondel, creator of the BLT line of restaurants,[1] seeking to prevent the Chef from opening restaurants under his own name or serving menu items that he created.  After a bitter court battle, ESquared and Haber were ultimately forced to settle with Tourondel and return the Chef's name and trademarks.

36.     ESquared CEO James Haber has a history of sharp business practices that are relevant here.  *See Humboldt Shelby Holding Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 606 F. App'x 20 (2d Cir. 2015) (affirming penalties for Haber artificially creating $75,000,000 in tax losses, holding that Haber's transactions amounted to a "sham," "devoid of economic substance"); *Ironbridge Corp. v. C.I.R.*, 528 F. App'x 43, 44 (2d Cir. 2013) (affirming two separate U.S. Tax Court decisions charging Haber's company Ironbridge Corp. "with a total of $44,075,776.80 in unpaid taxes and related penalties").  For example, through his firm Diversified Group, Inc. ("DGI"), Haber devised and promoted tax shelters that the IRS found to

---

[1] As used by the relevant restaurants, BLT stands for "Bistro Laurent Tourondel."

be illegal and fined Haber and DGI $25 million as a result.  *See, e.g.*, *Haber v. United States*, 823 F.3d 746 (2d Cir. 2016). Haber has repeatedly invoked his Fifth Amendment right against self-incrimination to avoid testifying on the subject. *See, e.g. AD Inv. 2000 Fund LLC v. IRS*, T.C. Memo. 2015-223, 2015 WL 7423367, at *14 (U.S. Tax. Ct. Nov. 19, 2015); *Ironbridge Corp. v. IRS*, 528 Fed. Appx. 43, 45 (2d Cir. 2013). The Second Circuit recently rejected his objection to the IRS' investigation into whether he has hidden assets in his wife's accounts.  *Haber*, 823 F.3d 746.

## HISTORY OF THE BY CHLOE RESTAURANTS

37.     In 2014, almost a year before opening the first restaurant location, the name "by Chloe" was selected to refer specifically to plaintiff Chloe Coscarelli and take advantage of her fame as a celebrity vegan chef, television personality, and best-selling cookbook author.

38.     Before Chloe entered into the business partnership with ESquared, ESquared hired Paperwhite Studio—a prominent branding company—to prepare an analysis of a venture centered around Chloe.  Paperwhite prepared a presentation entitled "A Case for 'CHLOE'" dated August 21, 2014.  Paperwhite advised ESquared that, because of Chloe's fame and celebrity, the way for the new restaurant to "make a place for itself in the fast casual space" was by latching onto Chloe's name and using it in the title of the restaurant.  Here are a few excerpts from that presentation:

      a.     "Thanks to her existing notoriety, Chloe already largely commands the food+chloe google search."

      b.     "We believe that any name that does not spotlight Chloe's involvement and capitalize on her existing brand equity and expertise in the vegan community would be a missed opportunity."

c.      "Chloe has sufficient notoriety in the food industry to further establish her

presence without needing to compete with smaller and potential future

brands."

39.     In late 2014, Chloe entered into a business partnership with ESquared, which

resulted in the creation of CCSW (which later became BCHG).  BCHG's first restaurant opened

in July 2015, named "by Chloe" in a calculated and deliberate effort to associate itself with

Chloe's fame, celebrity, and reputation as a pioneering vegan chef.

40.     The plan worked.  When the first restaurant location opened in New York City in

July 2015 it was an instant hit, with a crowd of Chloe's fans gathered outside on its first day and

favorable articles and reviews appearing in the press.

41.     After seeing Chloe's success, BCHG's investor, ESquared, and its CEO Haber,

who had become infatuated with Chloe, began a jealous and threatening campaign aimed at

trying to control Chloe and acquire the rights to her personal brand.  By 2016, after months of

Chloe spurning Haber's advances and refusing his proposals to license her name to mass produce

food for retail sale or allow her name to be sold to international buyers, Haber became furious.

Haber began sending threatening messages to Chloe and her family, and demanding Chloe meet

with him alone so he could share private feelings he said he had toward her and about their

relationship.  Spurned again, and reeling from rejection, Haber used ESquared to seize control of

BCHG, effectively excluding Chloe from all business operations.

42.     Haber then started an arbitration proceeding against Chloe claiming more than $7

million in compensatory damages plus punitive damages for allegedly interfering with the

business.  After a series of informal hearings before a single arbitrator, the arbitrator decided she

would rule on ESquared's claims but sever and suspend all claims Chloe had against ESquared,

Haber, and others.  The arbitrator rejected many of ESquared's claims.  And although the
arbitrator found that ESquared had failed to establish any monetary damages to ESquared or
BCHG, the arbitrator used her equitable discretion to remove Chef Chloe from the position of
"service member" of BCHG.

43.     One day after the arbitration decision was issued, ESquared purported to exercise
a clause in the partnership agreement with Chef Chloe to expel Chef Chloe from the Company
and seize its 50% ownership without paying her anything.

44.     Despite purporting to have expelled Chloe from BCHG and terminated all ties
with her, over the past year BCHG has clung to Chloe as the namesake and identity for its
business.  Defendants continue to promote their restaurants as "by Chloe" and tout it as a "chef
driven concept."  BCHG still maintains at least ten restaurants bearing Chloe's name in the
United States and one in London.

45.     Since Chloe has been excluded from BCHG, it appears that Defendants have cut
costs and sacrificed quality, and focused mainly on trying to cash out by selling off pieces of the
business.  The result has been that customers complain that Defendants have served, and
continue to serve, poor quality food in restaurants that still bear Chloe's name, damaging Chloe's
brand and reputation.

46.     Even though BCHG touts that at Chloe-branded restaurants "[w]e prepare all of
our menu items from scratch," BCHG, in fact, passes off days' old reheated baked goods, and
uses cheaper and artificial ingredients, rather than the authentic ingredients Chloe provided for in
her original recipes.  While under Chloe's direction the food earned many accolades; now it is
routinely disparaged, and even mocked, by food critics.  In recent published reviews, food critics
have deemed the food "heavily-processed," "'fake'-tasting," and "depressingly bland," and

characterized Defendants' fumbled expansion strategy as "misguided;" critics complain that the "by Chloe" burgers are now "especially bad" and "unappetising black-brown patties," and that the mac and cheese is "a tub of overcooked pasta topped with musty mushroom 'bacon.'"

47.     Since excluding Chloe, BCHG locations still purporting to be "by Chloe" have been cited for violations for both food safety and sanitation standards.  BCHG restaurants bearing the "by Chloe" name have been cited for lack of employee handwashing, mold growth, unsanitary food preparation equipment, and improper use of hazardous chemicals inside the restaurant.  The food safety hazards and unsanitary conditions at BCHG's "by Chloe" restaurants have been seriously damaging to namesake Chloe, who is a celebrated vegan chef with a reputation for exacting standards.  The dangerous conditions have been known to BCHG and ESquared CEO Haber and other executives, who have actively sought to conceal this information from Chloe.  All of Chloe's requests to inspect or assist with the rampant food safety problems, even at her own expense with her own team of professionals, have been denied by BCHG.  In fact, Mr. Haber has threatened Chloe that if she even attempts to enter any of the by Chloe stores, he will have her "removed" immediately.  This has damaged Chloe's reputation.  For one example, due to BCHG's continued use of Chloe's name as the name of BCHG's vegan restaurants, on November 26, 2017, a sickened customer contacted Chloe directly about BCHG's sale of expired juice, under the mistaken belief that Chloe was involved in the organization responsible.

48.     Like Haber's previous financial schemes, he is looking for a quick payout before he can be held to account.  Defendants have launched a poorly executed attempt to quickly open additional locations, all heavily marketed using Chloe's name and reputation as the celebrated vegan chef known for innovative and delicious recipes.  This expansion under the "Chloe" name

has caused mass confusion.  For example, earlier this year it was reported that '[u]nder the direction of executive chef Chloe Coscarelli, **By Chloe**," would be opening "a 25,000-square-foot eatery" in at New York City's South Street Seaport.

49.     Simultaneously, recognizing that they do not own Chloe or her name, and that their plan to hijack Chloe's personal brand and monetize it may have a short time horizon, Defendants have sought to quickly cash out.  According to SEC filings, on February 21, 2018, ESquared has continued to bail out of BCHG and sell off rights to the "Chloe" name by hawking a $31 million stake to investors, of which ESquared extracted about $10 million in proceeds.  On information and belief, BCHG intends to use any remaining funds to open additional locations branded using Chloe's name as well.

50.     In addition to restaurants, BCHG has tried to launch a whole array of cheap merchandise and products, nearly all of which bear Chloe's name and which BCHG misrepresents as attributable to Chloe.  BCHG has marketed and sold packaged frozen desserts bearing the name "Chill by Chloe," and chewing gum bearing the name "Simply Gum x by Chloe."  BCHG has marked and sold packaged baked goods bearing the name "Sweets by Chloe."  In fact, none of these products is by Chloe.  Chloe has never given BCHG approval to use her name for these products.

51.     Most recently, Defendants have even sought to prevent Chloe from opening restaurants, selling any products or merchandise, or working as a chef under her own name.  This is in direct contradiction to Defendants' repeated representation to Chloe, and express agreement, that Chloe owns all rights to her name and Defendants own none.

52.     Defendants' perspective is illustrated by the following email exchange about Chloe between Haber and his daughter on August 16, 2016:

> Haber:  "We milk till we can't!"
>
> Haber's daughter:  "Milk what?"
>
> Haber:  "Her name."

## BCHG HAS REPEATEDLY CONCEDED IN LEGAL PROCEEDINGS THAT CHLOE HAS SENIOR RIGHTS TO THE WORD "CHLOE"

53.     By April 2015, three months before the first BCHG "by Chloe" restaurant opened, Chloe and BCHG had announced to the press that BCHG's first vegan restaurant would debut with the title "by Chloe."  At the time, Soft Serve Fruit Company LLC ("SoftServe"), an unrelated company which used the name "Chloe's Soft Serve" in connection with certain frozen desserts, challenged BCHG's use of the name "Chloe" in connection with the new restaurant. This triggered a legal dispute between BCHG and SoftServe.  ESquared turned to its longtime legal counsel Monica Richman, of Dentons LLP, to represent both ESquared and BCHG (formerly CCSW) in connection with the dispute.

54.     On May 6, 2015, Ms. Richman wrote to the General Counsel of SoftServe establishing BCHG's position over use of the name "Chloe."  Specifically, BCHG asserted that the new venture's namesake was Chef Chloe Coscarelli, who owned the senior rights to "Chloe." Even though BCHG had already filed a trademark application for the mark "by Chloe" which had been approved for publication, BCHG claimed no rights whatsoever to "Chloe" or any derivation thereof.  Instead, BCHG claimed that Chloe Coscarelli owned the senior rights to the name "Chloe" and that BCHG intended to use the name "by Chloe" so that its restaurant could be "extensively promoted" as associated with Chloe, who had an "enviable reputation under the

name 'Chef Chloe' and 'Chloe'" that "was established before" either SoftServe or BCHG

existed.  In the May 2015 letter, BCHG's counsel said:

> "Our client's restaurant is the creation of and is guided by Chloe
> Coscarelli, a vegan chef, who almost immediately became well
> known as 'Chef Chloe' or just 'Chloe.' Chloe appeared as a featured
> chef on The Cooking Channel's 'The Veg Edge' in 2010. Also in
> 2010, Chloe appeared in and won The Food Television Network's
> competition series 'Cupcake Wars,' which led to a significant article
> about Chloe in the New York Times later in 2010. The first of
> Chloe's popular and critically acclaimed series of vegan cookbooks,
> 'Chloe's Kitchen,' was published in early 2012. Copies of the covers
> of examples of these cookbooks are enclosed. Over 130,000 copies
> of these cookbooks have been sold. We call your attention to the
> fact that CHLOE is featured by itself on the covers of her cookbooks.
> We understand that your client did not add CHLOE to its original
> name, SOFT SERVE FRUIT CO., until later in 2012 - and is still
> not part of your store signage in Union Square. Thus, our client's
> enviable reputation under the name 'Chef Chloe' and 'Chloe' was
> established before your client began to use CHLOE'S as part of its
> name.
>
> ***
>
> For example, why would Chef Chloe Coscarelli, who has an
> established reputation as a vegan chef on television and otherwise
> and as a vegan cookbook author, want to be associated with your
> client's non-vegan specialty dessert takeout shop--particularly since
> your client added CHLOE to its name after our client's reputation
> was established. We could fill up pages with evidence of our client's
> acclaim, fame and celebrity and public recognition, but since that
> fame was acknowledged in your letter, we feel no need to do so as
> part of this letter."

55.    On December 12, 2017, SoftServe filed a trademark infringement case against

BCHG and ESquared.  The suit alleged trademark infringement and unfair competition claims

based on BCHG's use of by Chloe and variations thereof.  The suit also alleged that "the original

justification focusing the name CHLOE as part of Defendants' branding is no longer applicable,

as the vegan chef Chloe Coscarelli is no longer associated with Defendants or the BY CHLOE

brand."  The suit explained that, without the benefit of Chloe's senior rights, BCHG has no right

to use "by Chloe" or "Chloe" in connection with its business.  The court issued a TRO

preventing BCHG from using any mark containing the word "Chloe" and any derivations thereof

in retail channels. Upon information and belief, the parties to that suit have reached a settlement

agreement.

56.     BCHG also acquiesced to Chloe's superior rights to the name "Chloe" in

proceedings in the United States Patent and Trademark Office before the Trademark Trial and

Appeal Board ("TTAB").  On March 13, 2017, BCHG filed an unauthorized trademark

application for use of Chloe's name, identity, likeness and rights of publicity in the form of the

mark "Chill by Chloe" in connection with "Non-dairy frozen confections."  (Serial No.

87368596.)  After the mark was published, on February 7, 2018, Chloe and CC Hospitality filed

notices with the TTAB signaling their intent to oppose BCHG's "Chill by Chloe" application and

obtained an extension of time to do so.  On February 13, 2018, SoftServe also filed a notice with

the TTAB signaling their intent to oppose BCHG's "Chill by Chloe" application and obtained an

extension of time to do so.  BCHG again conceded to Chloe's superior rights and on March 6,

2018, filed a notice stating that BCHG would abandon the "Chill by Chloe" application.  The

same day, BCHG filed a new application for a new frozen desserts label, instead this time using

the name "Chill by" (without the word "Chloe" in the mark).  Once again recognizing Chloe's

superior rights, BCHG abandoned their application to register a mark using Chloe's name in

connection with frozen desserts.

