**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------- X

Chloe Coscarelli, Chef Chloe LLC, CC        :
 Hospitality Holdings LLC, and CKC Sales,
LLC,                                    :

             Plaintiffs,           :

     -against-               Case No. 1:18-cv-05943-JMF-DCF
                           :

ESquared Hospitality LLC and BC Hospitality :
Group LLC (formerly CCSW LLC),

             Defendants.      :

                           :

-------------------------------------- X

 

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS AND/OR STAY**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ......................................................................................................... 1

Factual Background .............................................................................................................. 2

I.     Chloe Is A Preeminent Vegan Chef And Owns Several Corporate Entities With
       Distinct Purposes. ..................................................................................................... 2

II.    Chloe Partnered With ESquared Only For The Purpose of Operating A Fast-
       Casual Vegan Restaurant. ......................................................................................... 3

       A.     The Chef Chloe LLC And ESquared Operating Agreement. ................................ 4

       B.     Chloe Coscarelli And CCSW Entered Into The NFL Agreement On The
              Same Day That Chef Chloe LLC And ESquared Entered Into The
              Operating Agreement. .............................................................................................. 5

III.   After A Successful Launch Of By Chloe, Chloe And ESquared's Relationship
       Deteriorated Leading To Litigation. .......................................................................... 6

Argument .............................................................................................................................. 9

I.     The Court Should Not Dismiss Any Claims Based On The Arbitration Clause In
       The Operating Agreement. ......................................................................................... 9

       A.     The Court Should Decide Plaintiffs' Motion For Injunctive Relief, As
              Envisioned By The Operating Agreement, And Then Stay—Not
              Dismiss—The Only Three Claims Covered By The Arbitration Provision. .......... 9

       B.     Defendants Have Not Established That The Arbitration Clause Applies To
              Chloe, CKC Sales, or CC Hospitality. ................................................................... 10

              1.     Chloe Is Not A Party To The Operating Agreement. ................................ 11

              2.     CKC Sales And CC Hospitality Are Not Parties To The Operating
                     Agreement. ................................................................................................. 15

       C.     This Court Should Address Chloe And CC Hospitality's Claims For
              Cancellation Of The by Chloe Trademark. ............................................................. 16

II.    This Court Should Deny Defendants' Motion To Dismiss Chloe's Tort Claims. ........... 17

Conclusion ........................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD Inv. 2000 Fund LLC v. IRS*,
  T.C. Memo. 2015-223, 2015 WL 7423367 (U.S. Tax Ct. Nov. 19, 2015)..............................3

*Aetna Ins. Co. v. Kennedy*,
  301 U.S. 389 (1937)..................................................................................................................14

*Arnone v. Aetna Life Ins. Co.*,
  860 F.3d 97 (2d Cir. 2017)........................................................................................................19

*Baez v. Prospect Mortg., LLC*,
  Case No. 13-cv-2449, 2014 U.S. Dist. LEXIS 50295 (E.D.N.Y. Apr. 9, 2014) ....................11

*Blumenthal v. Merrill Lynch*,
  910 F.2d 1049 (2d Cir. 1990)....................................................................................................10

*Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*,
  655 F. App'x 9 (2d Cir. 2016) ...................................................................................................20

*Charney v. Am. Apparel, Inc.*,
  C.A. No. 11098-CB, 2015 Del. Ch. LEXIS 238 (Ct. Ch. Del. Sept. 11, 2015)......................20

*Cooney v. Osgood Mach.*,
  81 N.Y.2d 66 (1993) ................................................................................................................17

*Diamond Glass Cos. v. Twin City Fire Ins. Co.*,
  Case No. 06-cv-13105, 2008 U.S. Dist. LEXIS 86752 (S.D.N.Y. Aug. 18, 2008)................20

*Doe v. Marsh*,
  Case No. 96-7453, 1997 U.S. App. LEXIS 5065 (2d Cir. Mar. 17, 1997)..............................14

*Farmer v. United States*,
  Case No. 15-cv-6287, 2017 U.S. Dist. LEXIS 127275 (S.D.N.Y. Aug. 10, 2017)................15

*Fin. One. Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
  414 F.3d 325 (2d Cir. 2005)......................................................................................................19

*Gargiulo v. Delsole*,
  769 F.2d 77 (2d Cir. 1985)........................................................................................................11

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987)......................................................................................................16

*Haber v. U.S.*,
    823 F.3d 746 (2d Cir. 2016)...........................................................................................3

*Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*,
    507 B.R. 452 (Bankr. S.D.N.Y. 2014).........................................................................20

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
    304 F. Supp. 3d 392 (S.D.N.Y. 2018)..........................................................................20

*In Re Lipper Holdings, LLC*,
    1 A.D.3d 170 (1st Dep't 2003) ....................................................................................20

*Ironbridge Corp. v. C.I.R.*,
    528 F. App'x 43 (2d Cir. 2013) .....................................................................................3

*Johnson v. Zerbst*,
    304 U.S. 458 (1938).....................................................................................................14

*Klock v. Lehman Bros. Kuhn Loeb, Inc.*,
    584 F. Supp. 210 (S.D.N.Y. 1984)...............................................................................19

*Krock v. Lipsay*,
    97 F.3d 640 (2d Cir. 1996)...........................................................................................20

*Love v. Associated Newspapers, Ltd.*,
    611 F.3d 601 (9th Cir. 2010) .......................................................................................18

*Marmer Bros. Constr., LLC v. Midwest Steel, Inc.*,
    Case No. 99-cv-11681, 2000 U.S. Dist. LEXIS 13381 (S.D.N.Y. Sept. 18, 2000)................13

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016)....................................................................19, 20

*Meyer v. Kalanick*,
    199 F. Supp. 3d 752 (S.D.N.Y. 2016)..........................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
    473 U.S. 614 (1985).....................................................................................................16

*Morris v. N.Y.C. Emps. Ret. Sys.*,
    129 F. Supp. 2d 599 (S.D.N.Y. 2001)..........................................................................11

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
    375 U.S. 311 (1963).....................................................................................................14

*National Union Fire Ins. Co. v. Belco Petroleum Corp.*,
    88 F.3d 129 (2d Cir. 1996).............................................................................................9

*Plymack v. Copley Pharm.*,
   Case No. 93-cv-2655, 1995 U.S. Dist. LEXIS 15104 (S.D.N.Y. Oct. 12, 1995) .............17, 19

*Pointdujour v. Mount Sinai Hosp.*,
   121 F. App'x 895 (2d Cir. 2005) .............................................................................................15