### BCHG'S USE OF CHLOE'S NAME
### TO SELL PACKAGED FOODS AND BEVERAGES

57.     BCHG (formerly CCSW) has repeatedly asked Chloe to grant it the right to use

her name to sell retail products or packaged goods.  Chloe has always refused to grant these

rights.

16

58.     Nonetheless, after improperly excluding Chloe from the business, BCHG has tried

to seize Chloe's name and use it to sell packaged goods.  BCHG is using Chloe's name to market

and sell at least the following packaged foods:

a.  Cookie dough in partnership with Cookie DO NYC in three different flavors

(including Old Fashioned Chocolate Chip Cookie, and Cinnamon Espresso

Cookie, both of which gained notoriety from Chloe's best-selling cookbooks

published years before BCHG (including CCSW) existed).



b.   Chewing gum, marketed as "Simply Gum x by Chloe."



c.   Push pops and other frozen desserts, marketed as "Chill by Chloe."



d.   Cake inside a jar, marketed as "The Chlostess Jar."



59.   BCHG has also announced that they will start selling at least the following

unauthorized packaged goods bearing Chloe's name at Whole Foods Stores:

a.   Old Fashioned Chocolate Chip Pecan Cookies

b.   Brownie Bars

c.   Lemon Bars

d.   Matcha Blueberry Muffins

e.   Chlostess Cupcakes

f.   Chocolate Chip Cookies

g.   Chocolate Cupcakes with Vanilla Frosting

60.   Defendants issued statements about sales of packaged products at Whole Foods

using Chloe's name, effectively conceding their violations: "[BCHG is] beyond excited to be

taking another step forward in growing the by CHLOE. brand with the introduction of our

Sweets by CHLOE. retail products at Whole Foods Market," and "look[s] forward to expanding [its] offerings and retail locations to continue to bring delicious, plant-based sweets to [its] amazing customers and fans."

### COUNT I: BREACH OF CONTRACT AND REQUEST FOR A PRELIMINARY AND PERMANENT INJUNCTION (NFL AGREEMENT) (By Plaintiff Chloe against BCHG)

61.     Plaintiff Chloe Coscarelli incorporates by reference paragraphs 1 through 60.

62.     On November 7, 2014 Chloe and BCHG (then CCSW) entered into a valid contract, called a Name Face and Likeness agreement ("NFL Agreement").  A copy of the NFL Agreement is attached as Exhibit A and incorporated by reference.

63.     The NFL Agreement states:

> "Licensor [Chloe] owns or controls all right, title and interest in and to (i) Chloe's full and formal name, nickname or variations of her name ("**Name**"), and (ii) versions of her image, signature, voice, likeness and other elements or attributes of her persona, identity, or personality ("**Rights of Publicity**" and collectively with the Name, the "**NFL Rights**")"

64.     Under Section 1(a) of the NFL Agreement, Chloe licensed her name "solely" for Restaurants and for Approved Projects.  The Restaurants referred to in the NFL Agreement are limited to fast casual vegan restaurants.  And there are no "Approved Projects" because any such Approved Projects require the written consent of Chef Chloe LLC and no such consent was ever given to any project.

65.     Section 1(b) of the NFL Agreement makes it clear that all other NFL Rights "shall remain the sole and absolute right and ownership" of Chloe for her "use in any way whatsoever," including in connection with "packaged foods and beverages."  In other words, under the NFL Agreement, BCHG is prohibited from using any of Chloe's NFL Rights in connection with the sale of packaged foods and beverages.  This limitation applies no matter if BCHG has any right

to use the mark "by Chloe" because BCHG agreed that the "by Chloe" mark could only be used for a fast casual vegan restaurant and Approved Projects (of which there are none).  Section 6 of the NFL Agreement also provides that "[n]o modified or derivative version of the NFL Rights may be used at any time for any purpose without the express written consent of Licensor [Chloe]."

66.     On March 16, 2018, Chloe terminated the NFL Agreement.  Even so, some provisions of the NFL Agreement survive termination, including Sections 9, 10, 11, 12, 17, 18, and 19.

67.     Section 9 of the NFL Agreement states: "Upon termination of this Agreement for any reason, Licensee [BCHG] will within two (2) months of the date of such termination, discontinue all use of the NFL Rights, subject to a six-month sell-off period for the Licensee with respect to its then current inventory of any products that are Approved Projects."  As set forth in more detail below, there are no "Approved Projects" and thus the six-month sell off period of Section 9 is not applicable. And more than two months has passed since the date of termination.

68.     In direct breach of the NFL Agreement, and despite Chloe's performance of her obligations under thereunder, Defendants still have used Chloe's name, image, identity, and persona in marketing, promotion, and as the name for restaurants and products.

69.     Since the NFL Agreement was signed in 2014, BCHG (including its predecessor, CCSW) has repeatedly asked Chloe to grant it the right to use her name to sell retail products or packaged goods.  Chloe has always refused to grant these rights.  Instead, Chloe has given this authorization to a different company, which has raised significant capital, and entered into contracts with manufacturers, suppliers, and retailers for the sale of her branded retail products.

70.     Unable to secure the rights required to use Chloe's name, BCHG has now decided it will try to go ahead anyway, in breach of the NFL Agreement (and as will be set forth in more detail below, in breach of another contract).  Recently, a "grocery business" website revealed that BCHG intends to start selling retail packaged goods at two New York City grocery locations under the name "Sweets by Chloe."  BCHG even intends to sell a "Chlostess Cupcake," copying a cupcake name and design famously associated with Chloe, which Chloe first debuted in Los Angeles and first sold in retail in 2010, and featured in her best-selling cookbook in 2012.  This clear breach by BCHG has alarmed Chloe's business partners, threatened key business relationships, and has jeopardized her entire business.

71.     Section 11 of the NFL Agreement makes clear that any breach "would cause immediate and irreparable harm to" Chloe, and that Chloe shall have the right to "injunctive or other equitable relief, without proof of actual damages and without the posting of bond or other security."

72.     Section 19 of the NFL Agreement states that "[t]he state and federal courts of the State of New York located in the County of New York will have exclusive jurisdiction and venue to hear and decide all controversies that may arise under or concerning this Agreement."

73.     BCHG's activities as set forth above constitute violations of the NFL Agreement, which prohibits BCHG from selling packaged foods and beverages using any of Chloe's NFL rights, and Chloe has been harmed as a result and will continue to be harmed unless BCHG's activities are preliminarily and permanently enjoined.

74.     BCHG's activities have also damaged Chloe, including for instance BCHG's use of Chloe's NFL Rights, as exemplified in Appendix A and incorporated here, after termination of the NFL Agreement.  Chloe has been damaged in an amount to be determined at trial.

22

**COUNT II: BREACH OF CONTRACT AND REQUEST FOR A
PRELIMINARY AND PERMANENT INJUNCTION (OPERATING AGREEMENT)
(By Plaintiff Chef Chloe LLC against ESquared and BCHG)**

75.     Plaintiff Chef Chloe LLC incorporates by reference paragraphs 1 through 74.

76.     BCHG is governed by an Operating Agreement (the "Operating Agreement" or

"OA"), which ESquared Hospitality LLC and Chef Chloe LLC (an entity whose sole member is

Chloe) entered into as a valid contract on November 7, 2014.  BCHG is controlled by ESquared.

A copy of the Operating Agreement is attached as Exhibit B.

77.     The OA and the NFL Agreement set forth the extremely limited rights BCHG has

to use Chloe's name.

78.     Section 4.1 of the OA states:

> The business ("Business") of the Company shall be to engage,
> whether directly or through one or more Affiliates or subsidiaries,
> in the ownership and/or management and/or licensing and/or
> franchising of one or more restaurants utilizing the Concept (the
> "Restaurants") and Approved Projects. As used herein, the term
> "Approved Projects" means any project related to the food and
> beverage industry that utilizes one or more of the NFL Rights or the
> By Chloe Mark, and which has been pre-approved in writing by
> [Chef Chloe LLC].

79.     The "Concept" is specifically defined and limited by the OA to a fast casual

vegan restaurant.  In addition, there are no Approved Projects as Chef Chloe LLC never

consented to any such projects.  Thus, BCHG is not authorized to sell products at retail or to sell

packaged foods or beverages using the name "Chloe" or "by Chloe" or any variation thereof.

80.     Section 4.4 of the OA states:

> The parties acknowledge and agree that the By Chloe Mark
> incorporates [Chloe]'s first name, and that nothing contained in this
> Agreement is intended to bestow upon the Company any rights to
> [Chloe]'s NFL Rights (as defined in the NFL License Agreement),
> except as permitted herein and the NFL License Agreement.

81.     Under Section 4.4 of the OA, BCHG applied for and was granted a federal trademark registration for the word mark "by Chloe" solely for restaurant and catering services. BCHG has no registered trademark rights for packaged goods or beverages or retail products or services and in fact is not entitled to seek any trademark rights using Chloe's name for these things.

82.     The "By Chloe Design Mark" and "By Chloe Word Mark" are each, in turn, specifically defined and limited to mean a mark as used "in connection with the goods and services of the Business."  (OA pp. 3, 4.)  The Company's "Business" is limited to only two things:  fast casual vegan restaurants ("Restaurants") and "Approved Projects" (of which there are none).  (OA § 4.1.)  The OA makes clear that "[BCHG]'s rights to the By Chloe Word mark is limited solely to the exact lettering of the By Chloe Word Mark and not to any similar or derivative mark."  OA § 4.4(b).)  Accordingly, because the "By Chloe Word Mark" is defined as only meaning the term "by Chloe" used for a fast casual vegan restaurant and do not include the right to sell packaged goods under Chloe's name.

83.     Even if the Operating Agreement's arbitration provision were applicable, Section 20.19 (e) states: "Notwithstanding the foregoing, in the event the Dispute involves a claim for which immediate injunctive relief is being sought, a party shall have the right to bring an action for such relief in a court of competent jurisdiction prior to commencing as arbitration action."

84.     BCHG's activities, as set forth above, constitute violations of the Operating Agreement which prohibits BCHG from selling packaged foods and beverages using the "by Chloe" mark or Chloe's name or any variation thereof.

85.     Chef Chloe has been harmed as a result and will continue to be harmed unless BCHG's activities are preliminarily and permanently enjoined.

86.     BCHG's activities have also damaged Chloe in an amount to be determined at

trial.

### COUNT III: DECLARATORY JUDGMENT THAT CHLOE MAY USE HER OWN NAME IN SELLING PACKAGED FOODS AND BEVERAGES AND AS A CHEF (By CC Hospitality and Chloe against ESquared and BCHG)

87.     Plaintiff Chloe and CC Hospitality incorporate by reference paragraphs 1 through

85.

88.     BCHG has embarked on a campaign to try to prevent Chloe from using her own

name in selling packaged foods and beverages, and in her work as a chef.

89.     For instance, BCHG has tried to oppose CC Hospitality's registration and use of

the mark CHLOE'S DELICIOUS in connection with "sauces; salad dressings; savory sauces

used as condiments; chutneys; packaged meals consisting primarily of pasta or rice; mixes for

making baking doughs and batter."

90.     The NFL Agreement confirms that BCHG has no right to oppose Chloe's use of

her own name in connection with retail goods. Section 1(b) of the NFL Agreement, for instance,

provides that Chloe maintains "the sole and absolute right and ownership" of all NFL Rights not

specifically granted, and for the avoidance of doubt, that "[Chloe] shall retain the right to use the

NFL Rights in any way whatsoever except in connection with the By Chloe Mark, including but

not limited to in connection with cooking shows, demonstrations, appearances, blogs, and

cookbooks **and packaged foods and beverages** . . . ."  The NFL Agreement makes clear that

BCHG has never had any right to threaten or oppose Chloe's use of her own name, such as in

CHLOE'S DELICIOUS, for packaged foods and beverages.

91.     BCHG has also improperly tried to prevent Chloe from using her own name or the

name "Chef Chloe" as a chef and in connection with restaurant or catering services.

92.     Since February 24, 2018, Chloe has worked as a chef and vendor at the St. Roch Market in Miami, Florida under the name "Chef Chloe and the Vegan Café."

93.     On February 27, 2018 and again on May 9, 2018 counsel for BCHG wrote to the owner and operator of the St. Roch Market threatening various legal actions if they did not stop advertising Chloe; and using her image; and if they did not also take actions that somehow stop Chloe from using her own "name," "face," "image," "likeness," or "personality" while working as a chef or in the operation of her business.

94.     In addition to the letters cited above, counsel for BCHG has had various email exchanges and phone calls with counsel for St. Roch in which he continued to threaten legal action if St. Roch did not stop acknowledging Chloe and her work.

95.     Given the above, an actual controversy exists between the parties and therefore Chloe requests a declaratory judgment that Chloe may use her own name in the sale of packaged foods and beverages and use her name as a chef, including in the operation of her food concept in the St. Roch Market.

**COUNT IV: TORIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**
**(By Chloe against ESquared and BCHG)**

96.     Plaintiff Chloe Coscarelli incorporates by reference paragraphs 1 through 94.

97.     Chloe has a business relationship with St. Roch Market.

98.     BCHG knew of Chloe's business relationship with St. Roch Market, and has intentionally and without justification interfered with this relationship by threatening unsupported legal actions against St. Roch Market if it did not stop referencing Chloe, or displaying her name or image in connection with her work.

99.     Such actions have damaged Chloe in an amount to be determined at trial.

**COUNT V: DECLARATORY JUDGMENT THAT CHEF CHLOE LLC
OWNS 50% OF BCHG AND REQUEST FOR A PRELIMINARY AND
PERMANENT INJUNCTION PROTECTING CHEF CHLOE LLC'S RIGHTS
AS A MEMBER UNDER THE OPERATING AGREEMENT.
(By Plaintiff Chef Chloe LLC against ESquared and BCHG)**

100.    Plaintiff Chef Chloe LLC incorporates by reference paragraphs 1 through 98.

101.    Section 19 of the Operating Agreement includes limited circumstances, and only after adherence to strict procedures, in which BCHG (formerly CCSW) could exercise a repurchase right of Chef Chloe LLC's membership interest in the Company.  The intent of the parties, as reflected in the plain language of the Operating Agreement and the drafting history, confirms that any potential repurchase right was contingent on strict adherence to the specific procedures set forth in the Operating Agreement.  Chef Chloe considered these limitations and procedures to be material to its acceptance of the Operating Agreement. As set forth below, BCHG did not follow those procedures, and therefore has not repurchased Chef Chloe's membership interests.