*Rosenberg v. Pillsbury Co.*,
   718 F. Supp. 1146 (S.D.N.Y. 1989)........................................................................................19

*Rothstein v. Fung*,
   Case No. 03-cv-674, 2004 U.S. Dist. LEXIS 9192 (S.D.N.Y. May 24, 2004) .......................10

*Ruiz v. Weiler & Co.*,
   860 F. Supp. 602 (N.D. Ill. 1994) ...........................................................................................20

*Serdarevic v. Centex Homes, LLC*,
   760 F. Supp. 2d 322 (S.D.N.Y. 2010)......................................................................................14

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) .................................................................................................18

*Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*,
   Case No. 14-cv-7170, 2015 U.S. Dist. LEXIS 35554 (S.D.N.Y. Mar. 20, 2015) ..................13

*Sondik v. Kimmel*,
   131 A.D.3d 1041 (2d Dep't 2015)......................................................................................17, 18

*Starr Indem. & Liab. Co. v. Am. Claims Mgmt.*,
   Case No. 14-cv-0463, 2015 U.S. Dist. LEXIS 60272 (S.D.N.Y. May 7, 2015) ....................19

*This is Me, Inc. v. Taylor*,
   157 F.3d 139 (2d Cir. 1998).....................................................................................................13

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995) .......................................................................................................11

*TVT Records v. Island Def Jam Music Grp.*,
   412 F.3d 82 (2d Cir. 2005)........................................................................................................13

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
   489 U.S. 468 (1989)...................................................................................................................11

*Wells Fargo Bank, N.A. v. Fin. Sec. Assur., Inc.*,
   504 F. App'x 38 (2d Cir. 2012) ................................................................................................13

*Winter v. Pinkins*,
   Case No. 14-cv-8817, 2016 U.S. Dist. LEXIS 29349 (S.D.N.Y. Mar. 8, 2016) ....................17

**Statutes**

15 U.S.C. §1119.................................................................................................................16

35 U.S.C. §294.................................................................................................................16

**Preliminary Statement**

Defendants' motion to dismiss should be denied. Defendants ignore the clearly written language of the Operating Agreement that allows Chef Chloe LLC to seek injunctive relief in court before commencing an arbitration.  Defendants ignore the explicit provision of the NFL Agreement that New York courts shall "hear and decide all controversies that may arise under or concerning this Agreement."  Defendants ignore the identity of the actual Plaintiffs. And Defendants ignore the bedrock legal principal that this Court presumes true all well-pleaded facts on a Rule 12(b)(6) motion.

After setting aside the misstatements, misquotes, bombast, and insults, Defendants' brief boils down to this: the Operating Agreement contains an arbitration clause that sweeps in all 21 counts of Plaintiffs' Complaint regardless of any other agreements or who the parties are or what the causes of action are.[1]

This Court should deny Defendants' motion. The Court needs only to consider a short list of undisputed facts to reach that conclusion:

- o The Complaint is brought on behalf of four legally distinct plaintiffs: Chloe Coscarelli, Chef Chloe LLC, CC Hospitality Holdings LLC, and CKC Sales, LLC.

- o The first paragraph of the Operating Agreement states:  "THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT … is entered into by and among ESquared Hospitality LLC, …  and Chef Chloe, LLC …"

---

[1] Defendants have sought to file two briefs that total over 50 pages: one labeled as a Memorandum of Law and a second one labeled as a declaration. Plaintiffs are filing simultaneously with this brief a motion to strike the declaration of Philip R. Hoffman or, in the alternative, disqualify counsel and compel his deposition.

o   The parties to the Operating Agreement are ESquared Hospitality LLC and Chef Chloe LLC.

o   Chloe Coscarelli is not a party to the Operating Agreement.

o   The final award in a previous arbitration found that Chloe Coscarelli was not a party to the Operating Agreement.

o   Although the Operating Agreement contains an arbitration provision, that provision also states: "Notwithstanding the foregoing, in the event the Dispute involves a claim for which immediate injunctive relief is being sought, a party shall have the right to bring an action for such relief in a court of competent jurisdiction prior to commencing a[n] arbitration action."

o   The NFL Agreement states: "Jurisdiction. The state and federal courts of the State of New York located in the County of New York will have exclusive jurisdiction and venue to hear and decide all controversies that may arise under or concerning this Agreement."

o   In motions brought under Rule 12(b)(6), facts alleged in the Complaint are deemed true.

o   The Complaint alleges that Chloe Coscarelli is domiciled in California.

**Factual Background**

**I.      Chloe Is A Preeminent Vegan Chef And Owns Several Corporate Entities With Distinct Purposes.**

Chloe Coscarelli ("Chloe") is an internationally known vegan chef. She has studied at top academic institutions. Dkt. 22-2 ¶2. She has worked at one of the best-regarded gourmet vegan restaurants in the world, and cooked at prestigious culinary events. *Id.* ¶3. Chloe was the first vegan chef to win Food Network's *Cupcake Wars*. *Id.* ¶4. She has also published four best-

2

selling cookbooks. *Id.* ¶5. Her success, along with her passion for vegan cuisine, has led to frequent media appearances and earned her a spot in the prestigious Forbes 30 under 30 list and recognition as "America's favorite vegan chef." *Id.* ¶6.

Chloe has established several companies to bring healthy and delicious vegan cooking to a broad audience. Each company has a different purpose. CKC Sales LLC ("CKC Sales") owns copyrights in Chloe's four best-selling cookbooks: CHLOE'S KITCHEN; CHLOE'S VEGAN ITALIAN KITCHEN; CHLOE'S VEGAN DESSERTS; and CHLOE FLAVOR. Dkt. 1 ¶15. CC Hospitality Holdings LLC ("CC Hospitality") owns trademark rights related to Chloe's business endeavors, including the registered mark "CHEF CHLOE" and the trademark application for "CHLOE'S DELICIOUS" for sauces and salad dressings, among other items. *Id.* ¶14. Chloe owns Chef Chloe LLC for her business purposes as well. *Id.* ¶13.