102.    On March 22, 2017, ESquared Hospitality suddenly claimed that it repurchased Chef Chloe's entire membership interests in BCHG (then CCSW), and insisted that the value of the 50% ownership stake was zero, so therefore no payment was owed.  Specifically, in a letter to Chloe, ESquared's lawyers stated:

> Enclosed please find a copy of the Final Award in the Arbitration of *ESquared v. Chef Chloe, LLC, et al.,* AAA Case No. 01-16-0002-9399, rendered on March 21, 2017 (hereafter the "Final Award").

> Pursuant to the Final Award, and in accordance with subsections (b) and (c) of the definition of "Cause" set forth at page 4 of the Limited Liability Operating Agreement of CCSW LLC ("CCSW") effective as of November 7, 2014 (the "Operating Agreement") between ESquared and Chef Chloe, LLC ("Chloe LLC"), Chloe LLC was terminated as a Service Member for Cause effective March 21, 2017 (the "Effective Termination Date").

On behalf of ESquared, and in accordance with §7.5(b) of the Operating Agreement, we hereby provide you with Notice that, effective immediately, you, Chloe Coscarelli, have been removed as a Manager of CCSW.

Pursuant to §19.5(b) of the Operating Agreement, because the termination of Chloe LLC as a Service Member occurred prior to March 7, 2019, the purchase price that CCSW is to pay for Chloe LLC's Membership Interest "shall be equal to the positive value of such Member's [Chloe LLC's] Capital Account as defined in the Operating Agreement. As the value of Chloe LLC's Capital Account is zero, the purchase price is therefore zero.

Pursuant to §19.5(a) of the Operating Agreement, because (a) ESquared owns more than twenty five percent (25%) of the issued and outstanding Membership Interests or controls the vote of CCSW and (b) Chloe LLC was terminated as a Service Member of CCSW for Cause before March 7, 2023, Chloe LLC "is deemed to have offered to sell all of its Membership Interest to" CCSW. Please be advised that CCSW, acting by and through its Member and sole Manager, ESquared, hereby exercises its option to purchase all of Chloe LLC's Membership Interest in accordance with §19.6 of the Operating Agreement.

. . .

Pursuant to §19.6 of the Operating Agreement, this letter constitutes notice to Chloe LLC of the event set forth in §19.5, i.e., the termination of Chloe LLC as a Service Member for Cause, which notification triggers CCSW's right to purchase the Membership Interest of Chloe LLC. As set forth in the preceding paragraph, the purchase price is zero. As no amount has to be paid by CCSW to Chloe LLC, the transfer of Chloe LLC's Membership Interest to CCSW is effective immediately, the sale is considered final, and Chloe LLC no longer has any Membership Interest in CCSW. In accordance with §19.6, a copy of the Operating Agreement is attached hereto.

103.    ESquared's purported repurchase of Chef Chloe's membership interest in BCHG

(then CCSW) was ineffective for several reasons:

1.   **There was an "ESquared Hospitality Liquidity Event" that terminated any repurchase right.**

104.   As set forth above, on March 22, 2017, ESquared purported to exercise a "Repurchase Right" under Section 19.5 of the Operating Agreement to buy Chef Chloe's membership interest in BCHG (then CCSW) for $0.  But the Repurchase Right, which belonged to CCSW—not ESqaured—had expired under its own terms and Chef Chloe's membership interest therefore could not be forcibly repurchased.

105.   Under Section 19.5 of the Operating Agreement, the "Repurchase Right" ends if there is an "ESquared Hospitality Liquidity Event."  See OA § 19.5(e) ("The provisions of this Section 19.5, including but not limited to the Repurchase Right set forth herein, shall automatically terminate and be of no further force or effect upon the occurrence of . . . an ESquared Hospitality Liquidity Event . . . .").

106.   As defined in the OA, "'ESquared Hospitality Liquidity Event' means a sale, financing, public offering or other change of control transaction involving [ESquared] (or its parent entity) and/or no less than a majority of the restaurants that [ESquared] and its Affiliates have an ownership and/or management interest in."  OA at p.6.

107.   When the OA was signed in November 2014, ESquared was 100% owned by BLT Restaurant Group LLC ("BLT").  In 2015, BLT sold ESquared to a new company, ESquared Holdings LLC ("ESquared Holdings"), for $250,000. This was "a sale . . . involving [ESquared] (or its parent entity)" and therefore constitutes an "ESquared Hospitality Liquidity Event" that resulted in the forfeiture of the Repurchase Right.  Accordingly, contrary to ESquared's March 22, 2017 letter, when ESquared's parent company cashed out in 2015, BCHG lost the Repurchase Right, and could no longer forcibly repurchase Chef Chloe's membership interest.

29

**2. Even if BCHG had a Repurchase Right, it did not properly exercise**
   **that right and the time to do so has since expired.**

108.   Even if BCHG (then CCSW) still had a Repurchase Right as of March 22, 2017,

ESquared's letter of that date did not properly exercise that right because the required procedures

to do so were never completed and the time for exercise has expired.  The Operating Agreement

provides that if the Repurchase Right becomes available under Section 19.5, then, under section

19.6(b), "[t]he Company shall have an option to purchase the Available Interest within ninety

(90) days after the Effective Termination Date," which, to be exercised, requires that "**the**

**Company** shall deliver or mail" the notice of intent and additional information to Chef Chloe as

set forth in Section 19.6(c).  (emphasis added).  But **the Company** (*i.e.*, BCHG, then CCSW)

never gave that notice.  Instead, by the March 22, 2017 letter, **Defendant ESquared** purported to

give this notice on behalf of the Company – but this was improper. BCHG is a manager-

managed company, meaning that managers - and not members - control the Company.  Section

7.1 of the Operating Agreement makes this clear:

> a.   Except as otherwise provided in this Agreement or mandated by the Act,
>      the Members (other than any Member acting in its capacity as a Manager,
>      in the event a Member is appointed as a Manager) shall take no part
>      whatsoever in the control, management direction or operation of the
>      affairs of the Company and shall have no power to act for or bind the
>      Company.
>
> b.   Except as expressly provided herein or under the Act, the Managers shall
>      have sole, full and complete charge of all operations of the Company and
>      the management of the Company's business as described in Section 4.1.

109.    In August 2016, ESquared resigned as manager and was replaced with a new

manager, ESquared CCSW Management LLC ("ESquared Management").  As set forth above,

the Operating Agreement makes clear that non-manager members like ESquared have no power

to act for BCHG, and such power lies solely with the Company's managers.  Moreover,

ESquared had a serious conflict of interest if it even participated in a decision to repurchase Chef

Chloe's membership interest and purportedly make ESquared the sole remaining member of

BCHG.  Accordingly, ESquared had no power to direct BCHG to repurchase Chef Chloe's

membership interest, and because no repurchase was ever properly made by the Company within

the 90-day option period set forth in Section 19.6, any Repurchase Right that may have existed in

connection with the termination of Chef Chloe as the Service Member has since expired.

110.    But there is yet another problem with ESquared purporting to exercise a

Repurchase Right on behalf of BCHG.

111.    Before ESquared's demand for arbitration, Chef Chloe obtained a temporary

restraining order in New York State Court and, to avoid a decision on Chef Chloe's request for a

preliminary injunction, ESquared agreed to be bound by a stipulated Order, entered on July 22,

2016, restricting how ESquared could operate (the "July 2016 Order").  (*Chef Chloe LLC v.

Wasser, et al.*, 653041/2016, at NYSCEF No. 55 (N.Y. Sup. Ct. July 22, 2016).)  As with all

BCHG decisions, the decision to repurchase Chef Chloe's equity and the terms on which to do

so, could only be made by the Company, through its two managers under the decision making

rules set forth in Section 7.3 of the Operating Agreement.  Namely, "[e]ach decision shall require

the consent of a majority of the Managers," and only if there is a "deadlock," then that deadlock

must be decided by the ESquared-appointed Manager (*i.e.*, ESquared Management).  OA § 7.3.

Thus, the ESquared appointed manager could use the deadlock rule but had to comply with

Paragraph 12 of the July 2016 Order which enjoined Defendants from their practice of making unilateral decisions about the business by claiming there was a "deadlock" and invoking the Deadlock Rule, even though they had never consulted or given notice to Chef Chloe about the purported deadlock.  The July 2016 Order requires that "Defendants shall give Chef Chloe written notice if and when Defendants purport to invoke the Deadlock Rule pursuant to § 7.3 of the Operating Agreement."  Accordingly, ESquared violated the July 2016 Order by trying to repurchase the 50% equity stake of the founder and namesake of the Company without first providing notice to Chef Chloe that it intended to invoke the deadlock rule, and if any such repurchase had occurred as ESquared claims in March 2017 it would have been in contempt of court.

3. **The Arbitrator's March 21, 2017 order that the Service Member (Chef Chloe LLC) was terminated was a termination "by operation of law," rather than a termination "by the Company," and thus does not trigger the right to exercise the Repurchase Right without paying fair market value.**

112.    The Operating Agreement makes a clear distinction between what can happen if a Service Member is terminated "by the Company" versus terminated "by operation of law." BCHG defends its purported Repurchase Right as granted under Section 19.5 (b) which states: "If the Company elects to repurchase the Membership Interests of a Terminated Service Member upon a termination by the Company for Cause … ."  This is an improper defense because Chef Chloe was not terminated by the Company (*i.e.*, BCHG) for cause.

113.    What happened was that an arbitrator made the following finding and award: "the Service Member is terminated for Cause (pursuant to subsections (b) and (c))."  Thus, Chef Chloe's termination was a termination by operation of law, as this was certainly not an act done by the Company.  Instead, the arbitrator's action was a "Termination Event" under the OA.

114.    The OA defines "Termination Event" as follows (OA p. 10):

> "Termination Event" means, with respect to the Service Member, the occurrence of such Member's death, insanity, adjudication of incompetency, Disability, or any event that, absent provisions to the contrary in this Agreement or otherwise, would terminate the continued membership of such Person in the Company or Service Member *by operation of law*. For purposes of this paragraph, the occurrence of CC's death, insanity, adjudication of incompetency or Disability shall be considered a Termination Event of CC Entity (or a successor).

(emphasis added).  If Chef Chloe was in fact terminated, it was "by operation of law" as a result of the arbitrator's action and not termination by the Company (BCHG, then CCSW).

115.    The Operating Agreement makes an important distinction between these two types of termination of the Service Member.  On the one hand, "upon a termination *by the Company* for Cause" before March 2019, the purchase price equals the value of the Member's Capital Account.  (OA § 19.5(b)(a) (emphasis added).)  On the other hand, "[i]f the Company elects to repurchase the Membership Interests of a Terminated Service Member in connection with a Termination Event, the purchase price" equals "the Fair Market Value."  (OA § 19.5(b).)  Critically, "Termination Event" is defined to include any event that "would terminate the continued membership of such Person in the Company or Service Member *by operation of law*." OA at p.10 (emphasis added).  A termination that occurs as the automatic and direct result of an order by a court or arbitrator is a termination "by operation of law" – not a termination "by the Company."

116.    The conclusion that termination by the Arbitrator is not termination "by the Company" is also supported by the facts that: (i) ESquared Management, the manager necessary for the Company to make *any decision*, was not even a claimant in the arbitration; (ii) there was no invocation of the Deadlock Rule under Section 7.3 of the Operating Agreement, and notice of a deadlock pursuant to Paragraph 12 of the July 2016 Order, as would have been required for the

Company to decide to terminate Chef Chloe LLC as Service Member; and (iii) unlike decisions

"by the Company," the Arbitrator's ruling terminating Chef Chloe as Service Member is an order

with automatic legal effect that cannot be rescinded by the Company or reconsidered by the

Managers.  Accordingly, under Section 19.5(b) of the Operating Agreement, the termination

occurred by "operation of law", meaning that the only available repurchase would have been

repurchase in connection with a "Termination Event," in which Chef Chloe LLC was entitled to

the full fair market value of 50% membership interest in BCHG and not zero.

117.    For all the reasons set forth above, BCHG's purported repurchase of Chef Chloe's

membership interest was ineffective.

118.    Section 7.4 of the Operating Agreement states:

Actions Requiring Approval of [Chef Chloe]. Notwithstanding anything to the contrary
contained in this Agreement, for so long as the [Chef Chloe] owns any of the outstanding
Membership Interests, the following actions shall be considered "Major Decisions" which
shall require the approval of [Chef Chloe] and/or its Permitted Transferee:

(a) issuing any additional Membership Interest in or admitting any new Member
to the Company (except a Permitted Transferee);

(b) increasing the number of Managers;

(c) changing the Concept from "fast casual" vegan;

(d) conducting any business of the Company relating to food or beverages that
is not vegan;

(e) changing the name of any Restaurant other than to a name that has been
approved by [Chef Chloe] for other Restaurants;

(f) altering or waiving any provision of or otherwise amending any provision of
this Agreement, other than amending the agreement as permitted in the proviso of
Section 20.1; or

(g) entering into any financing arrangements with respect to any Restaurant, other
than Approved Financing Arrangements.

119.    BCHG has contended that Chef Chloe no longer owns any of the outstanding

membership interests in BCHG and thus BCHG can take actions that are "Major Decisions"

without the approval of Chef Chloe.  Although Chef Chloe asserts that certain of the actions set

forth in Section 7.4 cannot be taken without Chef Chloe's consent regardless of whether it retains

any of the outstanding membership interests (*e.g.* Sections 7.4 (c) and (f)), other actions could be

taken without Chef Chloe's consent if it did not retain any membership interests. Unless

immediately enjoined, ESquared will frustrate the recovery Chef Chloe seeks by selling off

remaining Membership Interests and assigning Chloe's name to new ventures.  In the words of

ESquared CEO James Haber, he and ESquared will "milk till we can't!"  Unless enjoined,

ESquared will "milk" the Company and Chloe's reputation for all they're worth, leaving nothing

left.

120.    For example, pursuant to Section 7.4, Chef Chloe has the right to veto issuing any

additional membership interests in, or admitting any new member to, the Company and the right

to veto BCHG from entering into financing arrangements for any restaurant.

121.    The "by Chloe" restaurants bear Chloe's name and, by design, are inextricably

associated with Chloe and a commercial attribution to Chloe.  Her reputation is impacted by the

operations of the restaurants and without protection for Chef Chloe's membership interest in

BCHG, particularly for "Major Decisions," she cannot ensure that the deteriorating "by Chloe"

restaurants that Defendants attribute to her operate in a way that does not harm her reputation.

122.    Even if the Operating Agreement's arbitration provision were applicable, Section

20.19 (e) states: "Notwithstanding the foregoing, in the event the Dispute involves a claim for

which immediate injunctive relief is being sought, a party shall have the right to bring an action

for such relief in a court of competent jurisdiction prior to commencing as arbitration action."