## II. Chloe Partnered With ESquared Only For The Purpose of Operating A Fast-Casual Vegan Restaurant.

Chloe reached out to ESquared Hospitality LLC ("ESquared") to pitch her idea for a fast-casual vegan restaurant. ESquared is an extremely sophisticated hospitality company that operates full-service restaurants, including the BLT franchise. Dkt. 22-2 ¶9. James Haber is ESquared's CEO. *Id.* ¶10. When Chloe, who had not owned a restaurant before, contacted ESquared, she did not know about Mr. Haber's ongoing legal tangles with the IRS nor did Mr. Haber disclose any of those problems to Chloe.[2] *Id.* ¶11. Uninformed of Mr. Haber's history of nefarious schemes, Chloe continued extensive negotiations with ESquared from December 2013

---

[2] *See, e.g., AD Inv. 2000 Fund LLC v. IRS*, T.C. Memo. 2015-223, 2015 WL 7423367, at *2, 3, 10, 12 (U.S. Tax Ct. Nov. 19, 2015) (noting that "James Haber is the architect behind the LLC's and the transactions at issue," and that "Mr. Haber's extreme sophistication defeats any effort to say this attempted manipulation of the partnership form and indifference to an applicable regulation was done in good faith."); *Haber v. U.S.*, 823 F.3d 746, 748 (2d Cir. 2016) (recounting IRS' $25 million fine against Haber). Mr. Haber has repeatedly invoked his Fifth Amendment right against self-incrimination to avoid testifying on the subject as well. *See, e.g., AD Inv.*, 2015 WL 7423367, at *14; *Ironbridge Corp. v. C.I.R.*, 528 F. App'x 43, 44-45 (2d Cir. 2013) (summary order).

through November 2014. *Id.* ¶12. At the end, Chef Chloe LLC and ESquared entered into a business partnership for the limited purpose of establishing a vegan fast-casual restaurant called "by CHLOE." Dkt. 22-6 (Operating Agreement).

**A.    The Chef Chloe LLC And ESquared Operating Agreement.**

Chef Chloe LLC and Esquared formed CCSW LLC ("CCSW")[3] to own the by CHLOE fast casual vegan restaurant. The parties memorialized their agreement in the Operating Agreement. Dkt. 22-2 ¶¶12-13. CCSW is a manager-managed LLC organized under New York law. Dkt. 22-6 Art. VII. The Operating Agreement identifies only two members of CCSW: Chef Chloe LLC and ESquared, each owning 50%. *Id.* Ex. A. The parties also agreed to two managers—one selected by each of the members. *Id.* §7.3. ESquared selected Mr. Haber's daughter, Samantha Wasser, and Chef Chloe LLC designated Chloe. In addition to Chloe's role as manager, the parties also designated Chef Chloe LLC as the Service Member, with Chloe responsible for performing certain services. *Id.* §19.2(a). Section 19(a) sets forth Chloe's rights and obligations in that regard.

The Operating Agreement is 50 pages long and complex. Dkt. 22-6. The definition section alone defines over 95 terms. *Id.* Art. I. Yet "parties" is not one of those defined terms because it did not need to be, as the parties were clearly set forth in the first paragraph of the Operating Agreement which states that the Operating Agreement "is entered into by and among" ESquared and Chef Chloe LLC—no one else. *Id.* at 1. Then, after two whereas clauses, "*the parties* hereto set forth their agreement as follows." *Id.* (emphasis added). Section 20.19 contains an arbitration clause that applies only to "the parties." *Id.* §20.19(a).

---

[3] CCSW later changed its name to BC Hospitality Group LLC ("BCHG"). The Company will be referred throughout this brief as either CCSW or BCHG, depending on the context and time period.

The Operating Agreement concludes with a signature page. Mr. Haber signed for ESquared, a party, and Chloe signed on behalf of Chef Chloe LLC, the other party. Chloe and Ms. Wasser also signed in their capacity as managers for CCSW. *Id.* at 53. Finally, Chloe signed solely to acknowledge and agree to her rights and obligations because she was responsible for the duties of the Service Member, which was Chef Chloe LLC. *Id.* The signature page does *not* classify these latter signatories as "the parties." *See id.* Instead, the signature page reads: "IN WITNESS WHEREOF, the undersigned have executed this Operating Agreement as of the date first above written." *Id.*

> **B.** **Chloe Coscarelli And CCSW Entered Into The NFL Agreement On The Same Day That Chef Chloe LLC And ESquared Entered Into The Operating Agreement.**

Chloe and CCSW entered into a Name, Face, and Likeness Agreement (the "NFL Agreement") on the same day that Chef Chloe and ESquared entered into the Operating Agreement. *Id.* §4.3(d); Dkt. 22-7 (NFL Agreement). The NFL Agreement licensed CCSW to use Chloe's name, face, and likeness for fast-casual vegan restaurants. Dkt. 22-7 §1(a). The lawyers for the parties negotiated this agreement at the same time as they negotiated the Operating Agreement for Chef Chloe LLC and ESquared. Indeed, the Operating Agreement recognizes that Chloe and CCSW will enter into the NFL Agreement "[s]imultaneously with the execution of the [Operating] Agreement." Dkt. 22-6 §4.3(d). The two agreements interconnect other terms as well. The Operating Agreement sets forth limited conditions that would allow CCSW to repurchase Chef Chloe LLC's ownership if Chef Chloe LLC is terminated as the Service Member.  *Id.* §19.5. Under this scenario, the NFL Agreement then requires CCSW to pay Chloe "as a royalty 1% of the gross sales" for using her NFL rights for fast-casual vegan restaurants. Dkt. 22-7 §10(a).

The two agreements share a critical similarity as well. Both the Operating Agreement and the NFL Agreement limit CCSW's business and use of Chloe's NFL rights to fast-casual vegan restaurants. *Id.* §1(a); Dkt. 22-6 §4.1; Dkt. 22-2 ¶14.[4] But there are important differences between the agreements too. Unlike the Operating Agreement, Chloe and CCSW did not agree to arbitrate disputes. Instead, the parties to the NFL Agreement agreed to litigate disputes that arise under that Agreement in the state or federal courts of New York. Dkt. 22-7 §19.

The signature page for the NFL Agreement contains a key difference from the signature page in the Operating Agreement as well. The NFL Agreement identifies the two signatories as "the parties." *Id.* at 7. But as explained above, the drafters decided against this identification for the signatories in the Operating Agreement. Dkt. 22-6 at 53.

## III.   After A Successful Launch Of By Chloe, Chloe And ESquared's Relationship Deteriorated Leading To Litigation.

In July 2015, CCSW opened its first "by Chloe" restaurant in New York City on Bleecker Street to rave reviews and large crowds. Dkt. 22-2 ¶15. But this initial success later diminished, as did the relationship between Chef Chloe LLC and ESquared. The main tension between the two parties was that ESquared did not share the same ethic and standard for a vegan lifestyle that Chloe maintains—both personally and professionally. *Id.* ¶¶16-17. Mr. Haber embarked on a nasty campaign against Chloe as a result, and forced her out of the company she created. *See, e.g.*, *id.* & Dkt. 22-9.