123.    ESquared's and BCHG's activities as set forth above have caused irreparable and continuing harm to Chef Chloe and that harm can only be stopped by issuing a preliminary and permanent injunction declaring that Chef Chloe retains a 50% Membership Interest in BCHG and enjoining Defendants from taking any actions inconsistent with Chef Chloe's 50% Membership Interest in BCHG.

**COUNT VI: BREACH OF CONTRACT (OPERATING AGREEMENT) AND REQUEST FOR A PRELIMINARY AND PERMANENT INJUNCTION**
**(By Plaintiff Chef Chloe LLC against ESquared and BCHG)**

124.    Plaintiff Chef Chloe LLC incorporates by reference paragraphs 1 through 122.

125.    On April 5, 2018 Bain Capital issued a press release which stated:

> NEW YORK AND BOSTON, April 5, 2018 - by CHLOE., the popular plant based, fast-casual restaurant startup, today announced that it has closed a strategic investment to support the brand's growth and expansion. Lead investor Bain Capital Double Impact, the impact investing fund of Bain Capital, was joined by Kitchen Fund, Collaborative Fund, TGP International/Qoot International, and other strategic investors, to enable by CHLOE. to continue its goals of expanding to 20 locations, domestically and internationally, increase its social impact objectives, and strengthen operations and marketing initiatives over the next 2 years.

Press reports stated that the amount of the investment was $31 million.

126.    Upon information and belief, Bain Capital and/or the other investors referred to in the April 5, 2018 press release have the right to make additional investments BCHG and ultimately obtain a controlling stake.

127.    This investment violated the Operating Agreement which states: "Approved Financing Arrangements" means (a) debt or equity financing arrangements under terms that are approved by [Chef Chloe] (or its Permitted Transferee)."  Chef Chloe did not approve the financing arrangement with Bain Capital.

128.    Although the Operating Agreement has an arbitration provision, Section 20.19 (e) states: "Notwithstanding the foregoing, in the event the Dispute involves a claim for which

immediate injunctive relief is being sought, a party shall have the right to bring an action for such relief in a court of competent jurisdiction prior to commencing as arbitration action."

129.    As a result of the unauthorized financing arrangement, upon information and belief, Chef Chloe's ownership interest in BCHG has been diluted and will likely be diluted further unless Defendants are preliminarily and permanently enjoined from entering into further financing arrangements without Chef Chloe's consent.

### COUNT VII: VIOLATION OF CALIFORNIA CIVIL CODE § 3344
### (By Plaintiff Chloe Against ESquared and BCHG)

130.    Plaintiff Chloe incorporates by reference paragraphs 1 through 128.

131.    Defendants still operate a "by Chloe" location in California.

132.    California Civil Code § 3344 states:

> (a) Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.  In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.  In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses.  Punitive damages may also be awarded to the injured party or parties.  The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

**Use of Chloe's Name as the Name for BCHG's Restaurants and Other Products**

133.    In violation of California Civil Code § 3344, Defendants have used Chloe's name to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services

from Defendants, including at BCHG locations still purporting to be "by Chloe."  Defendants, including through the operation of the BCHG locations still purporting to be "by Chloe," have knowingly used Chloe's name to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services from Defendants and from third-party retailers under contract with Defendants, without Chloe's consent, and Chloe has been damaged as a result.

**Use of Chloe's Name in Marketing for Defendants' Goods and Services**

134.    In addition to the "by Chloe" name itself, Defendants have used Chloe's name in numerous marketing phrases to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services at BCHG and ESquared restaurants, online, and from third-party retailers including:

  a.  "Sweets by CHLOE"

  b.  "Chlostess Cupcake"

  c.  "Chill by CHLOE"

  d.  "COFFEE BY CHLOE"

  e.  "DRIP COFFEE by CHLOE"

  f.  "Juice by Chloe"

  g.  "Blog by CHLOE"

  h.  "Woof by Chloe"

  i.  "Simply Gum x by Chloe"

  j.  "Eat By Chloe" – as domain name (www.eatbychloe.com), Instagram account name (@eatbychloe), Facebook account name (@eatbychloe), and Twitter account name (@eatbychloe).

k.      "By Chef Chloe" – as domain name (www.bychefchloe.com), Instagram

account name (@bychefchloe), and Twitter account name

(@bychefchloe).

135.    In violation of California Civil Code § 3344, Defendants have used the variations

of Chloe's name listed above to advertise, sell, and solicit customers to purchase products,

merchandise, goods, and services from Defendants, including at BCHG locations still purporting

to be "by Chloe."  Defendants, through use of the variations of Chloe's name listed above, have

knowingly used Chloe's name, photograph, and likeness to advertise, sell, and solicit customers

to purchase products, merchandise, goods, and services from Defendants and third-party retailers

under contract with Defendants, without Chloe's consent, and Chloe has been damaged as a

result.

**Use of Chloe's Name and Image on the by Chloe Website**

136.    Defendants operate a website in connection with their restaurants they attribute as

"by Chloe" which can be reached through the URL www.eatbychloe.com and

www.bychefchloe.com (the "by Chloe Website").

137.    In addition to using Chloe's name for the name of that website and the associated

URLs, the by Chloe Website has used many references to Chloe, including her photograph,

restaurant menus making repeated use of her name, and the use of her full name "Chloe

Coscarelli" more than 30 times on the website.  The website has also promoted BCHG's business

by featuring Chloe's image and touting dozens of articles in which Chloe is featured or in which

her picture appears.  Despite having purportedly terminated Chloe's ownership interest in BCHG

on March 22, 2017, BCHG has continued to knowingly use Chloe's name, photograph, and

likeness to advertise, sell, and solicit customers to purchase goods at their vegan restaurants without Chloe's consent.

138.    The following are screen shots from this page of the by Chloe Website that existed as recently as April 9, 2018: https://eatbychloe.com/press/.

139.    These screen shots used Chloe's full name without her permission:





"Nail guru Natalie Pavloski creates a color blocked manicures inspired by chef Chloe Coscarelli's go-to summertime sips."



"From cupcake-slinging vegan queen Chloe Coscarelli comes this plant-baed Greenwich Village concept, by CHLOE..."



"What's in my beach bag? Chloe Coscarelli's picks..."



"...this is a showcase for the chef Chloe Coscarelli, a determined vegan chef on television and in cookbooks..."



"Vegan cookbook author Chloe Coscarelli has opened her first restaurant on the iconic corner of Macdougal and Bleecker streets..."



"Chef Chloe Coscarelli is our US iteration of a vegan chef who really gets what it means to be both relevant and engaging...."



"Chef Chloe Coscarelli has opened a casual café and restaurant in the West Village, featuring a menu of 100% plant-based options…"



"Chef Chloe Coscarelli opened By Chloe this week, bringing fast-casual, entirely plant-based fare to the West Village…"



"Famed chef Chloe Coscarelli shares the roots behind her cooking—and serves up some delicious dishes you can make at home…"

## 20 SOMETHING

"Perhaps no one is better suited to open a vegan fast casual than Chef Chloe Coscarelli…"

## 20 SOMETHING

"For a quick bite between presentations, swing by vegan cookbook author Chloe Coscarelli's first plant-based cafe…"

## 20 SOMETHING

"Actress Anna Kendrick dined at the West Village vegan restaurant by CHLOE. from Chef Chloe Coscarelli this past Saturday evening.."

# 20 SOMETHING

"Orange Is The New Black's Taylor Schilling spotted having lunch Wednesday at Chloe Coscarelli's west village Vegan spot by CHLOE."

# 20 SOMETHING

"first-time diners may do a double take when they learn there's no meat at by CHLOE. And that's exactly what chef Chloe Coscarelli "



"The mac & cheese served at Chloe Coscarelli's vegan counter is so decadent you won't even miss the dairy…"

## HAUTE LIVING

"Meet vegan chef Chloe Coscarelli and Samantha Wasser, the dynamic duo behind the Greenwich Village's latest vegan destination…"



"Chef Chloe Coscarelli of the West Village restaurant by CHLOE. is changing customers' minds about vegan fare one burger at a time"



"Chef Chloe Coscarelli, the famed vegan chef and winner of Cupcake Wars (and our hearts) has done it again…"



"First she won cupcake wars. Then she won the best spot on your cookbook shelf. Now, Chloe Coscarelli has won the heart of New York"



"Chef Chloe Coscarelli of NYC's vegan hot spot by CHLOE. gives us her recipe for Jalapeño Cornbread Poppers..."



"by CHLOE.'S Chloe Coscarelli & Samantha Wasser on foodie trends & redefining vegan..."

**VOGUE**.COM

"Chloe Coscarelli whips up a Beet Bloody Mary with by CHLOE. cold-pressed juice."

**ZAGAT.**

"The New York import from chef Chloe Coscarelli and Samantha Wasser sports an all plant-based menu."

140.    The by Chloe Website also advertised a collection of links to news articles which discuss Chloe and identify BCHG's vegan restaurants with Chloe as recently as April 9, 2018. Examples of these links and excerpts from the linked articles are set forth in Appendix A, and incorporated here.

141.    In violation of California Civil Code § 3344, the by Chloe Website is used to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services from Defendants, including at BCHG locations still purporting to be "by Chloe" restaurants. Defendants, through the operation of the by Chloe Website, have knowingly used Chloe's name, photograph, and likeness to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services from Defendants and from third-party retailers under contract with Defendants, without Chloe's consent, and Chloe has been damaged as a result.

**Use of Chloe's Name and Image on Instagram**

142.    Defendants maintain an Instagram account to promote their vegan restaurants which can be reached through the URLs:

      a.     https://www.instagram.com/eatbychloe/; and

      b.     https://www.instagram.com/bychefchloe/.

143.    In addition to using Chloe's name for the name of that account, the account contains or has contained many posts that reference Chloe, such as by specifically including hashtags associated with Chloe, like: #byChefChloe.

144.    When the hashtag #byChefChloe is selected the user is sent to this web page:

https://www.instagram.com/explore/tags/bychefchloe/ which displays pictures of Chloe:



145.    In violation of California Civil Code § 3344, Defendants have used Chloe's name and distinctive brand on Instagram to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services from Defendants, including at BCHG locations still purporting to be "by Chloe" restaurants.  Defendants, through the operation of this Instagram site, have knowingly used Chloe's name, photograph, and likeness to advertise, sell, and solicit customers to purchase products, merchandise, goods and services from Defendants and from third-party retailers under contract with Defendants, without Chloe's consent, and Chloe has been damaged as a result.

**Use of Chloe's Name and Image on Facebook**

146.    Defendants maintain a Facebook account to promote their vegan restaurants which can be reached through the URL:  https://www.facebook.com/eatbychloe/

147.    This Facebook page, which purports to operate under Chloe's name, is used to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services

from Defendants, including at BCHG locations still purporting to be "by Chloe" restaurants. Defendants, through the operation of this Facebook page, have knowingly used Chloe's name, photograph, and likeness to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services from Defendants and from third-party retailers under contract with Defendants, without Chloe's consent, and Chloe has been damaged as a result.

148.    The name of Defendants' "by Chloe" Facebook page uses Chloe's name and is designed to promote the restaurant as associated with Chloe.

149.    The following are some examples of Defendants' unauthorized use of Chloe's name and image on this Facebook page that appeared as least as late as April 9, 2018:

a.    The "by Chloe" Facebook page contains videos, including the video at this link: https://www.facebook.com/eatbychloe/videos/1033282943399539/. This video is entitled "Chloe at the Chew" and features Chloe as a guest on the popular ABC television show "The Chew."  This is a screen shot from the video:



b.      The "by Chloe" Facebook page contains many posts with Chloe's name and photo.  Below are a few examples:











**by CHLOE.**
September 24, 2016 ·

If you haven't visited yet, be sure to come check out our new Sweets by CHLOE.! Get the scoop via The Daily Meal http://ow.ly/VDi4304tgaH



**By CHLOE. Vegan Restaurant Opens Its First Dessert-Only Shop**

Chef Chloe Coscarelli has further expanded her wildly popular vegan eatery by CHLOE. with the opening of a dessert-only shop called Sweets by CHLOE.

THEDAILYMEAL.COM

**by CHLOE.**
October 1, 2015 ·

Did you see Chef Chloe Coscarelli in the New York Post yesterday? #kaledit #bychefchloe



**by CHLOE.** shared NYC Vegetarian Food Festival's photo.
March 11, 2015 ·

Meet Chef Chloe Coscarelli this Sunday at the NYC Vegetarian Food Festival!



NYC Vegetarian Food Festival
March 11, 2015 ·

Is there anything here not to love? Plan to sample @ChloeCoscarelli's vegan cupcakes with an Italian twist, on Sunday 3/15 at the #NYCVFF!

**by CHLOE.**
January 21, 2016 ·

Keeping you warm & well fed all winter long. Pumpkin Soup on mindbodygreen.



**By Chloe's Vegan Pumpkin Soup You'll Be Making All Winter**

Chloe Coscarelli is the vegan everyone loves to love. Her enthusiasm for good food has earned her a legion of fans from both her win on the TV show Cupcake...

MINDBODYGREEN.COM



150.    In violation of California Civil Code § 3344, this Facebook page maintained by Defendants is used to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services from Defendants, including at BCHG locations still purporting to be "by Chloe" restaurants.  Defendants, through the operation of the "by Chloe" Facebook page, have knowingly used Chloe's name, photograph, and likeness to advertise, sell, and solicit customers to purchase products, merchandise, goods, and services from Defendants and third-party retailers under contract with Defendants, without Chloe's consent, and Chloe has been damaged as a result.

**Use of Chloe's Name and Image to Solicit Investors**

151.    Defendants have also used Chloe's name and image to solicit investment in "by Chloe" restaurants in violation of California Civil Code § 3344.

152.    For example, at least as of April 9, 2018, Defendants listed by Chloe on an investment platform website seeking EB-5 investments: https://eb5projects.com/profile/firm/1210-by-chloe.  This website states: "by CHLOE. is a fast-casual vegan restaurant concept that marries celebrated vegan Chef Chloe Coscarelli's award-

winning recipes with ESquared Hospitality's management expertise and multi-concept, global

portfolio."

153.    This is a screenshot from the EB-5 website at least as of April 9, 2018:



154.    The left hand side of Defendants' investor website lists 3 followers:



155.    One of the "followers" listed is purported to be Chloe as shown in this screen

shot:



156.    As of at least April 9, 2018, when a user clicked on Chloe's picture they were

taken to this URL: https://eb5projects.com/profile/user/2901-chloe-coscarelli

157.    This is a screenshot of that URL page:



158.    The website listed for Chloe in this screen shot is actually Defendants' own website.  The phone number and address listed for Chloe is actually for Defendants' restaurant in California that is still purporting to be "by Chloe."