This separation was part of Mr. Haber's original plan. In the past, for instance, he has bragged about forcing Chef Laurent Tourondel out of the BLT restaurant brand: "[a] celebrity chef is not necessary for the life thereafter . . . They are useful for establishing a brand, but you're almost better off when they leave, since their egos don't get in the way." Dkt. 22-4. Mr.

---

[4] There are not any "approved projects." DI 22-2 ¶14.

Haber was blunter when it came to Chloe, stating in an email to his daughter in 2016, "We milk till we can't!" Dkt. 22-10. When his daughter inquired "Milk what?" Mr. Haber responded "Her name." *Id.* This crass exchange exemplifies Mr. Haber's strategy to develop a brand around Chloe and then try to expel her from their partnership.

The business relationship had deteriorated to such an extent that Chef Chloe LLC felt compelled to file suit in June 2016 to prevent Mr. Haber, Ms. Wasser, and ESquared from abusing the "Deadlock Rule" in Section 7.3 of the Operating Agreement. After the New York state court granted Chef Chloe LLC's request for a temporary restraining order, ESquared stipulated to Chef Chloe LLC's requested injunctive relief. Dkt. 22-13. That injunction remains in effect today. In retaliation, ESquared initiated arbitration against Chef Chloe, with its claims mainly focused on whether it could recharacterize capital contributions it had made to the business as loans—a move that would give ESquared substantial unfettered control over the business. Dkt. 22-15 at 14-28. ESquared also pursued other claims against Chloe and Chef Chloe LLC and sought over $7 million in compensatory damages, along with punitive damages, from them. *Id.* Chef Chloe LLC responded to the demand with counterclaims of its own. *Id.* at 28. The arbitrator later suspended those counterclaims because Chef Chloe LLC lacked the means to pay for the arbitrator's time and services. Dkt. 22-14.[5]

ESquared's characterizations of the arbitrator's decision is not accurate. Although the decision sided with ESquared on its request to recharacterize certain capital contributions as loans, Dkt. 22-15 at 29-32, the arbitrator rejected ESquared's claim for excessive and punitive damages based on any actions by Chloe. *Id.* at 48. One thing the arbitrator did get right was her

---

[5] Mr. Haber had improperly cut off Chloe's salary from the company just after she obtained the temporary restraining order against ESquared.

conclusion that Chloe is not a party to the Operating Agreement: "[Chloe] is not a party to the [Operating Agreement] (although a signatory)." *Id.* at 33.

But this case is not a rehash of the past arbitration despite Defendants' wish that it were.[6] This case is about events that took place after it. The day after the arbitrator released her decision, ESquared's lawyers sent Chloe a letter purporting to repurchase Chef Chloe LLC's 50% ownership in CCSW for "zero" dollars. Dkt. 22-16. This effort fails for three reasons, as outlined in Chef Chloe LLC's motion for preliminary injunction. Dkt. 22 at 13-22. Moreover, not content with merely trying to steal Chef Chloe LLC's interests in the Company, ESquared has expanded its use of Chloe's name without authorization from the Operating and NFL Agreements. In addition, if CCSW believed that it had legitimately repurchased Chef Chloe's membership interest, then it had to compensate Chloe for the continued use of her NFL rights and it has not done so.  That is the subject of Contingent Count 21.

Nor is ESquared simply using its "by Chloe" trademark as ESquared claims in its brief. Dkt. 29 at 19-20. Appendix A to the complaint sets forth 66 exemplary pages of ESquared "milking"—as Mr. Haber would say—Chloe's name, face, and likeness far beyond the "by Chloe" mark. Dkt. 1. And ESquared has taken advantage of Chloe's rights of publicity willfully, even though Chloe has terminated the NFL Agreement. Even if BCHG has any remaining rights in the "by Chloe" mark, they are "limited solely to the exact lettering of the By Chloe Word Mark and *not* to any *similar* or *derivative* mark" Dkt. 22-6 § 4.4(b). BCHG and ESquared's modifications of "by Chloe" to include "Sweets by Chloe," "Chill by Chloe," and "Juice by

---

[6] Defendants claim at page 8 of their brief and elsewhere that "Arbitrator Garay also granted CCSW's application to terminate the Membership Interest of Chloe LLC for 'Cause'" No such thing happened.  Instead, the arbitrator terminated Chef Chloe LLC's role as the Service Member.  Chef Chloe LLC still retained its 50% Membership Interest in CCSW. The day after the Final Award, CCSW purported to repurchase that Membership Interest. It is that purported repurchase that is one subject of the Complaint.

Chloe," among others, are derivative marks which they have no right to use. *See, e.g.*, Dkt. 1 ¶134. And the "Chlostess Cupcake" and domain names like "bychefchloe.com" are other obvious and unauthorized attempts to capitalize on derivations of Chloe's name without her permission. *Id.* Any rights BCHG may have in the "by Chloe" mark are also limited to use of the mark *in connection with a fast casual vegan restaurant.* Yet ESquared and BCHG have ignored this limitation as well, trying to offer packaged "by Chloe" goods to be sold in grocery stores with no authorization to do so.

### Argument

I. **The Court Should Not Dismiss Any Claims Based On The Arbitration Clause In The Operating Agreement.**

The Defendants failed to meet their burden to establish that the Court should dismiss any claim in the Complaint. As the moving party, the Defendants bear the burden to prove that the plaintiff and defendant *for each claim* agreed to arbitrate, and that each claim fall within that agreement. *National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). The Defendants' conclusory effort to lump all 21 claims and four separate plaintiffs together fails to meet their burden. The Plaintiffs walk through the respective claims in detail below.[7] The Court should not dismiss any claim, and instead should stay only the three claims actually covered by the arbitration provision *after* the Court rules on Chef Chloe LLC and Chloe's motion for injunctive relief in connection with those claims.