159.    At least as of April 9, 2018, another page on the EB-5 website uses Chloe's name to solicit investments: https://eb5projects.com/events/155-live-eb-5-investment-site-visit-by-chloe

160.    This is a screen shot from this page:



161.    At least as of April 9, 2018, Defendants had listed six projects on their EB-5

website: https://eb5projects.com/projects?utf8=%ESQUARED%9C%93&open=&verified=-

1&state=-1&name=chloe&commit=Search&project_category_id=-1&regional_center_id=-

1&size=-1&documents_available=-1&videos_available=-1&investment_type_id=-1

162.    This is a screen shot of Defendants' "by Chloe" projects that were listed on the by EB-5 website:



163.    In violation of California Civil Code § 3344, the postings on the EB-5 website by Defendants are for the purpose of soliciting investment in Defendants' restaurants still purporting to be "by Chloe."  Defendants, through the postings on the EB-5 website, have knowingly used Chloe's name, photograph, and likeness to solicit investment in the by Chloe restaurants without Chloe's consent and Chloe has been damaged as a result.

164.    Defendants' unauthorized use of Chloe's, name, image, photographs, and likeness as detailed above have resulted in profits to Defendants at Chloe's expense.

165.    As a result of Defendants' violations of California Civil Code § 3344, Chloe is entitled to the actual damages suffered by her as a result of the unauthorized use of her name, image, photographs, and likeness and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.   Chloe is also entitled to punitive damages and to attorney's fees and costs.

## COUNT VIII: VIOLATION OF CALIFORNIA'S
## COMMON LAW RIGHT OF PUBLICITY
### (By Plaintiff Chloe Against ESquared and BCHG)

166.    Chloe incorporates by reference paragraphs 1 through 164.

167.    Defendants have violated Chloe's common law right of publicity because Defendants have used Chloe's identity for their commercial advantage without Chloe's consent and she has been injured as a result.

168.    As a result of Defendants' violations of Chloe's common law right of publicity, Chloe is entitled to the actual damages suffered by her as a result of the unauthorized use of her identity, name, and photograph, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.   Chloe is also entitled to punitive damages and to attorney's fees and costs.

## COUNT IX: FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125)
### (By Plaintiff Chloe Against ESquared and BCHG)

169.    Chloe incorporates by reference paragraphs 1 through 167.

170.    15 U.S.C. §1125 states:

FALSE DESIGNATIONS OF ORIGIN, FALSE
DESCRIPTIONS, AND DILUTION FORBIDDEN

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person

***

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

171.  As set forth in detail above, Defendants, in connection with the sale of goods and services, including at BCHG restaurants still purporting to be "by Chloe," have used words, terms, and names, and made false and misleading descriptions of fact about Chloe's association with the Defendants' goods and services, that are likely to cause confusion, or to cause mistake, or to deceive about Chloe's affiliation, connection, or association with Defendants, or about the origin, sponsorship, or approval of the goods, services, or commercial activities by Defendants. Chloe has been harmed by such activities and will continue to be harmed unless such conduct is enjoined.  Chloe has also been damaged in an amount to be determined at trial.

## COUNT X: VIOLATION OF CALIFORNIA
## BUSINESS AND PROFESSIONS CODE § 17200
### (By Plaintiff Chloe Against ESquared and BCHG)

172.  Chloe incorporates by reference paragraphs 1 through 170.

173.  Through the business acts and practices alleged above, Defendants have engaged in unfair competition in violation of California Business and Professions Code § 17200, including engaging in all of the following, which has caused injury and the loss of money and property to Chloe:

        a.      Use of Chloe's name as the name of "by Chloe" restaurant locations in a manner to mislead the public about Chloe's association with the "by Chloe" restaurant locations and the goods and services provided in the operation of the "by Chloe" restaurant locations.

        b.      Use of Chloe's name as the name of BCHG products, including "Chill by Chloe" frozen desserts, "Simply Gum x by Chloe" chewing gum, and "Sweets by Chloe" packaged foods sold outside BCHG stores in a manner

to mislead the public about Chloe's association with such BCHG products and the goods and services provided in connection with such BCHG products.

c.   Use of Chloe's name in marketing for "by Chloe" locations and BCHG products in a manner to mislead the public about Chloe's association with Defendants' restaurants and products, and the goods and services provided in the operation of the Defendants' restaurants and in connection with Defendants' products, including use of:

   i.   "Sweets by CHLOE"

   ii.   "Chlostess Cupcake"

   iii.   "Chill by CHLOE"

   iv.   "COFFEE BY CHLOE"

   v.   "DRIP COFFEE by CHLOE"

   vi.   "Juice by Chloe"

   vii.   "Blog by CHLOE"

   viii.   "Woof by Chloe"

   ix.   "Simply Gum x by Chloe"

   x.   "Eat By Chloe" – as domain name (www.eatbychloe.com), Instagram account name (@eatbychloe), Facebook account name (@eatbychloe), and Twitter account name (@eatbychloe)

   xi.   "By Chef Chloe" – as domain name (www.bychefchloe.com), Instagram account name (@bychefchloe), and Twitter account name (@bychefchloe)

d.      Use of Chloe's name and image on the by Chloe Website in a manner to mislead the public about Chloe's association with Defendants' restaurants and products and the goods and services provided in the operation of Defendants' restaurants and in connection with Defendants' products.

e.      Use of Chloe's name and photograph on Instagram in a manner to mislead the public about Chloe's association with Defendants' restaurants and products and the goods and services provided in the operation of Defendants' restaurants and in connection with Defendants' products.

f.      Use of Chloe's name and image on Facebook in a manner to mislead the public about Chloe's association with Defendants' restaurants and products and the goods and services provided in the operation of Defendants' restaurants and in connection with Defendants' products.

g.      Use of Chloe's name and image in soliciting investors, including on the EB-5 website, in a manner to mislead the public about Chloe's association with Defendants' restaurants and products and the goods and services provided in the operation of Defendants' restaurants and in connection with Defendants' products.

172.    Defendants' unfair business practices have caused harm and damage to Chloe and this will continue unless enjoined. Chloe has also been damaged in an amount to be determined at trial.

### COUNT XI: VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500 (By Plaintiff Chloe Against ESquared and BCHG)

174.    Chloe incorporates by reference paragraphs 1 through 172.

175.     Through the business acts and practices alleged above, Plaintiffs are informed and believe and thereon allege that Defendants have engaged in acts and practices of false advertising by making misleading statements in connection with the sale of goods or services of Defendants' restaurants and products to the public within the State of California, in violation of California Business and Professions Code § 17500, which has caused injury and the loss of money or property to Chloe as alleged above, and this harm will continue unless enjoined.  Chloe has also been damaged in an amount to be determined at trial.

### COUNT XII: VIOLATION OF THE COMMON LAW OF UNFAIR COMPETITION
### (By Plaintiff Chloe Against ESquared and BCHG)

176.     Chloe incorporates by reference paragraphs 1 through 174.

177.     Through the business acts and practices alleged above, Defendants have violated the common law of unfair competition, which has caused harm and damage to Chloe and this harm will continue unless enjoined.  Chloe has also been damaged in an amount to be determined at trial.

### COUNT XIII: UNJUST ENRICHMENT
### (By Plaintiff Chloe Against ESquared and BCHG)

178.     Chloe incorporates by reference paragraphs 1 through 176.

179.     Through the acts described above, Defendants have become unjustly enriched at Chloe's expense.

### COUNT XIV: COMMON LAW TRADEMARK INFRINGEMENT
### (By Plaintiff Chloe Against ESquared and BCHG)

180.     Chloe incorporates by reference paragraphs 1 through 178.

181.     Chloe has been using "Chloe" and "Chef Chloe" in commerce since at least May 2010 around the time she won Cupcake Wars, a nationally televised cooking competition televised on Food Network.

182.    Since 2010, "Chloe" and "Chef Chloe" have been a source identifier for cookbooks, recipes, cooking shows, retail products, special events, catering, and vegan food and beverages.

183.    Chloe owns common law trademark rights in her name "Chloe" and variations of Chloe's name.

184.    Defendants have conceded Chloe's superior common law trademark rights.  On May 6, 2015, Monica Richman, counsel for ESquared and BCHG (then CCSW) in a trademark dispute, wrote to SoftServe (a party asserting trademark claims against BCHG):

> "Our client's restaurant [by Chloe] is the creation of and is guided by Chloe Coscarelli, a vegan chef, who almost immediately became well known as 'Chef Chloe' or just 'Chloe.' Chloe appeared as a featured chef on The Cooking Channel's 'The Veg Edge' in 2010. Also in 2010, Chloe appeared in and won The Food Television Network's competition series 'Cupcake Wars,' which led to a significant article about Chloe in the New York Times later in 2010. The first of Chloe's popular and critically acclaimed series of vegan cookbooks, 'Chloe's Kitchen,' was published in early 2012. Copies of the covers of examples of these cookbooks are enclosed. Over 130,000 copies of these cookbooks have been sold. We call your attention to the fact that CHLOE is featured by itself on the covers of her cookbooks. We understand that your client did not add CHLOE to its original name, SOFT SERVE FRUIT CO., until later in 2012 - and is still not part of your store signage in Union Square. Thus, our client's enviable reputation under the name 'Chef Chloe' and 'Chloe' was established before your client began to use CHLOE'S as part of its name."

185.    Defendants have used these phrases and terms in connection with the sale, offering for sale, distribution, or advertising of goods and services provided by Defendants, through the operation of the website www.eatbychloe.com and operation of Defendants' restaurants, including BCHG restaurants still purporting to be "by Chloe", in such a manner as is likely to cause confusion, mistake or to deceive:

   a.      "Sweets by CHLOE"

      b.      "Chlostess Cupcake"

      c.      "Chill by CHLOE"

      d.      "COFFEE BY CHLOE"

      e.      "DRIP COFFEE by CHLOE"

      f.      "Juice by Chloe"

      g.      "Blog by CHLOE"

      h.      "Woof by Chloe"

      i.      "Simply Gum x by Chloe"

      j.      "Eat By Chloe" – as domain name (www.eatbychloe.com), Instagram account name (@eatbychloe), Facebook account name (@eatbychloe), and Twitter account name (@eatbychloe)

      k.      "By Chef Chloe" – as domain name (www.bychefchloe.com), Instagram account name (@bychefchloe), and Twitter account name (@bychefchloe)

186.    Defendants' infringing activities have caused and are continuing to cause damage to Plaintiff.

187.    Defendants' activities have caused, and continue to cause, irreparable harm to Plaintiff and Plaintiff's goodwill and reputation.

188.    Defendants' infringing activities constitute common law infringement of Plaintiff's "Chloe" and "Chef Chloe" trademarks.

189.    Defendants have been infringing and continue to infringe Plaintiff's trademark rights with full knowledge of or at least willful and reckless disregard for Plaintiff's common law rights and knowing that the "Chloe" and "Chef Chloe" marks are associated exclusively with Plaintiff.

190.    Defendants' conduct is intentional, willful, wanton, and malicious, and is undertaken with intent to reap the benefit of Plaintiff's goodwill and fame in her "Chloe" and "Chef Chloe" trademarks. Chloe has been harmed as a result and she will continue to be harmed unless such conduct is enjoined. Chloe has also suffered damages in an amount to be determined at trial.

### COUNT XV: COPYRIGHT INFRINGEMENT
### (By Plaintiff CKC Sales Against ESquared and BCHG)

191.    Plaintiff CKC Sales incorporates by reference paragraphs 1 through 189.

192.    By assignment, Plaintiff CKC Sales owns the following registered copyrights:

    a.      Registration Number / Date:

            TX0007509640 / 2012-03-26

            Application Title: Chloe's Kitchen.

    b.      Registration Number / Date:

            TX0007691257 / 2013-02-22

            Application Title: Chloe's Vegan Desserts.

    c.      Registration Number / Date:

            TX0007964245 / 2014-09-23

            Application Title: Chloe's Vegan Italian Kitchen.

193.    Each registered copyright covers a cookbook containing recipes and photographs.

194.    Defendants' by Chloe Website publishes recipes at this link:

https://eatbychloe.com/blog/recipes/.  Several recipes and photographs published on Defendants' by Chloe Website and social media accounts are identical or nearly identical to the recipes in Chloe's best-selling, copyrighted cookbooks.

195.    The following are some examples that existed at least as of April 9, 2018:

      a.     This is the recipe for Sugar Cookies from CHLOE'S VEGAN DESSERTS

           cookbook:

# Sugar Cookies

MAKES ABOUT TWO DOZEN 3-INCH COOKIES

*When I have something on my mind, I like to decorate cookies. It's a creative form of self-expression, and I think the world would be a better place if everyone could turn to cookie decorating in times of emotional stress. This is my go-to recipe for classic sugar cookies, so eat 'em straight or decorate to your heart's content!*

**Make-Ahead Tip:**
Unrolled cookie dough can be made in advance and kept refrigerated for up to 1 week or frozen for up to 1 month. Thaw before rolling out or scooping.

| | |
|---|---|
| 2½ cups all-purpose flour* | 3 to 4 tablespoons water |
| 1 cup sugar, plus extra for sprinkling | 1 teaspoon pure vanilla extract |
| ½ teaspoon baking soda | Cookie Icing (page 238), optional |
| 1 cup vegan margarine | |

Preheat oven to 350 degrees. Line 2 or 3 large baking sheets with parchment paper or Silpat.

In a food processor, combine flour, 1 cup sugar, and baking soda. Add margarine, 3 tablespoons water, and vanilla. Pulse until soft and doughy. If needed, add 1 more tablespoon water.

Working with half the dough at a time, on a lightly floured surface, roll the dough out until it is ¼ inch thick. Using a 3-inch cookie cutter, cut out as many shapes as you can. You can combine any remaining scraps to roll and cut more cookies. If the dough gets too soft to work with, refrigerate it for 10 to 15 minutes.

Place the shapes on the prepared baking sheets about ½ inch apart and sprinkle with sugar. Bake for 10 to 12 minutes until lightly golden around the edges. Let cool on the pan.

When cookies have cooled completely, decorate with icing, if using, and serve.

b.      The recipe for Sugar Cookies on the by Chloe Website is set forth below
and is identical to the recipe for Sugar Cookies in the CHLOE'S VEGAN
DESERTS cookbook:

## HOLIDAY SUGAR COOKIES

MAKES ABOUT 2 DOZEN 3-INCH COOKIES

This **#MeatlessMonday** were taking you to sugar town! Sugar cookies that is.