A. **The Court Should Decide Plaintiffs' Motion For Injunctive Relief, As Envisioned By The Operating Agreement, And Then Stay—Not Dismiss— The Only Three Claims Covered By The Arbitration Provision.**

Counts 2, 5, and 6 are subject to the arbitration clause in the Operating Agreement. But the Defendants have failed to prove that the Court should dismiss those claims, or even stay them

---

[7] Appendix A sets forth a general overview of the claims and parties as well.

before the Court hears Chef Chloe LLC's motion for a preliminary injunction. Defendants ignore the plain language of the arbitration provision that authorizes this motion in this Court: "in the event the Dispute involves a claim for which immediate injunctive relief is being sought, a party *shall have the right* to bring an action for such relief in a court of competent jurisdiction *prior to commencing a[n] arbitration action*." Dkt. 22-6 at 20.19(e) (emphasis added). The Second Circuit has also authorized courts to address requests for preliminary injunctions to maintain the status quo before an arbitration, even where the relevant agreement contains no clause like §20.19(e). *See, e.g., Blumenthal v. Merrill Lynch*, 910 F.2d 1049, 1053 (2d Cir. 1990). Just as the parties agreed, this Court should address Chef Chloe LLC's motion for preliminary injunctive relief and *then stay* counts 2, 5, and 6 pending arbitration.

Defendants' only reference to Section 20.19(e) comes in its preliminary statement. Dkt. 29 at 3. Their only argument is their contention that Chef Chloe LLC delayed bringing the motion. *Id.* But Chef Chloe LLC's right to invoke Section 20.19(e) does not turn on the ultimate success on the merits.[8]  Instead, that Section broadly applies to any disputes which, as the Complaint seeks here, "involve[] a claim for which immediate injunctive relief is being sought." The Court, therefore, should hear Chef Chloe LLC's motion, and then stay those claims pending arbitration. Defendants have offered no authority to the contrary.

### B.    Defendants Have Not Established That The Arbitration Clause Applies To Chloe, CKC Sales, or CC Hospitality.

Plaintiffs other than Chef Chloe LLC are not parties to the Operating Agreement. Yet Defendants have the burden to prove that the arbitration clause in the Operating Agreement applies to them. *See, e.g., Rothstein v. Fung*, Case No. 03-cv-674, 2004 U.S. Dist. LEXIS 9192,

---

[8] Chef Chloe LLC will respond on the merits in its reply brief, as scheduled on August 13, 2018, and detail why the timing of its motion for preliminary injunctive relief supports its requested relief.

at *1 (S.D.N.Y. May 24, 2004) ("As the moving party, defendants bear the burden of proving

written agreements obligating *both* plaintiffs to arbitrate." (emphasis added)); *see also Thomson-*

*CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("Arbitration is contractual

by nature—'a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit.'" (internal citations omitted)). Nor should this Court relieve Defendants of

this burden lightly. "The right to a jury trial is 'fundamental.'" *Gargiulo v. Delsole*, 769 F.2d 77,

79 (2d Cir. 1985) (internal citation omitted); *Baez v. Prospect Mortg., LLC*, Case No. 13-cv-

2449, 2014 U.S. Dist. LEXIS 50295, at *6-7 (E.D.N.Y. Apr. 9, 2014). "This most precious and

fundamental right can be waived only if the waiver is knowing and voluntary, with the courts

'indulg[ing] every reasonable presumption against waiver.'" *Meyer v. Kalanick*, 199 F. Supp. 3d

752, 755 (S.D.N.Y. 2016), *overturned on other grounds*, 868 F.3d 66 (2d Cir. 2017).[9] Waiver of

a fundamental constitutional right, like the right to jury trial, requires "clear" and "compelling"

evidence. *See Morris v. N.Y.C. Emps. Ret. Sys.*, 129 F. Supp. 2d 599, 609 (S.D.N.Y. 2001).

Defendants have offered *no* evidence that Chloe, CKC Sales, or CC Hospitality agreed to

arbitrate their claims against them.

### 1.    Chloe Is Not A Party To The Operating Agreement.

Defendants do not address, let alone prove, that Chloe agreed to arbitrate any dispute

with the Defendants. Federal law "does not require parties to arbitrate when they have not agreed

to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478

---

[9] In *Meyer*, Judge Rakoff noted the tension between this black letter law, and federal policy favoring arbitration. 199 F. Supp. 3d at 755. That case ultimately turned on whether a party had notice of an arbitration clause, not the threshold issue here of whether a party agreed to arbitrate. *See generally id.* While federal policy may support a broad interpretation of arbitration clauses that the parties have agreed to, there is no similar policy in favor of finding that an initial agreement to arbitrate exists.

(1989) (citations omitted). Here, the arbitration clause unambiguously applies only to "the parties."

> Section 20.19(a). ***The parties*** shall in good faith attempt amicably to resolve any claim, dispute, deadlock and other matters in question arising hereunder. All claims, disputes, deadlocks and other matters in question **between *the parties*** arising out of, or relating to, this Agreement or the breach hereof which have not been resolved through good faith negotiation **between *the parties*** (each, a "Dispute") shall be decided by arbitration in accordance with this Section 20.19 unless otherwise mutually agreed to **by *the parties***. **The agreement by *the parties* to arbitrate** pursuant to this Section 20.19 shall be enforceable under prevailing law.

Dkt. 22-6 §20.19 (emphasis added). Chloe is *not* a party to the Operating Agreement. She is a signatory on behalf of Chef Chloe LLC, which is the entity that is the party, just as James Haber is the signatory on behalf of the other party, ESquared and he is not a party. In addition, both Chloe and Samantha Haber signed the Operating Agreement as Managers. But neither of them is a party to the Agreement.  Neither the plain language nor any evidence from Defendants suggests otherwise.

Only Chef Chloe LLC and ESquared are "the parties" to the Operating Agreement. The plain language confirms that the Operating Agreement "is entered into by and among" ESquared and Chef Chloe LLC—no one else. *Id.* at 1. The agreement continues, "the Members['] desire to set forth *the Members' agreement* for the conduct of the business and operation of the Company." *Id.* (emphasis added). Chef Chloe LLC and ESquared were the only members when they formed CCSW. The unambiguous language in the Operating Agreement does not include Chloe as a party to the agreement. The arbitrator reached the same conclusion as well, holding that "[Chloe] is not a party to the [Operating Agreement] (although a signatory)." Dkt. 22-15 at 33.

The plain language of the NFL Agreement confirms the same conclusion. "Under New York law, 'all writings which form part of a single transaction and are designed to effectuate the

same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties.'" *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) (quoting *This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998)); *see also Wells Fargo Bank, N.A. v. Fin. Sec. Assur., Inc.*, 504 F. App'x 38, 40 (2d Cir. 2012) (summary order) (concluding that "the district court properly considered all writings forming part of a single transaction"). Here, the Operating Agreement and NFL Agreement form part of a single transaction, as the same lawyers drafted them, each agreement references the other, and they were signed on the same day. The first paragraph of the Operating Agreement says it is an Agreement entered into between ESquared and Chef Chloe LLC.  The first paragraph of the NFL Agreement says it is an Agreement entered into between CCSW and Chloe Coscarelli.  Clearly the drafters knew how to distinguish between Chloe the person and Chef Chloe LLC, the limited liability company.