Just in time for Christmas, we're showing you how to whip up expert level vegan sugar cookies for you and yours to enjoy.

And in case you didn't know, its not that easy to find vegan sprinkles or food dies to make those sugar cookies pop! That's why we're providing you with our picks for the best ones, and while we're at it we're throwing in some cookie cutters to make sure your batch stands out.

Get bakin'!

**In a holiday rush + live in NYC?** We got you covered! Drop into **by CHLOE.** to pick up some freshly baked and frosted holiday sugar cookies (pictured above)!

### COOKIES

2½ cups all-purpose flour

1 cup organic sugar, plus extra for sprinkling

½ tsp baking soda

1 cup **vegan margarine**

3 to 4 Tbsp water

1 tsp pure vanilla extract

1 cup **icing**

### ICING

1/3 cup vegan margarine, melted

3 cups powdered sugar

2 to 4 Tbsp water

**vegan food dye**, optional

### PREP

Preheat oven to 350°.

Line 2 or 3 large baking sheets with parchment paper or Silpat.

### COOKIES

In a **food processor**, combine all-purpose flour, organic sugar, and baking soda. Add vegan margarine, water, and pure vanilla extract. Pulse until soft and doughy. If needed, add 1 more tablespoon water.

Working with half the dough at a time, on a lightly floured surface, roll the dough out until it is ¼ inch thick.

Using a 3-inch **cookie cutter***, cut out as many shapes as you can. You can combine any remaining scraps to roll and cut more cookies.

If the dough gets too soft to work with, refrigerate it for 10 to 15 minutes.

Place the shapes on the prepared baking sheets about ½ inch apart and sprinkle with organic sugar.

Bake for 10 to 12 minutes until lightly golden around the edges. Let cool on the pan.

https://eatbychloe.com/2015/12/holiday-sugar-cookies/ accessed on
4/5/2018.

c.      This is the recipe for Double Piecrust from the copyrighted cookbook

CHLOE'S VEGAN DESSERTS:

# Double Piecrust

MAKES TWO 9-INCH PIECRUSTS

2½ cups all-purpose flour (or half all-
purpose flour and half whole-wheat
pastry flour), plus extra for rolling
1 tablespoon sugar
1 teaspoon salt

1 cup non-hydrogenated vegetable
shortening or vegan margarine
(if using margarine, omit salt)
10 tablespoons ice-cold water,
as needed

You can make the dough by hand or using a food processor.

*By hand:* In a medium bowl, whisk together flour, sugar, and salt. Using a pastry cutter, cut shortening into flour until mixture has a crumbly consistency. Add ice water, 1 tablespoon at a time, and mix with a wooden spoon until the dough just holds together. You may not need to use all of the water. Do not overwork.

*Using a food processor:* Add flour, sugar, and salt to the food processor. Pulse until ingredients are combined. Add shortening and pulse until mixture has a crumbly consistency. Add ice water, 1 tablespoon at a time, and pulse until the dough just holds together. You may not need to use all of the water. Do not overprocess.

Form the dough into 2 discs and wrap in plastic wrap. Store in the refrigerator until ready to use. If the dough is difficult to roll, let it soften at room temperature until it is easier to work with.

d.     This is the recipe for Pie Crust on Defendants' by Chloe Website which is a copy of the recipe from the copyrighted cookbook CHLOE'S VEGAN DESSERTS:

## HOLIDAY HACKS: PIE CRUST



MAKES TWO 9-INCH PIE CRUSTS

We know that the holidays can be intimidating to at-home chefs. But no worries, **by CHLOE.** is here for you to lean on! We're your one-stop shop for **#HolidayHacks** to help you cook and bake your way through the season like a pro.

Life's short, so we'll cover dessert first!

Pies are a staple for most holiday meals, so make sure to have the best pie crust out there and give our recipe for double pie crust a whirl. No need to skip out on sweets because this recipe is butter-free.

Fill it with your favorite sweet or savory blend of fruits and spices, or check out our recipe for **Apricot Cherry Pie** for some more flavor inspiration.

Check back to follow all of our **#HolidayHacks** and rock the kitchen this holiday season.

**INGREDIENTS**

2 ½ cups all-purpose flour, plus extra for rolling

1 Tbsp organic sugar

1 cup non-hydrogenated vegetable shortening or **vegan margarine**

10 Tbsp ice cold water, as needed

1 tsp sea salt

**BY HAND**

In a medium bowl, whisk together all-purpose flour, organic sugar, and sea salt.

Using a pastry cutter, cut shortening or vegan margarine into flour until mixture has a crumbly consistency.

Add ice water, one tablespoon at a time, and mix with a wooden spoon until the dough just holds together. You may not need to use all of the water.

Do not overwork the dough.

**USING A FOOD PROCESSOR**

Add all-purpose flour, organic sugar and sea salt to a **food processor**. Pulse until ingredients are combined.

Add shortening or vegan margarine and pulse until mixture has a crumbly consistency.

Add ice water, one tablespoon at a time, and pulse until the dough just holds together. You may not need to use all of the water.

Do not over process.

**TO STORE**

Form the dough into two discs, and wrap in plastic wrap.

Store in the refrigerator until ready to use.

If the dough is difficult to roll, let it soften at room temperature until it is easier to work with.

https://bychefchloe.com/2015/11/holiday-hacks-pie-crust/ accessed on 4/8/2018.

e.      This the recipe for dog treats from the CHLOE'S KITCHEN cookbook:

# Peanut Butter Dog Treats

MAKES ABOUT 50 TREATS

*Now, something for our furry friends! There's a whole lot of tail-waggin' and lip-smackin' when my pups smell these all-natural treats baking. These also make great gifts: Wrap these treats and, when you tie them off, attach a dog-bone cookie cutter and a copy of this recipe.*

*Note: If you do not have a cookie cutter, you can use a small cookie scoop and flatten the dough with the palm of your hand.*

|  |  |
|---|---|
| 2 cups whole-wheat flour | 1 tablespoon blackstrap molasses |
| ½ cup water, plus extra as needed | 2 cups vegan carob chips, optional |
| ⅓ creamy peanut butter, softened | |

Preheat the oven to 300 degrees.

In a medium bowl, mix flour, water, peanut butter, and molasses with a spoon until thoroughly combined. Add 1 or 2 more tablespoons water so that dough comes together and is moist. Put the dough on a floured surface and press with your hands until the dough is about ¼ inch thick. Using a 2-inch dog-bone cookie cutter, cut out dog treats, and place them close together on a large baking sheet.

Bake treats for 20 minutes. Turn off oven and leave then in the oven to harden for a few hours or overnight.

When treats are dry and cooled, melt carob chips, if using, in a double boiler or microwave. Dip half of the dog bone into the melted carob and set on a rack to dry. Store in a sealed container at room temperature for up to 2 weeks.

f.   The recipe for dog treats on the by Chloe Website is set forth below and is

identical to the recipe for dog treats in CHLOE'S KITCHEN cookbook:

**INGREDIENTS**

2 cups whole-wheat flour

1/2 cup water (plus extra as needed)

1/3 creamy peanut butter

1 Tbsp blackstrap molasses

2 cups vegan carob chips

*Photos: **Mikey Pozarik**

**PREP**

Preheat the oven to 300°F.

**BONES**

In a medium bowl, mix whole-wheat flour, water, creamy peanut butter, and blackstrap molasses with a spoon until thoroughly combined.

Add 1 or 2 more tablespoons of water so that the dough is moist and comes together.

**BUILD**

Put the dough on a floured surface and press with your hands until the dough is about 1/4 inch thick.

Using a 2-inch dog-bone cutter (like this **one**), cut out dog treats, and place them close together on a large baking sheet.

Bake treats for 20 minutes. Turn the oven off and leave in to harden for a few hours or overnight.

**DECORATE**

When treats are dry and cooled, melt carob chips, in a double boiler or microwave.

Dip half of the dog bone into the melted carob and set on a rack to dry.

**NOTES + SERVING TIPS**

Store in a sealed container at room temperature for up to 2 weeks.

Pro Tip: If you do not own a cookie cutter, you can use a small cookie scoop and flatten the dough with the palm of your hand.

https://eatbychloe.com/2015/08/dog-days-of-summer/ accessed on

4/5/2018.

g.   This is the recipe for Parmesan Topping from the copyrighted cookbook

CHLOE'S VEGAN ITALIAN KITCHEN:

# PARMESAN TOPPING

## PARMIGIANO

**MAKES ABOUT ¾ CUP**

*Use this as a topping on pastas and pizzas, just as you would with Parmesan cheese. Store in the freezer for up to 6 months and use as desired.*

**½ cup blanched almonds**

**1 tablespoon nutritional yeast flakes**

**½ teaspoon sea salt**

**1 teaspoon maple syrup**

In a food processor, combine almonds, nutritional yeast, and salt, and process until a fine meal forms. Drizzle in maple syrup, and pulse until incorporated.

h.      This is the recipe for Almond Parm on Defendants' by Chloe Website
which is identical to the recipe from the copyrighted cookbook CHLOE'S
VEGAN ITALIAN KITCHEN:

Listen up Italian food lovers (AKA everyone) no more mourning the absence of parmesan cheese at the *vegan* dinner table... this recipe for **Almond Parm** tastes pretty darn close to the real thing, *and* it's healthier for you #micdrop

Sprinkle over pastas, sprinkle over pizza, sprinkle. it. everywhere. and we mean EVERYWHERE, it's that tasty.

Check out other fun and mysterious ways to use almonds **here**! **#IDKANCDT**

**INGREDIENTS**

1/2 cup blanched **almonds**

1 tsp **nutritional yeast flakes**

1 tsp **pure maple syrup**

1/2 tsp sea salt

**METHOD**

In a **food processor** combine blanched almonds, nutritional yeast flakes, sea salt and process until a fine meal begins to form.

Drizzle pure maple syrup and pulse until incorporated.

**NOTES + SERVING TIPS**

Store in the refrigerator for up to one week or in the freezer for up to 6 months.

https://bychefchloe.com/2015/09/almond-parm/ accessed on 4/8/2018.

i.      This is the recipe for Homemade Ravioli Dough from the copyrighted

cookbook CHLOE'S VEGAN ITALIAN KITCHEN:

# HOMEMADE RAVIOLI DOUGH
## IMPASTO PER RAVIOLI FATTO IN CASA

**SERVES 6**

In a food processor, combine all ingredients and process until a ball of dough forms. Transfer to a lightly floured work surface and knead for a few minutes. Cover tightly with plastic wrap and refrigerate for at least 30 minutes.

Cut the dough into 4 equal parts, and work with 1 part at a time. Roll the pasta dough out using a pasta machine, dusting with flour often so that it doesn't stick. Continue to roll it until very thin, or on the number 4 pasta setting.

Cut the dough into desired shape using a sharp knife, pizza cutter, or pasta machine cutter.

½ cup silken tofu

2 tablespoons olive oil

2 tablespoons water

1 teaspoon sea salt

2 cups all-purpose flour, plus extra for dusting

j.      This is the recipe for Chestnut Ravioli on Defendants' by Chloe Website,

the dough portion of which is a copy of the recipe from the copyrighted

cookbook CHLOE'S VEGAN ITALIAN KITCHEN:

## CHESTNUT RAVIOLI

SERVES 6

Did you think going plant-based meant the end of delicious ravioli?

Well think again! Because this recipe will surely knock your socks off...

We're having all sorts of fun with **Chestnuts** this **Winter** season! Be sure to check it all out **#IDKANCDT**

**DOUGH**

½ cup **silken tofu**

2 Tbsp olive oil

2 Tbsp water

1 ½ cup all-purpose flour, plus extra for dusting

½ cup chestnut flour

1 tsp **sea salt**

**CHESTNUT FILLING**

½ cup mushrooms, chopped

1 yellow onion, finely chopped

¼ cup **chestnuts**, chopped

¼ cup fresh sage leaves

1 cup **Vegan Ricotta**

½ tsp **sea salt**

freshly ground pepper, to taste

**DOUGH**

In a **food processor**, combine all ingredients and process until dough forms.

Transfer to a lightly floured work surface and knead for a few minutes.

Cover tightly with plastic wrap and refrigerate for at least 30 minutes.

Cut the dough into 4 equal parts, and work with 1 part at a time.

Roll the pasta dough out using a pasta machine, dusting with flour often so it doesn't stick.

Continue to roll it until very thin, or on the number 4 pasta setting.

**CHESTNUT FILLING**

In a large skillet, heat olive oil over medium high heat and sauté the chopped yellow onion and chopped mushrooms until they begin to caramelize.

Season with sea salt and freshly ground pepper.

Add the chopped chestnuts and fresh sage leaves and continue to cook.

Combine the mixture and vegan ricotta in a food processor and gently pulse until combined.

**RAVIOLI**

Cut the pasta sheets into 3-inch circles and place 1 to 2 teaspoons of filling in the center of each circle.

Top with a second circle, lightly wet edges with cold water using your fingertips and press edges to seal.

Bring water to a boil and cook ravioli 3-5 minutes.

https://eatbychloe.com/2015/12/chestnut-ravioli/  accessed on 4/8/2018.

72

k.      This is the recipe for Rosemary Gravy from the copyrighted cookbook

CHLOE'S VEGAN ITALIAN KITCHEN:

# THYME FOR STUFFED PORTOBELLOS WITH ROSEMARY GRAVY★

FUNGHI PORTOBELLO RIPIENI DI TIMO E SUGHETTO AL ROSMARINO

**SERVES 6**

2 tablespoons olive oil

1 onion, finely chopped

1 cup cashews

4 garlic cloves, minced

1 cup cooked brown rice

1 (15-ounce) can lentils, rinsed and drained (or 2 cups cooked)

¼ cup bread crumbs

½ cup vegetable broth

1 teaspoon dried basil

1 tablespoon fresh thyme leaves, plus extra for garnish

1 teaspoon sea salt

1 teaspoon freshly ground black pepper

6 portobello mushrooms, stems and gills removed

1 tomato, sliced thinly

**ROSEMARY GRAVY**

2 tablespoons canola oil

1 large onion, roughly chopped

¼ cup nutritional yeast flakes

½ cup all-purpose flour

2 cups water

3 tablespoons soy sauce

1 garlic clove, minced

1 tablespoon chopped fresh rosemary

Sea salt and freshly ground black pepper

Preheat the oven to 350°F. Lightly grease a medium baking sheet.