Defendants' effort to treat Chloe as a party to the Operating Agreement who is subject to its arbitration clause would also render the forum-selection clause in the NFL Agreement a nullity. Courts should not interpret "words in a way that would render some provision of the contract a nullity." *Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*, Case No. 14-cv-7170, 2015 U.S. Dist. LEXIS 35554, at *19 (S.D.N.Y. Mar. 20, 2015); *Marmer Bros. Constr., LLC v. Midwest Steel, Inc.*, Case No. 99-cv-11681, 2000 U.S. Dist. LEXIS 13381, at *15 (S.D.N.Y. Sept. 18, 2000). The NFL Agreement unmistakably omits an arbitration clause, and instead requires litigation in "state and federal courts." Dkt. 22-7 §19. If Chloe were subject to the broad arbitration clause in the Operating Agreement, then this forum selection clause in the NFL Agreement would be a nullity. Such an interpretation would violate basic cannons of

construction, and would not honor the intention of the parties: Chloe preserved her right to trial by jury, as expressed in the NFL Agreement.

Nor can Defendants succeed in any argument that "the parties" is ambiguous and may include Chloe for two reasons. First, as a procedural matter, this Court "must resolve all ambiguities in the contract in [Chloe's] favor" on a motion to dismiss. *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010). And ESquared has offered no evidence that ESquared and Chef Chloe LLC intended "the parties" to refer so broadly as to encompass Chloe. Second, whether "the parties" includes Chloe implicates her fundamental constitutional right to trial by jury. As noted above, courts will not enforce waivers of fundamental constitutional rights unless the waivers were "knowing, voluntary, and intelligent," and courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights." *See Doe v. Marsh*, Case No. 96-7453, 1997 U.S. App. LEXIS 5065, at *12-13 (2d Cir. Mar. 17, 1997) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) ("[A]as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.").[10] An ambiguous contract, which by definition is susceptible to more than one reasonable interpretation, does not and cannot meet this standard. This Court should not deny Chloe her right to trial by jury and order her claims to arbitration based on the language in the Operating Agreement and the record here.

Chloe's participation in an earlier arbitration is not to the contrary. First, the record is clear that the arbitrator did not consider Chloe a party to the Operating Agreement. Dkt. 22-15 at 33. And her participation in that proceeding does not serve to waive her objection to arbitration

---

[10] *See also Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 332 (1963) (Black, J., dissenting) ("Waivers of constitutional rights to be effective, this Court has said, must be deliberately and understandingly made and can be established only by clear, unequivocal, and unambiguous language.").

of her claims now. For context, Chloe is an individual who found herself litigating against an opponent with unlimited money. Indeed, she could not even afford to pay the filing fees for the arbitration. She certainly did not have the means to object to arbitration and then fund parallel litigations in different fora against Mr. Haber and ESquared at that time. *See* Dkt. 22-14. The Court should not give Defendants' argument at the case management conference to this effect— indeed their *only* argument on this subject in their brief or the case management conference—any weight. Second, even if Defendants could misinterpret the plain language of the agreement to apply in some sense to Chloe, it would only apply in her capacity as manager of CCSW. But Defendants insist that Chloe is no longer a manager, and her claims here do not arise out of her role or responsibility as a manager. Thus, the Court should deny Defendants' motion as it relates to claims that Chloe has brought (Counts 1, 3, 4, 7-14, 18-21) because she is not bound by the arbitration clause.

### 2. CKC Sales And CC Hospitality Are Not Parties To The Operating Agreement.

The analysis for CKC Sales and CC Hospitality is even easier. Neither entity is even a signatory to the Operating Agreement. And Defendants have offered no argument about why the Court should find them "parties" to the Operating Agreement, or otherwise treat them as bound by that agreement's arbitration clause. Indeed, the Court should consider any argument on this subject in their reply waived because CKC Sales and CC Hospitality will not have an opportunity to address it. *See, e.g., Farmer v. United States*, Case No. 15-cv-6287, 2017 U.S. Dist. LEXIS 127275 at *9 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived"); *see also Pointdujour v. Mount Sinai Hosp.*, 121 F. App'x 895, 896 n.1 (2d Cir. 2005) (summary order) ("As a rule, we will not consider an argument raised for the first time in a reply brief, even by a pro se civil litigant.").

15

Thus, just as the arbitrator found ESquared's then-parent company and non-signatory (BLT) not subject to arbitration, so should this Court hold that CKC Sales and CC Hospitality fall outside that clause as well. (Schutz Decl. Ex. 1). The Court should deny Defendants' motion as it relates to claims these plaintiffs have brought (Count 3, 15-17, and 19-20).

###### C.    This Court Should Address Chloe And CC Hospitality's Claims For Cancellation Of The by Chloe Trademark.

Not all claims are arbitrable. "[A] court asked to stay proceedings pending arbitration in a case . . . has essentially four tasks," one of which is to consider "whether Congress intended [any federal statutory] claims to be nonarbitrable." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614 (1985)). Here, this Court, not an arbitrator, should decide Chloe and CC Hospitality's claims for cancellation of a federal trademark (Counts 19 and 20).

Defendants offer no authority to suggest that Congress intended for cancellation claims of a federal trademark to be arbitrable. The Patent Act makes this clear. Section 294 of the Patent Act encourages arbitration of patent disputes, including validity. *See* 35 U.S.C. §294. This provision then provides specific instructions for notifying the Director of the U.S. Patent and Trademark Office ("USPTO") of the arbitration's outcome. *Id.* The Lanham Act contains no similar encouragement. Nor does it provide a procedure for addressing the outcome of the arbitration with the USPTO. For that reason, Chloe and CC Hospitality cannot obtain the relief they request from this Court through an arbitration. Only this Court can grant that relief. Section 1119 allows this Court to certify an order about cancelation to the Director of the USPTO. *See* 15 U.S.C. §1119. This Court, therefore, should address Chloe and CC Hospitality's claims that the "by CHLOE" mark should be cancelled.