In large skillet, heat 2 tablespoons of the oil over medium-high heat and add onion and cashews. Sauté until onion is soft and lightly browned. Add garlic and let cook a few more minutes until fragrant.

In a large bowl, combine onion mixture, brown rice, lentils, bread crumbs, broth, basil, thyme, salt, and pepper.

Brush both sides of mushroom caps with oil and season with salt and pepper. Place them top side down on baking sheet. Stuff mushrooms with about ½ cup of the lentil stuffing, and press 1 tomato slice on top of the stuffing.

Bake for about 30 minutes, or until the stuffing is browned and mushrooms are cooked through. Garnish with extra thyme and serve with gravy.

**For the rosemary gravy:** In a medium saucepan, heat oil over medium-high heat and sauté onion until soft. Add nutritional yeast and flour, and whisk for about 2 minutes. The mixture will be dry. Add water, soy sauce, garlic, and rosemary. Continue to cook, whisking continuously, until mixture is very thick. Transfer gravy to a blender and puree until smooth. Season to taste.

172   CHLOE'S VEGAN ITALIAN KITCHEN

l.       This is the recipe for Rosemary Gravy on Defendants' by Chloe Website, which is a copy of the recipe from the copyrighted cookbook CHLOE'S VEGAN ITALIAN KITCHEN:

## ROSEMARY GRAVY

MAKES ABOUT 2 CUPS

On **Thanksgiving** everyone looks forward to the gravy because, well, it goes on everything!

Gravy can make or break your holiday dinner, and lucky for you we have the answer to all of your vegan gravy dreams.

The mix of flavors from rosemary, sweet onion, and soy sauce will complement all of your holiday dishes perfectly, just see for yourself!

**INGREDIENTS**

2 Tbsp canola oil

1 large yellow onion, roughly chopped

¼ cup **nutritional yeast flakes**

½ cup all-purpose flour

2 cups water

3 Tbsp soy sauce

1 **garlic** clove, minced

1 Tbsp fresh **rosemary**, chopped

sea salt, to taste

freshly ground pepper, to taste

**METHOD**

In a medium saucepan, heat olive oil over medium-high heat and sauté chopped onion until soft.

Add nutritional yeast and all-purpose flour, and whisk for about 2 minutes. The mixture will be dry.

Add water, soy sauce, minced garlic, and chopped fresh rosemary.

Continue to cook, whisking continuously, until mixture is very thick.

Transfer gravy to a **blender** and puree until smooth.

Season to taste.

**NOTES + SERVING TIPS**

Don't forget to double the recipe for larger parties so there's more goodness to go around!

https://bychefchloe.com/2015/11/rosemary-gravy/   accessed on 4/8/2018.

196.     Chloe has been harmed as a result of this conduct and will continue to be harmed unless such conduct is enjoined. Chloe has also suffered damages in an amount to be determined at trial in addition to being awarded her attorneys fees and costs.

## COUNT XVI: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114
### (By Plaintiff CC Hospitality Against ESquared and BCHG)

197.     Plaintiff CC Hospitality incorporates by reference paragraphs 1 through 195.

198.     Plaintiff CC Hospitality owns the federal registration for the mark "Chef Chloe" in the field of recipes and cooking.  (Reg. No. 5269199) (See **Exhibit C** attached).

199.    Defendants have either actual or constructive knowledge of Plaintiff's registration and had that knowledge before Defendants' infringement of the mark.

*www.bychefchloe.com, eatbychloe.com, @bychefchloe, and @eatbychloe*

200.    Defendants own, operate, or control the website domain www.bychefchloe.com and the associated Instagram and Twitter accounts @bychefchloe.  When a user types the name bychefchloe.com into a web browser the user is redirected to the by Chloe Website at www.eatbychloe.com, which is the website maintained by Defendants for restaurants still purporting to be a "by Chloe" restaurant chain.  When a user accesses the @bychefchloe account on Instagram, the user is instructed "PLEASE FOLLOW @EATBYCHLOE // ACCOUNT NO LONGER ACTIVE," referring the user to the @eatbychloe Instagram account maintained by Defendants.

201.    In turn, the @eatbychloe Instagram account maintained by Defendants lists as its associated website, the by Chloe Website at www.eatbychloe.com.

202.    Defendants' registration, use, or control of the domain name www.bychefchloe.com and the domain name www.eatybychloe.com and the associated social media accounts @bychefchloe and @eatbychloe are violations of 15 U.S.C. § 1114(1)(a) in that Defendants have, without the consent of Plaintiff CC Hospitality, the registrant of the trademark "Chef Chloe", used in commerce a reproduction, counterfeit, copy, or colorable imitation of that registered mark in connection with the sale, offering for sale, distribution, or advertising of goods and services provided by Defendants through the operation of the websites www.bychefchloe.com, www.eatbychloe.com and the social media accounts @bychefchloe and @eatbychloe.  Defendants have used the imitation "Chef Chloe" in such a manner as is likely to cause confusion, mistake, or deceive.

75

203.    Defendants' registration, use, or control of the domain name

www.bychefchloe.com and their linkage of it to the by Chloe Website eatbychloe.com violates

15 U.S.C. § 1114(1)(b) in that Defendants have, without the consent of Plaintiff CC Hospitality,

the registrant of the trademark Chef Chloe, used in commerce a counterfeit, copy, or colorable

imitation of the registered mark of Plaintiff and applied such counterfeit, copy, or colorable

imitation to advertisements intended to be used in commerce, (namely the website

www.eatbychloe.com in connection with the sale, offering for sale, distribution, or advertising of

goods or services.  Defendants have used the imitation www.bychefchloe.com website which is

linked to the www.eatbychloe.com website in such a manner as is likely to cause confusion,

mistake or to deceive.

*www.sweetsbychloe.com*

204.    Defendants own, operate, or control the website domain

www.sweetsbychloe.com.  When a user types the name sweetsbychloe.com into a web browser

the user is redirected to the by Chloe Website at www.eatbychloe.com which is the website

maintained by Defendants for restaurants still purporting to be a "by Chloe" restaurant chain.

Defendants' registration, use, or control of the domain name www.sweetsbychloe.com and the

linked domain name www.eatybychloe.com are violations of 15 U.S.C. § 1114(1)(a) in that

Defendants have without the consent of Plaintiff CC Hospitality, who is the registrant of the

trademark "Chef Chloe", used in commerce a reproduction, counterfeit, copy, or colorable

imitation of that registered mark in connection with the sale, offering for sale, distribution, or

advertising of goods and services provided by Defendants through the operation of the websites

www.sweetsbychloe.com and www.eatbychloe.com.  Defendants have used the imitation "Chef

Chloe" in such a manner as is likely to cause confusion, mistake, or deceive.

205.     Defendants' registration, use, or control of the domain name

www.sweetsbychloe.com and their linkage of it to the by Chloe Website eatbychloe.com violates

15 U.S.C. § 1114(1)(b) in that Defendants have, without the consent of Plaintiff CC Hospitality,

who is the registrant of the trademark "Chef Chloe", used in commerce a counterfeit, copy, or

colorable imitation of the registered mark of Plaintiff and applied such counterfeit, copy, or

colorable imitation to advertisements intended to be used in commerce, namely the linked

website www.eatbychloe.com in connection with the sale, offering for sale, distribution, or

advertising of goods or services. Defendants have used the imitation www.sweetsbychloe.com

website which is linked to the www.eatbychloe.com  website in such a manner as is likely to

cause confusion, mistake or to deceive.

*www.chillbychloe.com*

206.     Defendants own, operate, or control the website domain www.chillbychloe.com.

When a user types the name chillbychloe.com into a web browser the user is directed to the by

Chloe Website at www.eatbychloe.com which is the website maintained by Defendants for

restaurants still purporting to be a "by Chloe" restaurant chain.  Defendants' registration, use, or

control of the domain name www.chillbychloe.com and the linked domain name

www.eatbychloe.com are violations of 15 U.S.C. § 1114(1)(a) in that Defendants have, without

the consent of Plaintiff CC Hospitality, who is the registrant of the trademark "Chef Chloe", used

in commerce a reproduction, counterfeit, copy, or colorable imitation of that registered mark in

connection with the sale, offering for sale, distribution, or advertising of goods and services

provided by Defendants through the operation of the websites www.chillbychloe.com and

www.eatbychloe.com.  Defendants have used the imitation "Chef Chloe" in such a manner as is

likely to cause confusion, mistake, or deceive.

207.    Defendants' registration, use, or control of the domain name

www.chillbychloe.com and their linkage of it to the by Chloe Website www.eatbychloe.com

violates 15 U.S.C. § 1114(1)(b) in that Defendants have, without the consent of Plaintiff CC

Hospitality, who is the registrant of the trademark "Chef Chloe", used in commerce a counterfeit,

copy, or colorable imitation of the registered mark of Plaintiff and applied such counterfeit,

copy, or colorable imitation to advertisements intended to be used in commerce, namely the

linked  website www.eatbychloe.com in connection with the sale, offering for sale, distribution,

or advertising of goods or services.  Defendants have used the imitation  www.chillbychloe.com

website which is linked to the www.eatbychloe.com website in such a manner as is likely to

cause confusion, mistake or to deceive.

208.    Also in violation of 15 U.S.C. § 1114(1)(a) and (b), Defendants have used these

phrases and terms in connection with the sale, offering for sale, distribution, or advertising of

goods and services provided by Defendants, including through the operation of the website

www.eatbychloe.com and the New York City "Sweets by Chloe" store, in such a manner as is

likely to cause confusion, mistake or to deceive:

       a.     "Sweets by CHLOE"

       b.     "Chlostess Cupcake"

       c.     "Chill by CHLOE"

       d.     "COFFEE BY CHLOE"

       e.     "DRIP COFFEE by CHLOE"

       f.     "Juice by Chloe"

       g.     "Blog by CHLOE"

       h.     "Woof by Chloe"

      i.      "Simply Gum x by Chloe"

209.    As a proximate cause of Defendants' activities CC Hospitality has been harmed.

210.    CC Hospitality is entitled to injunctive relief under 15 U.S.C. § 1116 and recovery of damages from Defendants jointly and severally, under 15 U.S.C. § 1117(a). Damages include the actual damages sustained by CC Hospitality, Defendants' profits, and the costs of the action together with CC Hospitality's reasonable attorney's fees. In the alternative, CC Hospitality is entitled to recover damages in such sums as the court may find just according to the circumstances of the case.

### COUNT XVII: VIOLATION OF 15 U.S.C. § 1125(d) – CYBER PIRACY
### (By Plaintiff CC Hospitality Against ESquared and BCHG)

211.    Plaintiff CC Hospitality incorporates by reference paragraphs 1 through 209.

212.    15 U.S.C. § 1125(d) states:

Cyber piracy prevention

(1)

(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

213.    Plaintiff CC Hospitality filed a registration for the mark "Chef Chloe," which is the personal name of Chloe Coscarelli, on August 11, 2016 and later received a federal registration for the mark "Chef Chloe" in the field of recipes and cooking (Reg. No. 5269199).

214.     Defendants have registered, trafficked in, and used marks identical to, or confusingly similar to marks owned by CC Hospitality.

215.     Defendants registered the domain name eatbychloe.com on September 22, 2016.

216.     Defendants, who registered, use, and control the domain name eatbychloe.com have violated 15 U.S.C. § 1125(d) in that Defendants have demonstrated a bad faith intent to profit from CC Hospitality's mark "Chef Chloe" and have registered, controlled and used the domain name eatbychloe.com, that is confusingly similar to CC Hospitality's mark and/or dilutive of that mark.

217.     Defendants registered the domain name sweetsbychloe.com on September 14, 2016.

218.     Defendants, who registered, use, and control the domain name sweetsbychloe.com, have violated 15 U.S.C. § 1125(d) in that Defendants have demonstrated a bad faith intent to profit from CC Hospitality's mark "Chef Chloe" and have registered, controlled and used the domain name eatbychloe.com, that is confusingly similar to CC Hospitality's mark and/or dilutive of that mark.

219.     Defendants registered the domain name chillbychloe.com on September 22, 2016.

220.     Defendants, who registered, use, and control the domain name chillbychloe.com, have violated 15 U.S.C. § 1125(d) in that Defendants have demonstrated a bad faith intent to profit from CC Hospitality's mark "Chef Chloe" and have registered, controlled and used the domain name eatbychloe.com, that is confusingly similar to CC Hospitality's mark and/or dilutive of that mark.

221.    Defendants' bad faith cyber piracy entitles CC Hospitality to an order of the court directing forfeiture and/or cancellation of the domain names eatbychloe.com, sweetsbychloe.com, chillbychloe.com, or the transfer of that domain name to CC Hospitality.

222.    CC Hospitality is also entitled to injunctive relief under 15 U.S.C. § 1116 and recovery of damages from Defendants jointly and severally under 15 U.S.C. § 1117.  Damages include three times the actual damages sustained by CC Hospitality, Defendants' profits and the costs of the action, together with CC Hospitality's attorney's fees or in the alternative, such sum as the court may find to be just according to the circumstances of the case or in the alternative, at the election of CC Hospitality, statutory damages.

### COUNT XVIII: VIOLATION OF
### CALIFORNIA CIVIL CODE. § 17525 – CYBER PIRACY
### (By Plaintiff Chloe Against ESquared and BCHG)

223.    Plaintiff Chloe incorporates by reference paragraphs 1 through 221.

224.    California Business and Professions Code § 17525 states in relevant part:

> It is unlawful for a person, with a bad faith intent to register, traffic in, or use a domain name, that is identical or confusingly similar to the personal name of another living person or deceased personality, without regard to the goods or services of the parties.

225.    California Business and Professions Code § 17526 states:

> In determining whether there is a bad faith intent pursuant to Section 17525, a court may consider factors, including, but not limited to, the following: …. (b)  The extent to which the domain name consists of the legal name of the person alleged to be in violation of this article or a name that is otherwise commonly used to identify that person.

226.    Defendants are trafficking in and using in bad faith the following domain names which are identical or confusingly similar to Chloe's name:

    a.    www.bychefchloe.com

    b.    www.eatbychloe.com

    c.       www.sweetsbychloe.com

    d.       www.chillbychloe.com

227.    Chloe has been damaged and is entitled to monetary damages and an order transferring these domain names to her.

**COUNT XIX: CANCELLATION OF U.S. REGISTRATION NO. 4,833,607**
**FALSE SUGGESTION OF ASSOCIATION UNDER LANHAM ACT § 2(a)**
**(By Plaintiffs Chloe and CC Hospitality**
**Against Defendant BCHG)**

228.    Plaintiffs Chloe and CC Hospitality incorporate by reference paragraphs 1 through 226.

229.    Defendant BCHG is the owner of record of U.S. Trademark Registration No. 4,833,607 for the alleged mark by CHLOE (the "by CHLOE Mark") in International Class 043. The by CHLOE Mark is registered in connection with "restaurant and catering services." (See **Exhibit D** attached). Registration for the by CHLOE Mark issued on October 13, 2015.