II. **This Court Should Deny Defendants' Motion To Dismiss Chloe's Tort Claims**.

Nothing in the NFL Agreement limits Chloe's ability to bring her tort claims (Counts 7-8, 10-11, 18 (the "Tort Claims")).  The Tort Claims include state law claims for: (i) common law and statutory right of publicity violations; (ii) violations of unfair competition and false advertising statutes; and (iii) violations of a cyber-piracy statute.  *See* Dkt. 1 ¶¶ 130-68, 172-75, 223-27.  None of the Tort Claims is contractual in nature, and California law governs them all. *Id.*

Defendants ignore the choice-of-law analysis required for its argument. A federal court must apply the forum's choice of law rules to determine what law applies to state law claims over which it has pendent jurisdiction.  *See Plymack v. Copley Pharm.*, Case No. 93-cv-2655, 1995 U.S. Dist. LEXIS 15104, at *14 (S.D.N.Y. Oct. 12, 1995).  New York uses "an interest analysis, under which 'the law of the jurisdiction having the greatest interest in resolving the particular issue' is given controlling effect."  *Sondik v. Kimmel*, 131 A.D.3d 1041, 1041 (2d Dep't 2015) (quoting *Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 72 (1993)); *Winter v. Pinkins*, Case No. 14-cv-8817, 2016 U.S. Dist. LEXIS 29349, at *13 (S.D.N.Y. Mar. 8, 2016).  Under that analysis, "where the plaintiff and defendant are domiciled in different states, the applicable law in an action where civil remedies are sought for tortious conduct is that of the situs of the injury."  *Sondik*, 131 A.D.3d at 1041 (internal quotation marks and citations omitted); *see also Winter*, 2016 U.S. Dist. LEXIS 29349, at *12-13.

*Sondik* – on which Defendants themselves rely – is directly on point but in favor of Chloe.  There, the plaintiff brought right of publicity claims under both New York and California law based on the nonconsensual use of a video clip of himself in a segment on the Jimmy Kimmel Show.  The plaintiff was domiciled in New York but the alleged tortious conduct—the editing of the video clip—occurred in California. *Sondik*, 131 A.D.3d at 1041-42. On those facts,

the Appellate Division held that New York law governed because New York—where the

plaintiff was domiciled—was the situs of the injury. *Id.* (noting also that "New York is the state

with the greater interest in protecting the plaintiff, its citizen and resident."). The court thus

affirmed the lower court's dismissal of the plaintiff's California state law claims.

Chloe, the plaintiff for the Tort Claims, is domiciled in California. California is therefore

the situs of the injury here.[11]  And while many of Defendants' tortious actions occurred in New

York, some also occurred in California, where the Defendants also operate the "by Chloe"

business. On these facts, California law governs the Tort Claims because California is the site of

the injury and the state with the greatest interest in protecting Chloe's interests in her right of

publicity. *See Sondik*, 131 A.D.3d at 1041-42; *see also Love v. Associated Newspapers, Ltd.*,

611 F.3d 601, 610 (9th Cir. 2010) ("California's interest in applying the right of publicity

extraterritorially is based on its interest in safeguarding its citizens from the diminution in value

of their names and likenesses.") (internal citations and quotation marks omitted).[12]

Contrary to Defendants' argument, the choice of law provisions in the Operating and

NFL Agreements do not change this analysis. Section 20.18 of the Operating Agreement

provides that "*[t]his Agreement* shall be governed by, and construed in accordance with, the laws

of the State of New York (without giving effect to New York choice of law provisions)." Dkt.

22-6 (emphasis added). Even if Chloe were bound by this provision (which she is not because

---

[11] As discussed in Plaintiffs' Motion to Strike, filed simultaneously, Defendants' counsel has no basis to testify about Chloe's legal domicile. Indeed, the very NFL Agreement on which Defendants rely lists Chloe's address as located in California. *See* Dkt. 22-7 §12.

[12] *Cf. Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1202 (9th Cir. 1988) ("[T]he fact that the [defendant] is an alien defendant does not operate to bar jurisdiction in this case. . . . California has an overriding interest in safeguarding its citizens from the diminution in value of their names and likenesses, enhanced by California's status as the center of the entertainment industry. The harm suffered by [plaintiff] was economic, and thus was felt by him at his domicile and the headquarters of his business.").

she is not a party to the Operating Agreement), it would still not support Defendants' argument.

Chloe's Tort Claims are not contractual in nature, and thus this provision does not apply to them.

The Second Circuit has observed "a reluctance on the part of New York courts to

construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of

action." *Fin. One. Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 334-35 (2d Cir.

2005), *cert. denied*, 548 U.S. 904 (2006); *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 108 (2d

Cir. 2017) (same*), cert denied,* 138 S. Ct. 557 (2017). Indeed, "it is well established . . . that

'[u]nder New York law . . . tort claims are outside the scope of contractual choice-of-law

provisions that specify what law governs the construction of the terms of the contract.'" *Starr*

*Indem. & Liab. Co. v. Am. Claims Mgmt.*, Case No. 14-cv-0463, 2015 U.S. Dist. LEXIS 60272,

at *6-7 (S.D.N.Y. May 7, 2015) (Furman, J.) (quoting *Fin. One Public Co.*, 414 F.3d at 335);

*McBeth v. Porges*, 171 F. Supp. 3d 216, 223-24 (S.D.N.Y. 2016) (Furman, J.) ("The scope of . . .

choice-of-law provisions is a question governed by New York law, which provides that 'tort

claims are outside the scope of contractual choice-of-law provisions that specify what law

governs the construction of the terms of the contract.'" (quoting *Fin. One Public Co.*, 414 F.3d at

335)).[13]  Defendants ignore this authority in their brief.

Nor does the choice of law provision in the NFL Agreement help Defendants' argument.

That clause provides that "*[t]his Agreement and the legal relations between the parties hereto*

will be governed by and construed in accordance with the internal laws of the State of New York

and without regard to conflicts of law principles."  Dkt. 22-7 §18 (emphasis added).  This Court

---

[13] *See also Klock v. Lehman Bros. Kuhn Loeb, Inc.*, 584 F. Supp. 210, 215 (S.D.N.Y. 1984) ("[I]t has been held in New York that a contractual choice of law provision governs *only* a cause of action sounding in contract." (emphasis added)); *Plymack*, 1995 U.S. Dist. LEXIS 15104, *15-16 ("A contractual choice-of-law provision . . . does not bind the parties with respect to non-contractual causes of action"); *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989) ("While [a choice-of-law] provision is effective as to breach of contract claims, it does not apply to fraud claims, which sound in tort.").