230.    Plaintiffs have standing to challenge the alleged by CHLOE Mark as Plaintiffs are and will be damaged by the continued registration of the by CHLOE Mark and by BCHG's attempts to enforce the by CHLOE Mark against Chloe and CC Hospitality, including Defendants' assertion of the by CHLOE Mark against CC Hospitality in opposition to its pending application serial number 87633292 for the mark "CHEF CHLOE" in connection with catering services and restaurant services (Opposition No. 91239730) and pending application serial number 87671339 for the mark "CHLOE'S DELICIOUS" in connection with "Sauces; salad dressings; savory sauces used as condiments; chutneys; packaged meals consisting primarily of pasta or rice; mixes for making baking doughs and batter" (Opposition No. 91241246). In addition, Chloe and CC Hospitality would be harmed by the continued

registration of the by CHLOE Mark as that registration falsely suggests a connection with Chloe or CC Hospitality.

231.    15 U.S.C. § 1052(a) bars the registration of marks that "[c]onsists of or comprises . . . matter which may . . . falsely suggest a connection with persons, living or dead."

232.    As set forth in great detail above, Chloe, an award-winning chef, television personality, and best-selling cookbook author, rose to fame in 2010 as the first vegan chef to win Food Network's popular nationally televised competition series "Cupcake Wars." Following that victory, Chloe has made frequent appearances on national television networks such as ABC, NBC, CBS, CNN, VH1, Food Network, and The Cooking Channel, and she is a regular contributor to NBC's *The TODAY Show*, where she demonstrates her vegan recipes to a national audience. *The New York Times*, *Zagat*, and *Forbes* have each recognized Chloe in their "30 Under 30" award series for her outstanding culinary achievement.

233.    The first of Chloe's popular and critically acclaimed series of vegan cookbooks, "CHLOE'S KITCHEN," was published in early 2012. CHLOE'S KITCHEN was followed by "CHLOE'S VEGAN DESSERTS" in 2013, "CHLOE'S VEGAN ITALIAN KITCHEN" in 2014, and "CHLOE FLAVOR" in 2018.  "Chloe" as Ms. Coscarelli is widely known, is prominently featured on the covers of all of her vegan cookbooks.

234.    As BCHG has admitted, Chloe's fame and reputation as a vegan chef under the name "Chef Chloe" and "Chloe" was well established before BCHG's application for the by CHLOE trademark was filed and well before the alleged date of first use of the by CHLOE trademark on July 24, 2015.  More specifically, on May 6, 2015, Monica Richman, counsel for Defendants ESquared and BCHG (formerly CCSW) in a trademark dispute wrote to the General

Counsel of Soft Serve Fruit Company LLC (a party asserting trademark claims against BCHG, then CCSW) .

> "Our client's restaurant [by Chloe] is the creation of and is guided by Chloe Coscarelli, a vegan chef, who almost immediately became well known as 'Chef Chloe' or just 'Chloe.' Chloe appeared as a featured chef on The Cooking Channel's 'The Veg Edge' in 2010. Also in 2010, Chloe appeared in and won The Food Television Network's competition series 'Cupcake Wars,' which led to a significant article about Chloe in the New York Times later in 2010. The first of Chloe's popular and critically acclaimed series of vegan cookbooks, 'Chloe's Kitchen,' was published in early 2012. Copies of the covers of examples of these cookbooks are enclosed. Over 130,000 copies of these cookbooks have been sold. We call your attention to the fact that CHLOE is featured by itself on the covers of her cookbooks. We understand that your client did not add CHLOE to its original name, SOFT SERVE FRUIT CO., until later in 2012 - and is still not part of your store signage in Union Square. Thus, our client's enviable reputation under the name 'Chef Chloe' and 'Chloe' was established before your client began to use CHLOE'S as part of its name."

235.    Chloe Coscarelli's fame and reputation as "Chloe" and "Chef Chloe" is so uniquely associated with vegan food and cooking that a connection with Chloe or Chef Chloe is assumed by BCHG's use of the by CHLOE Mark in connection with its vegan restaurants and catering services.

236.    A Google search on the term "Chef Chloe" performed on April 5, 2018 yielded these top results:



237.    Chloe is not involved in BCHG's operation of its vegan restaurants and ceased to be involved in the business when Defendants wrongfully excluded her from the business and then purported to purchase her membership interest in BCHG in 2017.

238.    BCHG's by CHLOE Mark unmistakably identifies "Chloe" or "Chef Chloe" as the source of its vegan restaurant and catering services.

239.    In fact, BCHG has admitted in a pending opposition proceeding (Opposition No. 91239730) that the by CHLOE Mark suggests that "Chloe" or "Chef Chloe" is "responsible for the services to follow."

240.    BCHG's continued registration and use of the by CHLOE Mark in connection with its chain of vegan restaurants without Chloe's involvement or permission violates 15 U.S.C. § 1052(a) because consumers will erroneously presume a connection with Chloe or Chef Chloe.

241.    The by CHLOE Mark should be cancelled under 15 U.S.C. § 1064 because the mark was obtained contrary to the provisions of 15 U.S.C. § 1052(a) in that the mark falsely suggests a connection with Plaintiff Chloe, a famous vegan chef widely known as "Chef Chloe" or "Chloe" who is not associated with BCHG.

242.    Under 15 U.S.C. § 1119, this Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register about the by CHLOE Mark.

**COUNT XX: CANCELLATION OF U.S. REGISTRATION NO. 4,833,607**
**REGISTRATION WITHOUT WRITTEN CONSENT UNDER LANHAM ACT § 2(c)**
**(By Plaintiffs Chloe and CC Hospitality**
**Against BCHG)**

243.    Plaintiffs Chloe and CC Hospitality incorporate by reference paragraphs 1 through 241.

244.    Defendant BCHG is the owner of record of U.S. Trademark Registration No. 4,833,607 for the by CHLOE Mark in International Class 043.  The by CHLOE Mark is registered in connection with "Restaurant and catering services." Registration for the by CHLOE Mark issued on October 13, 2015.

245.    Chloe and CC Hospitality have standing to challenge the alleged by CHLOE Mark as they are and will be damaged by the continued registration of the by CHLOE Mark and by Defendants' attempts to enforce the by CHLOE Mark against them, including BCHG's assertion of the by CHLOE Mark against CC Hospitality in opposition to its pending application serial number 87633292 for the mark "CHEF CHLOE" in connection with catering services and restaurant services and pending application serial number 87671339 for the mark "CHLOE'S

DELICIOUS" in connection with "Sauces; salad dressings; savory sauces used as condiments; chutneys; packaged meals consisting primarily of pasta or rice; mixes for making baking doughs and batter".  In addition, Chloe and CC Hospitality would be harmed by the continued registration of the by CHLOE Mark which consists of Chloe's name without her consent.

246.    15 U.S.C. § 1052(a) absolutely bars the registration of a mark that "[c]onsists of or comprises a name, portrait, or signature identifying a particular living individual except by his written consent."

247.    In this case, the application for the by CHLOE Mark identifies Chloe, widely known as "Chloe" or "Chef Chloe", a living individual.

248.    Despite filing an application for Chloe's name, the application for the by CHLOE Mark was not signed by Chloe, nor did BCHG demonstrate the required written consent to register her name as a trademark as part of the application.  In fact, the application for the by CHLOE Mark was signed by Haber, who falsely purported to be a "manager" of the applicant BCHG (then CCSW).

249.    Chloe is an award-winning chef, television personality, and best-selling cookbook author.

250.    Chloe is not involved in BCHG's operation of its vegan restaurants and ceased to be involved in the business when Defendants wrongfully excluded her from the business and then purported to repurchase her membership interest in BCHG in 2017.

251.    Based on BCHG's registration and use of the by CHLOE Mark, consumers assume a connection between Chloe and BCHG's vegan restaurants that does not exist.

252.    Chloe is damaged by the association of her name with BCHG's vegan restaurants without her consent.

253.    The by CHLOE Mark should be cancelled under 15 U.S.C. § 1064 because the

mark was obtained contrary to the provisions of 15 U.S.C. § 1052(c) in that the mark identifies

Chloe, a living individual, without her required written consent to have her name registered as a

trademark.

254.    Under 15 U.S.C. § 1119, this Court has jurisdiction to order the USPTO to make

appropriate entries on the Federal Register about the by CHLOE Mark.

## COUNT XXI (CONTINGENT):
## BREACH OF CONTRACT FOR FAILURE TO PAY 1% ROYALTY
### (By Chloe against BCHG)

255.    Plaintiff Chloe incorporates by reference paragraphs 1 through 253.

256.    If Chef Chloe LLC is unsuccessful in obtaining a judgment that it owns 50% of

BCHG, then Chloe asserts this claim.

257.    Section 10 of the NFL Agreement (which survives termination) requires BCHG to

pay Chloe a royalty of 1% of the gross sales of the Restaurants if BCHG exercises the

Repurchase Right set forth in the Operating Agreement.  If BCHG's purported repurchase is

deemed effective, then BCHG owes Chloe a royalty of 1% of the gross sales of the Restaurants.

258.    BCHG has not paid Chloe any royalties to date.

259.    Chloe requested an audit, as set forth in Section 10 of the NFL Agreement.

260.    BCHG denied this request.

261.    BCHG has therefore breached the NFL Agreement as set forth above, and Chloe

has suffered damages as a result.

## PRAYER FOR RELIEF

Plaintiffs request the following relief:

a.    For every cause of action for which such relief is allowed, an award of compensatory damages, punitive and exemplary damages, and disgorgement of Defendants' profits.

b.    A finding and judgment that Defendant BCHG has breached the NFL Agreement.

c.    A finding and judgment that the Defendant ESquared has breached the Operating Agreement.

d.    A preliminary and permanent injunction barring Defendants from selling any packaged food or beverages using the name Chloe or any variation thereof including the mark "by Chloe" or any images or photographs of Chloe.

e.    A declaration that Chloe may market and sell packaged foods and beverages using her name or any variation thereof, and also use her name or any variation thereof as a chef, including in the operation of her food concept in the St. Roch Market.

f.    A finding and judgment that BCHG has tortiously interfered with Chloe's business relationship with St. Roch Market.

g.    A finding and judgment that Chef Chloe LLC is still a 50% owner of BCHG.

h.    A preliminary and permanent injunction declaring that Chef Chloe LLC is still a 50% owner of BCHG and enjoining Defendants from taking any actions inconsistent with Chef Chloe's 50% ownership in of BCHG.

i.     A finding and judgment that Defendants have violated (and continue to violate) Chloe's statutory right of publicity as provided for in California Civil Code § 3344.

j.     A finding and judgment that Defendants have violated (and continue to violate) Chloe's common law right of publicity.

k.     An award of damages to Chloe as a result of the unauthorized use of her name, image, photographs, and likeness in violation of her statutory and common law right of publicity, including any profits from the unauthorized use of her name, image, photographs, and likeness and, in addition, an award of punitive damages and her attorney's fees and costs.

l.     An injunction prohibiting Defendants from any further unauthorized use of Chloe's name, image, photographs, and likeness.

m.     A finding and judgment that Defendants have violated (and continue to violate) 15 U.S.C. § 1125(a) by engaging in unfair competition and deceptive trade practices and an award of damages.

n.     A finding and judgment that Defendants have violated (and continue to violate) California Civil Code § 17200 by engaging in unfair competition.

o.     A finding and judgment that Defendants have violated (and continue to violate) California Civil Code § 17500 by engaging in unfair competition.

p.     An injunction prohibiting Defendants from engaging in any further acts of unfair competition or deceptive trade practices.

q.   A finding and judgment that Defendants have infringed Chloe's common law trademark rights and an award of damages and an injunction prohibiting any further infringement.

r.   A finding and judgment that Defendants have violated (and continue to violate) Plaintiff CKC Sales's copyrights and an award of damages, attorneys fees and costs, and an injunction prohibiting any further infringement.

s.   A finding and judgment that Defendants have violated (and continue to violate) CC Hospitality's Federal Registered Trademark and an award of damages, attorneys fees and costs and an injunction prohibiting any further infringement.

t.   A finding and judgment that Defendants have violated (and continue to violate) Plaintiff CC Hospitality's rights under 15 U.S.C. § 1125(d) and an award of damages and a transfer of the following domain name registrations to CC Hospitality:

        i.   www.bychefchloe.com

        ii.   www.eatbychloe.com

        iii.   www.sweetsbychloe.com

        iv.   www.chillbychloe.com

u.   A finding and judgment that Defendants have violated (and continue to violate) Plaintiff CC Hospitality's rights under California Civil Code § 17525 et seq. and an award of damages and a transfer of the following domain name registrations to CC Hospitality:

        i.      www.bychefchloe.com

        ii.     www.eatbychloe.com

        iii.    www.sweetsbychloe.com

        iv.   www.chillbychloe.com

v.      A declaratory judgment, under 15 U.S.C. § 1119, directing the Commissioner of Patent and Trademarks to cancel Registration No. 4,833,607 for the by CHLOE Mark.

w.     A finding that if BCHG effectively and legally repurchased Chef Chloe LLC's Membership Interest in BCHG, then it owes Chloe a 1% royalty on BCHG's gross sales.

x.      A finding and judgment that this case is exceptional.

y.      An award of attorney's fees and costs.

z.      An award of prejudgment interest.

aa.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all issues subject to trial by jury.

Dated:  June 29, 2018                              Respectfully submitted,


By: /s/ Ronald J. Schutz
**ROBINS KAPLAN LLP**
Ronald J. Schutz Bar No. (4871778)
Lisa M. Coyle Bar No. (4438420)
Frederick A. Braunstein Bar No. (5108907)
399 Park Avenue
Suite 3600
New York, NY 10022
212 980 7400

Patrick M. Arenz MN Bar No. (0386537)
(*pro hac vice* to be submitted)
Kristine A. Tietz MN Bar No. (0393477)
(*pro hac vice* to be submitted)
800 LaSalle Ave
Suite 2800
Minneapolis, MN 55402
612 349 8591

*Attorneys for Plaintiffs*
*Chloe Coscarelli, Chef Chloe LLC,*
*CC Hospitality Holdings LLC, and*
*CKC Sales, LLC*