has held that a similar choice of law provision in an LLC agreement, which covered not only the Agreement itself, but also "the rights and duties of the Members" was *not* broad enough to "cover Plaintiff's claims for fraudulent and negligent misrepresentation, as the provision[] d[id] not 'encompass the entire relationship between the contracting parties' and [was] comparable to provisions that courts have held not to encompass such tort claims." *McBeth*, 171 F. Supp. 3d at 223-24 (quoting *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)).  The phrase "the rights and duties of the Members" in the choice-of-law clause at issue in *McBeth* is substantively identical to the phrase "the legal relations between the parties hereto" in the NFL Agreement, and thus the Court should reach the same conclusion here.  Indeed, at least one court has found that the *exact* language in the NFL Agreement's choice of law provision does not encompass tort claims.  *See Ruiz v. Weiler & Co.*, 860 F. Supp. 602, 604, n.4 (N.D. Ill. 1994) (interpreting a choice of law provision containing the exact phrase "this Agreement and the legal relations between the parties" to encompass only those "issues *arising out of the Agreement*." (emphasis in original)).  Thus, the choice-of-law provision in the NFL Agreement does not govern Chloe's Tort Claims.[14]

---

[14] Defendants' apparent  contrary interpretation of the phrase "the legal relations between the parties hereto"– an interpretation that the clause is meant to encompass *any and all* claims between the parties to the NFL Agreement regardless of the type of claim or the subject matter – would lead to absurd results, such as a *personal injury claim* asserted by Chloe *in a California court* over her being hit by a "by Chloe" delivery truck *in California* would be subject to New York law.  Thus, the Court should reject Defendants' apparent interpretation of this phrase.  *See, e.g.*, *Diamond Glass Cos. v. Twin City Fire Ins. Co.*, Case No. 06-cv-13105, 2008 U.S. Dist. LEXIS 86752, at *12 (S.D.N.Y. Aug. 18, 2008) ("A court may not adopt a reading of a contract that would 'produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'") (quoting *In Re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003)); *Charney v. Am. Apparel, Inc.*, C.A. No. 11098-CB, 2015 Del. Ch. LEXIS 238, at *44 (Ct. Ch. Del. Sept. 11, 2015) (finding certain terms in a contract redundant and holding that "[w]hile redundancy is sought to be avoided in interpreting contracts, this principle of construction does not go so far as to counsel the creation of contract meaning for which there is little or no support in order to avoid redundancy," as "such minor overlap is clearly preferable to adopting an interpretation that is contrary to the parties' likely intentions, [and] would lead to absurd results." (citations and quotations omitted)).  At best, the scope of the choice of law provision in the NFL Agreement is ambiguous, and thus the Court cannot dismiss the California Tort Claims as matter of law on a motion to dismiss.  *See, e.g.,*, *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (summary order) ("Numerous district courts in this Circuit have concluded that choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage." (collecting cases)); *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) ("Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage" (citations and quotations omitted)); *Harrison v. N.J. Cmty. Bank (In re Jesup &*

Finally, in the unlikely event the Court determines that New York law governs the Tort Claims, currently asserted under California law, Chloe requests leave to amend the Complaint to assert instead corresponding claims under New York law.

### Conclusion

Defendants ignore the basic fact that their motion is procedural, not substantive. The only issues for this Court are whether all four named plaintiffs agreed to arbitrate all 21 counts, and whether Chloe alleges plausible Tort Claims based on her well-pleaded complaint. Defendants spend little—and at times *no*—attention to the basic framework for their procedural request to deny the Plaintiffs their day in this Court. Defendants make no argument, for instance, that Chloe, CKC Sales, and CC Hospitality are parties to the arbitration clause in the Operating Agreement. They are not. And Defendants failed even to try to meet their burden to prove otherwise. Indeed, their 25-page brief cites only 7 cases—mostly for generic legal propositions— and their "Statement of Facts" is almost entirely unsupported with record citations.

Instead of the actual issues in front of this Court, Defendants focus on vitriolic attacks on Chloe and try to argue the merits as conclusions without a proper record. Defendants spend 7 pages contorting the Operating Agreement and misrepresenting the arbitration record in vain to argue that they somehow own CKC Sales' copyrighted recipes. CKC Sales categorically disputes these allegations. But the pleadings stage is not the time to resolve the merits of this dispute. If Defendants contend that they own the copyrighted recipes, then they may raise that as an affirmative defense. Or if they had a dispositive argument, they could have argued that CKC Sales failed to state a claim under Rule 12(b)(6), which they did not do. All that matters now is

---

*Lamont, Inc.*), 507 B.R. 452, 476 (Bankr. S.D.N.Y. 2014) (denying motion to dismiss on choice of law grounds and holding that "[w]here a choice of law determination cannot be made based on the pleadings, the motion should be denied, without prejudice, leaving the material facts for later determination.").

that CKC Sales has pled ownership rights to the copyrighted recipes, and Defendants have not even argued any basis on which to conclude that CKC Sales agreed to arbitrate this dispute. The Court's analysis of this issue, thus, should stop there. Defendants' arguments are irrelevant.

The parties share robust disputes about Plaintiffs' 21 claims. Defendants have failed to offer any legal reason this Court should dismiss three claims that Chef Chloe LLC is contractually permitted to seek injunctive relief on before starting arbitration. Nor have Defendants proven why the Court should order the other three Plaintiffs to arbitration over the remaining 18 claims when not one of those plaintiffs is a party to the Operating Agreement. Defendants similarly ignore that Chloe's Tort Claims are not contractual, and therefore fall outside the NFL Agreement. The Court should deny Defendants' motion in full as a result.

Dated:        August 6, 2018            Respectfully submitted,


                                        By: /s/ Ronald J. Schutz
                                        **ROBINS KAPLAN LLP**
                                        Ronald J. Schutz Bar No. (4871778)
                                        Lisa M. Coyle Bar No. (4438420)
                                        Frederick A. Braunstein Bar No. (5108907)
                                        399 Park Avenue
                                        Suite 3600
                                        New York, NY 10022
                                        212 980 7400

                                        Patrick M. Arenz MN Bar No. (0386537) *(pro hac vice)*
                                        Kristine A. Tietz MN Bar No. (0393477) *(pro hac vice)*
                                        800 LaSalle Ave
                                        Suite 2800
                                        Minneapolis, MN 55402
                                        612 349 8591

                                        *Attorneys for Plaintiffs*
                                        *Chloe Coscarelli, Chef Chloe LLC,*
                                        *CC Hospitality Holdings LLC, and*
                                        *CKC Sales, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Ronald J. Schutz, certify that on the 6th day of August, 2018, I caused a true and correct copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STAY to be served via this Court's Electronic Case Filing system upon counsel for all parties.


Dated:  August 6, 2018                    Respectfully submitted,


                                          /s/ Ronald J. Schutz
                                          Ronald J. Schutz

24