**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------- X

Chloe Coscarelli, Chef Chloe LLC, CC
Hospitality Holdings LLC, and CKC Sales,
LLC,

                 Plaintiffs,

     -against-

ESquared Hospitality LLC and BC Hospitality
Group LLC (formerly CCSW LLC),

             Defendants.

:
:
:
:  Case No. 18-cv-5943 (JMF)
:  **ORAL ARGUMENT REQUESTED**
:
:
:

-------------------------------------- X

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' "CROSS
MOTION" TO DISMISS CLAIMS 1, 3-4 AND 7-18 AND REPLY IN FURTHER
SUPPORT OF PLAINTIFFS' MOTION TO DISMISS BCHG'S FIRST AMENDED
COUNTERCLAIMS 1–4 AND 8 (IN PART) AND 7 (IN ITS ENTIRETY)**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................. 3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' "CROSS MOTION" TO DISMISS ........... 3

    I.    The Court Should Deny Defendants' Motion Because it is Procedurally
         Improper................................................................................................. 4

    II.   Although the Court Need Not Consider it, Defendants' Motion Fails on
         the Merits. .............................................................................................. 4

         A.    The Court's Preliminary Injunction Order Does Not Mandate
               Dismissal of Chloe's Claim for Breach of the NFL Agreement
               (Count 1). ...................................................................................... 4

               1.    *Chloe Plausibly Alleged Breaches of the NFL Agreement*
                        *for Unauthorized Uses of her NFL Rights Independent of*
                        *the "By Chloe Word Mark." ....................................................* 7

               2.    *Even if Chloe's Claim Implicates BCHG's Use of the "By*
                        *Chloe Word Mark," She Has Still Plausibly Alleged a*
                        *Breach of the NFL Agreement ..........................................* 8

               3.    *At a Minimum, the Agreements are Ambiguous, which*
                        *Precludes Dismissal of Chloe's Claim Here, and Parol*
                        *Evidence Confirms Chloe's Interpretation of the NFL*
                        *Agreement ....................................................................* 11

         B.    Chloe Has Stated a Right of Publicity Claim (Count 7) ......................... 13

         C.    Chloe Has Stated a Tortious Interference with Business Relations
               Claim (Count 4) .............................................................................. 16

         D.    General Business Law Claims (Counts 9-10)........................................ 17

         E.    CKC Sales Has Stated a Copyright Infringement Claim (Count 14)....... 17

          F.    Chloe and CC Hospitality Have Stated Claims for Cancellation of
               U.S. Registration No. 4,833,607 (the "by CHLOE mark") (Counts
               17-18)........................................................................................... 21

         G.    For Similar Reasons, Chloe and CC Hospitality Have also Stated
               Claims for Federal Unfair Competition, Trademark Infringement,
               and Cyberpiracy (Counts 8, 15-16)..................................................... 23

         H.    For the Same Reason, Chloe Has Stated Claims for Common Law
               Unfair Competition and Trademark Infringement (Counts 11, 13)......... 25

         I.    Chloe Has Adequately Pled Unjust Enrichment (Count 12) .................. 26

         J.    Finally, Chloe Has Stated a Declaratory Judgment Claim (Count 3)...... 27

# TABLE OF CONTENTS
(continued)

Page

III.  In the Event the Court Dismisses Any of Plaintiffs' Claims, Leave to Amend Should be Granted ................................................................... 29

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS BCHG'S FIRST AMENDED COUNTERCLAIMS 1–4 AND 8 (IN PART) AND 7 (IN ITS ENTIRETY) ........................................................................................... 29

I.  BCHG's Opposition Failed to Identify Any Plausible Trademark or Unfair Competition Claim. ................................................................. 30

    A.  The Operating Agreement Expressly Limits Any of BCHG's Rights in the "By Chloe Mark." .............................................. 30

    B.  Chloe's Alleged Infringement Does Not Fall Within the Prohibited Uses of the "By Chloe Mark" in the Operating Agreement. ................. 31

II.  BCHG Concedes that the Court Should Dismiss Counterclaim 4 for Common Law Trademark Infringement and Unfair Competition as it Relates to *Chef Chloe and the Vegan Café*. ........................................ 34

III.  The Court Should Dismiss Counterclaim 7 Because BCHG Offered No Legal Support for its Claim that New York Law Permits Enforcement of a Confidentiality Provision that Covers Public Information. ................. 34

IV.  BCHG Identified no Case Law, and Challenged no Element of Chloe's *Res Judicata* Analysis, in Opposition to Chloe's Motion to Dismiss Counterclaim 8 In Part. ..................................................................... 35

CONCLUSION ..................................................................................................... 35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of N.Y. Tr., N.A. v. Franklin Advisors, Inc.*,
    522 F. Supp. 2d 632 (S.D.N.Y. 2007)..................................................................................11

*Barbour v. Head*,
    178 F. Supp. 2d 758 (S.D. Tex. 2001) ...............................................................................20

*Butkus v. Downtown Ath. Club of Orlando, Inc.*,
    No. CV 07-2507 PA (JWJx), 2008 WL 2557427, 2008 U.S. Dist. LEXIS
    49828 (C.D. Cal. Apr. 2, 2008)..........................................................................................14

*Canadian Steel, Inc. v. HFP Capital Mkts., LLC*,
    No. 11-23650-CIV, 2004 WL 1936242, 2012 U.S. Dist. LEXIS 84441 (S.D.
    Fla. Jun. 19, 2012).............................................................................................................17

*Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*,
    No. 14-cv-48, 2015 WL 3999192, 2015 U.S. Dist. LEXIS 85014 (S.D.N.Y.
    June 29, 2015)......................................................................................................................6

*Comolli v. Huntington Learning Ctrs., Inc.*,
    117 F. Supp. 3d 343 (S.D.N.Y. 2015).....................................................................13, 14, 15

*Cunningham v. Laser Golf Corp.*,
    222 F.3d 943 (Fed. Cir. 2000)............................................................................................21

*Dresser-Rand Co. v. Ingersoll Rand Co.*,
    No. 18-cv-3225, 2019 WL 1434575, 2019 U.S. Dist. LEXIS 55087 (S.D.N.Y.
    Mar. 29, 2019)......................................................................................................................6

*DSPT Int'l, Inc. v. Nahum*,
    624 F.3d 1213 (C.D. Cal. 2010).........................................................................................25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)...........................................................................................................18

*Fonar Corp. v. Domenick*,
    105 F.3d 99 (2d Cir. 1997).................................................................................................19

*Galli v. Metz*,
    973 F.2d 145 (2d Cir. 1992)...............................................................................................31

*Geinosky v. City of Chicago*,
    675 F.3d 743 (7th Cir. 2012) .............................................................................................12

*GS Plasticos Limitada v. Bureau Veritas*,
No. 650242/09, 2012 WL 6060991, 2012 N.Y. Misc. LEXIS 5452 (N.Y. Sup.
Ct. N.Y. Cty. Nov. 8, 2012) ................................................................................17

*Guzik v. Albright*,
No. 16-CV-2257 (JPO), 2018 WL 4386084, 2018 U.S. Dist. LEXIS 157264
(S.D.N.Y. Sept. 14, 2018) ...................................................................................17

*Hamilton v. SunTrust Mortg., Inc.*,
6 F. Supp. 3d 1312 (S.D. Fla. 2014) ...................................................................17

*Hard Rock Cafe Int'l (USA) v. Morton*,
No. 97 Civ. 9483 (RPP), 1999 WL 350848, 1999 U.S. Dist. LEXIS 8340
(S.D.N.Y. June 2, 1999)......................................................................................24

*Hidden Values, Inc. v. Wade*,
No. 3:11-CV-1917-L, 2012 WL 1836087, 2012 U.S. Dist. LEXIS 70474
(N.D. Tex. May 18, 2012)....................................................................................21

*Hofmann v. Dist. Council 37*,
2004 WL 1936242, 2004 U.S. Dist. LEXIS 17375 (S.D.N.Y. Aug. 31, 2004),
*adopted*, 2006 WL 3476747, 2006 U.S. Dist. LEXIS 87143 (S.D.N.Y. Nov.
30, 2006) ..............................................................................................................16

*Hotel Aquarius B.V. v. PRT Corp.*,
No. 92 Civ. 4498 (MBM), 1992 WL 391264, 1992 U.S. Dist. LEXIS 19603
(S.D.N.Y. Dec. 22, 1992) ....................................................................................26

*In re Amaranth Nat. Gas Commodities Litig.*,
587 F. Supp. 2d 513 (S.D.N.Y. 2008)..................................................................29

*In re O'Neill Beverage Co., Ltd.*,
Serial No. 85152684, 2013 TTAB LEXIS 454 (T.T.A.B. Aug. 15, 2013)............23

*Joules Ltd. v. Macy's Merch. Grp. Inc.*,
No. 15-CV-3645 (KMW), 2016 WL 4094913, 2016 U.S. Dist. LEXIS 101151
(S.D.N.Y. Aug. 2, 2017) ......................................................................................33

*KatiRoll Co. v. Kati Junction, Inc.*,
33 F. Supp. 3d 359 (S.D.N.Y. 2014).....................................................................26

*King County v. IKB Deutsche Industriebank AG*,
708 F. Supp. 2d 334 (S.D.N.Y. 2010)....................................................................3

*Kraus USA, Inc. v. Magarik*,
No. 17 Civ. 6541 (ER), 2018 WL 4682016, 2018 U.S. Dist. LEXIS 168164
(S.D.N.Y. Sept. 28, 2018).......................................................................................4

*Krause v. Krause Publ'ns. Inc.*,
  76 U.S.P.Q.2d 1904 (T.T.A.B. 2005) .................................................................23

*Labajo v. Best Buy Stores, L.P.*,
  478 F. Supp. 2d 523 (S.D.N.Y. 2007)...................................................................27

*Lawrence v. Town of Brookhaven Dep't of Hous.*,
  No. 07-cv-2243, 2007 WL 4591845, 2007 U.S. Dist. LEXIS 94947 (E.D.N.Y.
  Dec. 26, 2007), *aff'd*, 393 F. App'x 791 (2d Cir. 2010) ..........................................6

*Lee v. Karaoke City*,
  No. 1:18-cv-03895 (PAE) (SDA), 2019 WL 2451430, 2019 U.S. Dist. LEXIS
  68883 (S.D.N.Y. April 22, 2019)..........................................................................19

*Little v. Carlo Lizza & Sons Paving, Inc.*,
  160 F. Supp. 3d 605 (S.D.N.Y. 2016)...................................................................27

*Lorenzana v. S. Am. Rests. Corp.*,
  799 F.3d 31 (1st Cir. 2015)...................................................................................20

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
  378 F. Supp. 2d 448 (S.D.N.Y. 2005)...................................................................25

*Marshall v. Marshall*,
  No. 08 CV 1420 (KAM)(LB), 2010 WL 5477753, 2010 U.S. Dist. LEXIS
  137493 (E.D.N.Y. Dec. 7, 2010), *adopted*, 2010 WL 5477152, 2010 U.S.
  Dist. LEXIS 137502 (E.D.N.Y. Dec. 30, 2010). ...................................................16

*McCarthy v. Stollman*,
  No. 06 Civ. 2613 (DAB) (DF), 2009 U.S. Dist. LEXIS 133179 (S.D.N.Y. Feb.
  26, 2009), *adopted*, 2009 WL 1159197, 2009 U.S. Dist. LEXIS 36525
  (S.D.N.Y. Apr. 29, 2009)......................................................................................18

*Michele Pommier Models v. Men Women NY Model Mgmt.*,
  No. 97 Civ. 6837 (SAS), 1997 WL 724575, 1997 U.S. Dist. LEXIS 18294
  (S.D.N.Y. Nov. 18, 1997)......................................................................................25

*Moore v. Shahine*,
  No. 18 Civ. 463 (AT) (KNF), 2019 WL 948349, 2019 U.S. Dist. LEXIS
  31387 (S.D.N.Y. Feb. 27, 2019).............................................................................4

*Net2Globe Int'l v. Time Warner Telecom of N.Y.*,
  273 F. Supp. 2d 436 (S.D.N.Y. 2003)...................................................................27

*Niederland v. Chase*,
  No. 11 Civ. 6538, 2012 WL 2402603, 2012 U.S. Dist. LEXIS 88476
  (S.D.N.Y. June 20, 2012).........................................................................................4

iii

*Petroleos Mexicanos v. Intermix S.A.*,
  97 U.S.P.Q.2D (BNA) 1403 (T.T.A.B. 2010) .......................................................21

*Pinpoint Publs., LLC v. Susco Media, Inc.*,
  No. 15cv301 AJB (NLS), 2015 WL 12670509, 2015 U.S. Dist. LEXIS
  193444 (S.D. Cal. May 28, 2015) ........................................................................21

*Publ'ns Int'l, Ltd. v. Meredith Corp.*,
  88 F.3d 473 (7th Cir. 1996) ................................................................................20

*Roberts v. New York*,
  911 F. Supp. 2d 149 (N.D.N.Y. 2012) ..................................................................6

*Roe v. Bridgestone Corp.*,
  492 F. Supp. 2d 988 (S.D. Ind. 2007) .................................................................12

*Scandinavia Belting Co. v. Asbestos & Rubber Works of America*,
  257 F. 937 (2d Cir. 1919), *cert. denied*, 250 U.S. 644 (1919) ..............................31

*Semple v. Eyeblaster, Inc.*,
  No. 08 Civ. 9004 (HB), 2009 WL 1457163, 2009 U.S. Dist. LEXIS 45349
  (S.D.N.Y. May 26, 2009) .....................................................................................17

*Slayton v. Am. Express Co.*,
  460 F.3d 215 (2d Cir. 2006) ................................................................................15

*Stevelman v. Alias Research Inc.*,
  174 F.3d 79 (2d Cir. 1999) ..................................................................................15

*Syntex Labs. v. Norwich Pharmacal Co.*,
  437 F.2d 566 (2d Cir. 1971) ................................................................................33

*Telebrands Corp. v. Del Labs., Inc.*,
  719 F. Supp. 2d 283 (S.D.N.Y. 2010) ....................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...........................................................................................26

*Terex Corp. v. Cubex, Ltd.*,
  No. 06-cv-1639, 2006 WL 3542706, 2006 U.S. Dist. LEXIS 88863 (N.D. Tex.
  Dec. 7, 2006) .......................................................................................................6

*Threadstone Advisors, LLC v. LXR Produits De Luxe Int'l, Inc.*,
  No. 17 Civ. 9255 (PGG), 2019 U.S. Dist. LEXIS 53283 (S.D.N.Y. Mar. 26,
  2019) ..................................................................................................................27

*TVT Records v. Island Def Jam Music Grp.*,
  412 F.3d 82 (2d Cir. 2005) ...................................................................................5

iv

*United States v. Johnson,*
   616 F.3d 85 (2d Cir. 2010), *cert. denied*, 564 U.S. 1047 (2011)..............................6

*Wilson v. Everbank, N.A.,*
   77 F. Supp. 3d 1202 (S.D. Fla. 2015) ......................................................................17

*Zeng v. Augustin,*
   No. 17-CV-9988 (JMF), 2019 WL 1284274, 2019 U.S. Dist. LEXIS 46247
   (S.D.N.Y. Mar. 20, 2019) (Furman, J.).......................................................................4

**Statutes**

15 U.S.C. § 1052(a) ..........................................................................................................21

15 U.S.C. § 1052(c) ..........................................................................................................22

15 U.S.C. § 1064 ...............................................................................................................21

15 U.S.C. § 1125(d) ..........................................................................................................25

17 U.S.C. § 101 .................................................................................................................20

17 U.S.C. § 101 *et seq.*................................................................................................20, 34

17 U.S.C. § 205(a) .............................................................................................................19

17 U.S.C. § 410(c) .............................................................................................................19

15 U.SC. § 1115(b)(6) .......................................................................................................24

New York Civil Rights Law §§ 50, 51 ..............................................................................13

TMEP § 813.01(a) .............................................................................................................22

TMEP § 1206......................................................................................................................22

**Rules**

Fed. R. Civ. P. 12(b) ...........................................................................................................4

Fed. R. Civ. P. 12(b)(6)................................................................................................ *passim*

Fed R. Civ. P. 12(c) ..............................................................................................1, 3, 4, 29

Fed. R. Civ. P. 15(a)(2)......................................................................................................29

Fed. R. Civ. P. 15(c)(1)(B) ...............................................................................................15

**Other Authorities**

J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair Competition*,
§ 25:30 (4th ed. 2000) ................................................................................................24

J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition,*
§ 32:149 (4th ed. 2000) ..............................................................................................24

J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition,*
§ 32:153 (4th ed. 2000) ..............................................................................................24

U.S. Copyright Office, Circular No. 12, "Recordation of Transfers and Other
Documents," 1 (2016), https://www.copyright.gov/circs/circ12.pdf ......................19

U.S. Copyright Office, Circular No. 33, "Works Not Protected by Copyright," 2
(2017), https://www.copyright.gov/circs/circ33.pdf ...............................................20

U.S. Copyright Office, "What Does Copyright Protect?",
https://www.copyright.gov/help/faq/faq-protect.html (last visited June 28,
2019) ..........................................................................................................................20

## PRELIMINARY STATEMENT

Chloe sued Defendants over a year ago. Since then, they have tried at every turn to deny her the opportunity to pursue her claims on the merits. Defendants' current motion to dismiss— their second Rule 12 motion—is yet another improper example of this tactic. The motion is procedurally improper, as this Court's case law is clear that Defendants waived any 12(b)(6) motion when they chose to answer the Amended Complaint; yet a Rule 12(c) motion is not ripe because the pleadings are not closed. The Court should deny their motion for this reason alone.

Nor should this Court resolve Chloe's claims on the merits at this stage, even if it considers Defendants' motion. Defendants make two key errors in their sweeping argument that the Court's earlier order on the preliminary injunction motion about the "By Chloe Mark" warrants dismissal of Chloe's breach of contract and right of publicity claims. First, Chloe has alleged plausible claims unrelated to the "By Chloe Mark." For instance, BCHG has used Chloe's photo and her nickname as "Chef Chloe," among others, that seek to capitalize on Chloe's NFL Rights for its own benefit. Because BCHG's use continued (even to this day in some instances) after Chloe terminated the NFL Agreement in March 2018, BCHG had no license or permission to use Chloe's photo and nickname. The Court should deny Defendants' motion for those counts for that reason alone.

Second, Chloe respectfully disagrees with the Court's earlier finding that BCHG's use of the "By Chloe Mark" does not implicate Chloe's NFL Rights. When the Operating and NFL Agreements are read together, Chloe has stated a plausible claim that BCHG's continued use of the "By Chloe Mark," including its use of "by Chloe" as the name of its restaurants, breaches its obligations under the NFL Agreement and New York's right of privacy statute (which encompasses claims for unauthorized use of an individual's rights of publicity). Under the plain language of the Operating Agreement, any ownership interest BCHG may have in the "By Chloe Mark" is expressly "*subject to* the terms and conditions of this Operating Agreement *and the NFL*

1

*License Agreement*." (Operating Agreement § 4.4(a) (emphasis added)). If the "By Chloe Mark" did not implicate Chloe's NFL Rights, then any ownership in the "By Chloe Mark" would not be subject to the NFL Agreement. BCHG's position would make this limitation superfluous, which is error. The Court's (and arbitrator's) holding that Chloe is not even a party to the Operating Agreement only enhances this interpretation. (Dkt. 72 ("Preliminary Injunction Order") at 12-13; Dkt. 22-15 ("Final Arbitration Award") at 33). Put another way, the *only* vehicle through which Chloe could have provided *any* right in her name is the NFL Agreement. And that is exactly what the parties intended—and accomplished—in their two agreements. As a result, the "By Chloe Mark" implicates Chloe's NFL rights.

But the Court need not—and should not—resolve this dispute now. Rule 12 motions are not opportunities for courts to resolve plausible ambiguities in contracts. And at a minimum, the Operating and NFL Agreements are ambiguous about whether BCHG's use of the "By Chloe Mark" implicates Chloe's NFL Rights. The only question in front of the Court now is whether Chloe has stated a plausible claim that it does. Here, based on the explicit "subject to" limitation of the NFL Agreement, along with parol evidence clearly showing that the parties intended BCHG's use of the "By Chloe Mark" to constitute a use of Chloe's NFL rights, any merits ruling now is premature. Chloe deserves an opportunity to present her case—including all relevant parol evidence—on a proper record. The Court should deny Defendants' motion as a result.

None of Defendants' remaining arguments warrant any relief either. Their arguments, like so many routine Rule 12 motions now, simply try to litigate the merits under the guise of *Twombly* and *Iqbal*. But Defendants ignore the elementary standard that the Court must accept Chloe's well-pled allegations as true. The Court should decline to decide any of the fact-intensive issues that underlie Defendants' entire motion at this stage.

Finally, at the Court's direction, Chloe concludes this brief with her reply brief in further support of her focused motion to dismiss several of BCHG's counterclaims.

## STATEMENT OF FACTS

Because Plaintiffs Chloe Coscarelli ("Chloe"), Chef Chloe LLC, CC Hospitality Holdings LLC ("CC Hospitality"), and CKC Sales, LLC ("CKC Sales" and, collectively, "Plaintiffs") have already fully set forth the factual background of this case in their motion to dismiss certain of Defendant BC Hospitality Group LLC's (formerly CCSW LLC) ("BCHG")[1] first amended counterclaims (Dkt. 100 at 2-6) and their motion for a preliminary injunction (Dkt. 22 at 2-8), they do not do so again here. Instead, Plaintiffs incorporate the facts stated in those briefs as if fully set forth herein and otherwise identify relevant facts in the sections below.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' "CROSS MOTION" TO DISMISS

Nearly two months after serving their answer, and almost one year after Plaintiffs filed their original complaint, Defendants purport to "cross move" to dismiss several claims. Their motion fails for two core reasons. First, the "cross motion" is procedurally improper because the motion is too late under Fed. R. Civ. P. 12(b)(6) and too early for a Rule 12(c) motion. Second, "[i]n deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in [the] plaintiff[s'] favor." *King County v. IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 337 (S.D.N.Y. 2010) (internal quotation marks omitted). All Plaintiffs must do is allege claims that are "facially plausible." *Id.* Yet Defendants base much of their motion on unsupported allegations well outside the pleadings. Thus, the Court should deny Defendants' "cross motion."

---

[1] Although BCHG changed its name from "CCSW LLC" to "BC Hospitality Group LLC" during the time period relevant to this brief, to simplify matters, throughout this brief Plaintiffs refer to this entity as "BCHG."

**I.**     <u>**The Court Should Deny Defendants' Motion Because it is Procedurally Improper.**</u>

Defendants motion is too late for Rule 12(b)(6) and too early for Rule 12(c). "Under the *unambiguous, mandatory language of Rule 12(b)*, a motion to dismiss for failure to state a claim *must* be made before an answer is filed." *See, e.g.*, *Moore v. Shahine*, No. 18 Civ. 463 (AT) (KNF), 2019 WL 948349, 2019 U.S. Dist. LEXIS 31387, at \*3 (S.D.N.Y. Feb. 27, 2019) (emphasis added).[2] Defendants waived their right to file a Rule 12(b)(6) motion by answering the Amended Complaint. Defendants' motion also fails as a motion for judgment on the pleadings, which may only be filed when all pleadings are closed. *See Niederland v. Chase*, No. 11 Civ. 6538, 2012 WL 2402603, 2012 U.S. Dist. LEXIS 88476, at \*11-12 (S.D.N.Y. June 20, 2012) (converting defendant's 12(b)(6) motion to 12(c) motion and denying as premature because pleadings are not closed while plaintiff's motion to dismiss counterclaims are pending).[3] Yet the pleadings are not closed here because Plaintiffs have not answered Defendants' counterclaims. Thus, the "cross-motion" should be denied.

**II.**     <u>**Although the Court Need Not Consider it, Defendants' Motion Fails on the Merits.**</u>

    **A.**     **The Court's Preliminary Injunction Order Does Not Mandate Dismissal of Chloe's Claim for Breach of the NFL Agreement (Count 1).**

As the NFL Agreement makes clear, Chloe is the sole owner of her name, image, and likeness ("NFL Rights"). (Dkt. 76-2 ("NFL Agreement") at 1). Under that agreement, Chloe licensed the right to use her "Name and pre-approved Rights of Publicity" to BCHG "solely in

---

[2] *See also Zeng v. Augustin*, No. 17-CV-9988 (JMF), 2019 WL 1284274, 2019 U.S. Dist. LEXIS 46247, at \*2 n.2 (S.D.N.Y. Mar. 20, 2019) (Furman, J.); Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").

[3] *See also Kraus USA, Inc. v. Magarik*, No. 17 Civ. 6541 (ER), 2018 WL 4682016, 2018 U.S. Dist. LEXIS 168164, at \*31 (S.D.N.Y. Sept. 28, 2018) ("Put differently, Defendants are too late to move to dismiss, but too early to move for judgment on the pleadings."); Fed. R. Civ. P. 12(c) ("*After the pleadings are closed* . . . a party may move for judgment on the pleadings." (emphasis added)).

connection with the operation, marketing and promotion of [fast casual vegan] Restaurants"[4] and

"Approved Projects" (of which there are none). (*Id.* § 1(a)). On March 16, 2018, Chloe cancelled

this license when she terminated the NFL Agreement. (Dkt. 76 ("Cmpl.") ¶¶ 66-67).

Yet BCHG continued to use Chloe's NFL Rights in a number of ways after termination,

including, but not limited to, its: (i) announcement of a line of retail packaged goods under the

name "Sweets by Chloe," such as a line of cupcakes called "Chlostess Cupcake," which is a name

and design famously associated with Chloe (Cmpl. ¶ 70); (ii) use of a number of brands and/or

social media accounts incorporating Chloe's name, such as "By Chef Chloe" (which directs people

to the "By Chloe" Instagram page), "Eat By Chloe," "Chill by Chloe," "COFFEE BY CHLOE,"

"DRIP COFFEE by CHLOE," "Juice by Chloe," "Blog by CHLOE," "Woof by Chloe," "Simply

Gum x by Chloe," and "Feelz by Chloe" (Cmpl. ¶ 74); (iii) advertising Chloe's full name and face

in different places throughout its website, including a collection of links to news articles which

associate BCHG with Chloe (*Id.*; Dkt. 76-1 (Appendix A)); (iv) Pinterest page that includes photos

from Chloe's cookbooks and website (*see, e.g.*, Declaration of Patrick Arenz ("Arenz Decl."), filed

herewith, Ex. 1); and, (v) website which includes Chloe's photo (*see, e.g.*, *id.* Ex. 2). Thus, Chloe

has stated a plausible claim that BCHG breached the NFL Agreement by continuing to use her

NFL Rights after termination of its license to do so.

BCHG's sole reliance on the Court's decision from the preliminary injunction stage as a

basis for dismissing this claim is misplaced. At that stage, the Court expressed its view that

---

[4] The term "Restaurants" is defined in the Operating Agreement as having "the meaning ascribed to such term in Section 4.1." (Dkt. 76-3 ("Operating Agreement") at 10). Section 4.1 defines "Restaurants" as "restaurants utilizing the Concept." (*Id.* § 4.1). The "Concept" is, in turn, defined as "a 'fast casual' vegan restaurant." (*Id.* at 5). Therefore, the NFL Agreement's reference to "Restaurants" refers to fast casual vegan restaurants. *See, e.g.*, *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) (noting that "all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together," even if "they were executed on different dates and were not all between the same parties").

BCHG's use of the "By Chloe Word Mark" for "whatever purpose[] does not implicate [Chloe's] rights under the NFL Agreement."[5] Defendants rely on this statement without any substantive analysis or citation to authority, thereby ignoring that a "district court's holding on [a] motion for a preliminary injunction is not controlling on [a] motion to dismiss." *Roberts v. New York*, 911 F. Supp. 2d 149, 176 (N.D.N.Y. 2012) (reasoning that "[a] motion for a preliminary injunction requires a different standard of proof than a motion to dismiss").[6] Rather than being bound by the Court's likelihood of success determination, Chloe need only "establish that the allegations in the Complaint are sufficient to render her claims 'plausible.'" *Lawrence*, 2007 WL 4591845, 2007 U.S. Dist. LEXIS 94947, at *36 (citation omitted); *Terex Corp. v. Cubex, Ltd.*, No. 06-cv-1639, 2006 WL 3542706, 2006 U.S. Dist. LEXIS 88863, at *44 (N.D. Tex. Dec. 7, 2006) ("While the court did not find a substantial likelihood that [the plaintiff] will prevail on the merits of the breach of contract claim, the allegations in the complaint do set forth a legally sufficient cause of action so as to survive a Rule 12(b)(6) motion.").[7]

Under this standard, Chloe's claim for breach of the NFL Agreement is plausible for three independent reasons: (i) Chloe has plausibly alleged a claim that is independent of any rights BCHG may have to the "By Chloe Word Mark"; (ii) even if Chloe's claim implicates the "By Chloe Word Mark," she has plausibly alleged that this mark implicates her NFL rights; and, (iii)

---

[5] Preliminary Injunction Order at 22.

[6] *See also Lawrence v. Town of Brookhaven Dep't of Hous.*, No. 07-cv-2243, 2007 WL 4591845, 2007 U.S. Dist. LEXIS 94947, at *36 (E.D.N.Y. Dec. 26, 2007) (same), *aff'd*, 393 F. App'x 791 (2d Cir. 2010); *see generally United States v. Johnson*, 616 F.3d 85, 93 (2d Cir. 2010) (noting that "the application of law-of-the-case doctrine is generally inappropriate when relevant issues are governed by different standards of review"), *cert. denied*, 564 U.S. 1047 (2011).

[7] *See also Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 18-cv-3225, 2019 WL 1434575, 2019 U.S. Dist. LEXIS 55087, at *13 (S.D.N.Y. Mar. 29, 2019) (denying motion to dismiss contract claim where plaintiff "offer[ed] a plausible interpretation, based upon the contract's operative provisions"); *Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*, No. 14-cv-48, 2015 WL 3999192, 2015 U.S. Dist. LEXIS 85014, at *24 (S.D.N.Y. June 29, 2015) ("The only task before the Court at the motion to dismiss stage is to determine whether there is at least sufficient ambiguity in the contract for [the plaintiff's] claim to go forward.").

at a minimum, the Operating Agreement and NFL Agreement are ambiguous as they relate to the "By Chloe Word Mark," which prevents the Court from dismissing Chloe's claim now and denying her the opportunity to offer parol evidence about the parties' intent.

> 1.    *Chloe Plausibly Alleged Breaches of the NFL Agreement for Unauthorized Uses of her NFL Rights Independent of the "By Chloe Word Mark."*

Even if the Preliminary Injunction Order were binding here, Chloe would state a claim for breach of the NFL Agreement because her claim largely does not implicate any of BCHG's purported rights regarding its continued use of the "By Chloe Word Mark." Rather, Chloe's claim primarily challenges, *inter alia*, BCHG's retail packaged goods line under the brand "Sweets by Chloe," BCHG's numerous other brands and social media accounts such as "By Chef Chloe" and "Woof by Chloe," BCHG's use of the domain name eatbychloe.com, and BCHG's attempts to associate itself with Chloe through her photo and other efforts identified above—none of which implicates the "By Chloe Word Mark."

For example, BCHG's unauthorized use of Chloe's first name in "By Chef Chloe" and "Chlostess Cupcake" (which do not contain the phrase "by Chloe"), as well as its attempts to associate itself with Chloe through news articles, are wholly independent of any purported right of BCHG to continue using the "By Chloe Word Mark." *See, e.g.*, Cmpl. ¶¶ 58(d), 59(e), 74(l), 134(l), 139. Nor is BCHG authorized to use Chloe's photo to market its brand and business—as it still does to this day. *See, e.g.*, Arenz Decl. Ex. 2. BCHG ignores these allegations in its effort to manufacture a motion to dismiss this count. Thus, even if it were binding here, the Preliminary Injunction Order does not support dismissal of Chloe's claim.

The same conclusion holds true for other portions of Chloe's claim about BCHG's use of marks that are *derivative* of the "By Chloe Word Mark," like similar composite marks, "Sweets by Chloe," "Woof by Chloe," and so on, to which BCHG has no rights. Indeed, the Operating

Agreement defines the "By Chloe Word Mark" as *only* "the standard character mark 'BY CHLOE.'" (Operating Agreement at 3-4). The agreement also specifies that BCHG's "right to the By Chloe Word [M]ark is limited solely to the exact lettering of the By Chloe Word Mark *and not to any similar or derivative mark*." (*Id.* § 4.4(b) (emphasis added).[8] In fact, precisely for this reason, Defendants have filed *separate trademark applications* for several of these marks, including "Sweets by Chloe" (Serial Nos. 87954174 and 87932889) and "Woof by Chloe" (Serial No. 87864135), rather than merely relying upon the "By Chloe Mark" or even a new "by Chloe" application for different goods and services. (*See* Arenz Decl. Exs. 3-5).[9]

Accordingly, because Chloe's claim for breach of the NFL Agreement largely does not implicate the "By Chloe Word Mark" at all, the Court should deny Defendants' motion to dismiss Count I even if the Preliminary Injunction Order were binding and unchanged.

2. *Even if Chloe's Claim Implicates BCHG's Use of the "By Chloe Word Mark," She Has Still Plausibly Alleged a Breach of the NFL Agreement*

Even apart from Chloe's allegations that do not implicate the "By Chloe Word Mark," Chloe has still stated a claim for breach of the NFL Agreement because she has plausibly alleged that BCHG's rights, if any, to continue use of the "By Chloe Word Mark" do not include the right to use that mark in connection with a retail packaged goods business, or any of the other above-mentioned uses.

The Operating Agreement narrowly defines the term "By Chloe Word Mark" as being limited to "the standard character mark 'BY CHLOE' *in connection with the goods and services of the Business*." (Operating Agreement at 3-4 (emphasis added)). And the "Business" is defined

---

[8] *See also* Operating Agreement § 4.4(e) ("[BCHG] and ESquared Hospitality . . . agree[] that they will not oppose . . . [Chloe's] ownership, use . . . or registration of any 'Chloe' designation other than the By Chloe Mark.").

[9] The Court "may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office." *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010).

as "Restaurants" (a term that means vegan fast casual restaurants, *see supra* note 4) and "Approved Projects" (of which there are none). (Operating Agreement § 4.1; *see also* Cmpl. ¶ 65). Thus, although the Operating Agreement provides that "subject to the terms and conditions of this Operating Agreement and the NFL License Agreement" BCHG "shall own all right, title and interest in and to the By Chloe Mark," (Operating Agreement § 4.4(a)), that mark, is—*by definition*—limited to vegan fast casual restaurants.[10]

The parties to the Operating Agreement also expressly "acknowledge[d] and agree[d] that the By Chloe Mark incorporates [Chloe's] first name." (Operating Agreement § 4.4). Included within the definition of "NFL Rights" in the NFL Agreement is the use of "Chloe's full and formal name, nickname, or variations of her name." (NFL Agreement at 1). Thus, to the extent Chloe's claim for breach of the NFL Agreement implicates BCHG's use of the "By Chloe Word Mark," Chloe has plausibly alleged a claim for breach of the NFL Agreement by alleging unauthorized use of the "By Chloe Word Mark" (which incorporates her first name) by BCHG for purposes other than a vegan fast casual restaurant.

Additionally, although the Preliminary Injunction Order appears to have relied on a section of the Operating Agreement that "draws a distinction between the By Chloe Mark . . . and [Chloe's] 'NFL Rights'" (Preliminary Injunction Order at 22 (citing Operating Agreement § 4.4)), there is a plausible alternate interpretation of that section, which provides as follows:

> By Chloe Mark.  The parties acknowledge and agree that the By Chloe Mark incorporates [Chloe's] first name, and that nothing contained in this Agreement is intended to bestow upon [BCHG] any rights to [Chloe's] NFL Rights (as defined in the NFL License Agreement), *except as permitted herein and the NFL License Agreement*.

---

[10] "By Chloe Mark" is a defined term in the Operating Agreement incorporating the "By Chloe Word Mark" and the "By Chloe Design Mark," which is defined as "any logo or other design mark incorporating the By Chloe Word Mark . . . and *used in connection with the good and services of the Business*." (Operating Agreement at 3 (emphasis added)).

(Operating Agreement § 4.4 (emphasis added); *see also id.* § 4.4(a) (providing that BCHG's ownership of the "By Chloe Mark" is "subject to . . . the NFL License Agreement")).

Respectfully, rather than drawing a *distinction* between "NFL Rights" and the "By Chloe Mark" as separate, it is at least plausible that this section instead recognizes that the use of the "By Chloe Mark" as defined in the Operating Agreement, *i.e.*, for vegan fast casual restaurants, by its nature, *is also a use of* Chloe's NFL Rights. (*See* Cmpl. ¶ 8). The section further provides that the Operating Agreement does not convey any of those NFL Rights to BCHG, but rather that the conveyance of such rights is accomplished through the separate NFL Agreement. *Id*.[11]

Indeed, the Operating Agreement provides that any ownership interest in the "By Chloe Mark" is expressly "*subject to* the terms and conditions of this Operating Agreement and *the NFL License Agreement*." (Operating Agreement § 4.4(a) (emphasis added)). Put simply, if the "By Chloe Mark" did not implicate Chloe's NFL rights, then any ownership in the "By Chloe Mark" would *not* be subject to the NFL Agreement. The Court's (and arbitrator's) holding that Chloe is not even a party to the Operating Agreement only enhances this interpretation. (Dkt. 72 ("Preliminary Injunction Order") at 12-13; Dkt. 22-15 ("Final Arbitration Award") at 33). In fact, the only vehicle through which Chloe could have provided any right in her name is the NFL Agreement. And as reflected below in examples of parol evidence, this was precisely the parties' intent when they entered into these agreements. Thus, even if Chloe's claim implicates BCHG's use of the "By Chloe Mark," this section (at least plausibly) does not preclude Chloe's claim.

---

[11] The other provision the Preliminary Injunction Order cites in this discussion, Section 1(b) of the NFL Agreement, can be similarly interpreted. That section provides that Chloe "shall retain the right to use the NFL Rights in any way whatsoever except in connection with the By Chloe Mark" and that "[a]ll rights in and to the By Chloe Mark are reserved by the Company as stated in the Operating Agreement." (NFL Agreement § 1(b)). This section can be plausibly interpreted as defining use of the "By Chloe Mark" as one permitted use by BCHG of Chloe's NFL Rights.

3.   *At a Minimum, the Agreements are Ambiguous, which Precludes Dismissal of Chloe's Claim Here, and Parol Evidence Confirms Chloe's Interpretation of the NFL Agreement*

A final reason exists for the Court to deny Defendants' motion to dismiss Count 1: the NFL Agreement is at least ambiguous about whether BCHG's various continued uses of Chloe's name are permissible after Chloe terminated the NFL Agreement. For this reason too, the Court should not dismiss Chloe's claim because the "Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities." *Bank of N.Y. Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007). This conclusion applies with particular force here because the relevant parol evidence confirms Chloe's allegation that "NFL Rights" under the NFL Agreement include use of the "By Chloe Word Mark." *See id.* ("'[W]here extrinsic evidence of the parties' actual intent exists, it should be submitted to the trier of fact.'" (quoting *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573-74 (2d Cir. 1993))).

Under the Operating and NFL Agreements, the intent of the parties was to allow BCHG to use Chloe's name in the exact lettering "by CHLOE." *only* when Chloe either: (i) held an equity stake in the company; or (ii) received royalties from the company. That is why the parties made clear that any ownership of the "By Chloe Mark" is "subject to the terms and conditions of this Operating Agreement and the NFL License Agreement." (Operating Agreement § 4.4(a)). And the Operating Agreement clearly states that any rights to the "By Chloe Mark" are "solely to the exact lettering of the By Chloe Word Mark and not to any similar or derivative mark." (*Id.* § 4.4(b)).

The NFL Agreement also makes clear that the parties intended the company to pay Chloe a royalty for use of her name if Chloe's membership interests were repurchased. Section 10(a) of the NFL Agreement (which survives termination), for instance, provides that "[i]n the event the Repurchase Right . . . is exercised, to the extent [BCHG] continues to use . . . NFL Rights . . . [BCHG] shall pay . . . [Chloe] a royalty 1% of the gross sales from such operations." (NFL

11

Agreement § 10(a)). If BCHG's use of the "By Chloe Word Mark" does not implicate Chloe's NFL Rights, as BCHG asserts, then BCHG could continue using Chloe's name for vegan fast casual restaurants, arguably in perpetuity, without compensating her a dime. Such a result would not only be absurd, it would also betray the intent of the Parties, as clearly reflected in their correspondence both during and after negotiation of the NFL Agreement.

That parol evidence repeatedly emphasized that Chloe would receive a royalty if BCHG continued to use her name as the name of the "by Chloe" restaurants after it exercised the Repurchase Right. For example:

- Only July 2, 2014, Brad Muro, who was negotiating the agreements on behalf of ESquared, e-mailed Chloe's lawyer, Josh Saviano, and stated, "[t]he idea that at some point a service member could quit or be terminated for cause and continue to receive profit distributions without further obligations is a very sensitive issue for [James Haber] . . . . particularly here, where [Chloe] *would immediately start receiving license fees in perpetuity following termination*." (Arenz Decl. Ex. 6 (emphasis added)). He also stated that "where [Chloe] is terminated for cause, quits without good reason, dies or becomes disabled . . . [ESquared] can continue opening new restaurants using same concept *so long as they pay the 1% royalty (if interests are repurchased*/forfeited) . . . ." (*Id.* (emphasis added)).

- Following execution of the NFL Agreement, on April 3, 2016, Mr. Muro proposed changes to the parties' various agreements, and, even under these proposed changes, "[n]ote[d] that [BCHG's] right to continue to grow post termination *is still conditioned on [Chloe] either retaining her interests or her receiving a post-termination royalty*." (*Id.* Ex. 7 (emphasis added)).

- Moreover, on April 11, 2016, Mr. Muro circulated a summary of the parties' contractual relationship, including the NFL Agreement, that specifically notes that "[i]f [Chloe's] interests are repurchased, Chef Chloe *shall be entitled to a royalty equal to 1% of gross sales*." (*Id.* Ex. 8 (emphasis added)).[12]

---

[12] Many courts allow a plaintiff to refer to matters outside the pleading to demonstrate that its claims will have evidentiary support. *See, e.g., Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (approving party opposing Rule 12 motion to "submit materials outside the pleadings to illustrate the facts the party expects to be able to prove"); *Roe v. Bridgestone Corp*., 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007) ("Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate.").

At no point does Mr. Muro suggest in these e-mails that BCHG could exercise its Repurchase Right and continue using the "By Chloe Word Mark" for free (which is what would result if use of that mark did not implicate Chloe's "NFL Rights"). Nor does he suggest that BCHG could *expand* its usage of Chloe's NFL Rights into new areas (*i.e.,* retail packaged goods, derivative marks and concepts) without compensating Chloe, and without her consent. To the contrary, Mr. Muro conceded that BCHG "*[c]an't do any different concepts without [Chloe's] consent.*" (Arenz Decl. Ex. 6 (emphasis added)). This parol evidence thus confirms that Chloe has pled a plausible claim that "NFL Rights" under the NFL Agreement include use of the "By Chloe Word Mark," which incorporates Chloe's first name. It also underscores the need for the Court to resolve this claim on the merits with a full record, not on the pleadings.

### B.      Chloe Has Stated a Right of Publicity Claim (Count 7)

Chloe's claim under New York Civil Rights Law §§ 50 and 51 challenges Defendants' unauthorized commercial exploitation of her identity, including in all of the above-mentioned ways in which BCHG has breached the NFL Agreement by continuing to use Chloe's NFL Rights post-termination of that agreement. (*See* Cmpl. ¶¶ 8, 133-63). These examples include Defendants' continued misappropriation of Chloe's photo, her name Chef Chloe, among other variations and uses. *See* § II.A above. Defendants' two arguments for dismissing this claim fail.

First, the Preliminary Injunction Order does not require dismissal of this claim for all the reasons stated above with respect to Count 1. Moreover, the analysis of whether the "By Chloe Mark" is included within the NFL Agreement's meaning of "NFL Rights" is irrelevant to whether Chloe can state a *statutory* right of publicity claim. "A Section 51 claim must demonstrate each of four elements: (1) usage of plaintiff's name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without plaintiff's written consent." *Comolli v. Huntington Learning Ctrs., Inc.*, 117 F. Supp. 3d 343, 348-49 (S.D.N.Y. 2015) (internal quotation

marks omitted). Chloe's allegations that Defendants have continued to use her identity for purposes of trade in New York even after she terminated her consent for them to do so are more than sufficient to state a claim. *See, e.g.*, *id.* at 350 ("[W]here the written consent to use plaintiff's name or picture for advertising or trade purposes has expired . . . the plaintiff may seek damages or other relief under [Section 51], even though [s]he might properly sue for breach of contract." (internal quotation marks omitted)).

Indeed, the NFL Agreement is the *only* agreement in which Chloe authorized *any* use of her publicity rights. As both the arbitrator and the Court have found, Chloe is *not* a party to the Operating Agreement. (Preliminary Injunction Order at 12-13; Final Arbitration Award at 33). Thus, to the extent a portion of Chloe's right of publicity claim implicates use of the "By Chloe Mark," section 4.4 of the Operating Agreement, in which "*the parties* agree[d]" that BCHG would have certain rights "to the By Chloe Mark . . . *subject to the terms and conditions of . . . the NFL License Agreement*" cannot defeat such claim because (in addition to being subject to the license contained in the NFL Agreement) it is not a written consent *from Chloe*, who is not a party to the Operating Agreement. (*See* Operating Agreement §§ 4.4, 4.4(a) (emphases added)).[13]

Nor is Chloe's right of publicity claim barred by the statute of limitations. First, Defendants offer no support for their bald assertion that "there is no dispute (or at least any allegation to the contrary) that *all* of the alleged uses of [Chloe's] name, face or likeness . . . first occurred between 2015 and 2017." (Dkt. 105 at 9 (emphasis added)). Chloe certainly disputes this point; indeed, among other unauthorized uses of her name that violate Chloe's right of publicity, Chloe

---

[13] In fact, ownership in a trademark does not license an individual's rights of publicity; they are related, but distinct intellectual property rights. *See Butkus v. Downtown Ath. Club of Orlando, Inc.*, No. CV 07-2507 PA (JWJx), 2008 WL 2557427, 2008 U.S. Dist. LEXIS 49828, at *11-12 (C.D. Cal. Apr. 2, 2008) (explaining that consent to use and register the Butkus Award mark did not constitute a license to use Richard "Dick" Butkus' name and likeness). Thus, any alleged consent to use and register the by CHLOE Mark does not constitute a license to use Chloe's name and likeness.

challenges Defendants' unauthorized introduction of a line of retail products *in May 2018* that bear her first name. (Cmpl. ¶¶ 58-60, 134(a); *see also* Dkt. 22-18 at 2 (May 24, 2018 press article announcing "'the introduction of [] Sweets By Chloe retail products at Whole Foods Market'")). At a minimum, this fact-intensive issue is improper for a Rule 12 motion.

The crux of Defendants' argument appears to be that many (but not all, *see* Cmpl. ¶ 154) of the examples of websites or social media posts cited in the complaint (which constitute only a portion of Chloe's right of publicity claim)[14] are from the years 2015-2017, and thus more than a year from Chloe's original filing. But Defendants ignore that Chloe terminated the NFL Agreement in *March 2018*. Thus, Chloe's right of publicity claim based on those earlier social media posts did not accrue until Defendants *continued* to exploit Chloe's name, portrait, and picture through those posts *after* she terminated the NFL Agreement. *See, e.g.*, *Comolli*, 117 F. Supp. 3d at 350 (right of publicity accrues following expiration of written consent). Thus, Chloe's original complaint, which she filed in June 2018, was well within the one-year statute of limitations. (Dkt. 1 (Original Complaint) ¶¶ 130-68).[15]

Defendants' statute of limitations defense is also inappropriate for a Rule 12 motion based on the nature of Defendants' use. Based on the well-pled allegations, discovery will likely reveal that Defendants republished these (or other) posts misappropriating Chloe's identity, which further extends the statute of limitations. *See Comolli*, 117 F. Supp. 3d at 349 ("republication of the

---

[14] As detailed in her Complaint, Chloe also challenges Defendants' use of her name as the name for BCHG's restaurants and other projects, as well as for marketing goods and services. (Cmpl. ¶¶ 133-35).

[15] Although Chloe's original complaint alleged her right of publicity claim under California law, the legal theory of Chloe's New York publicity right claim is virtually identical to her California claims. (*Compare* Original Complaint ¶¶ 130-68 *with* Cmpl. ¶¶ 131-65). Accordingly, the date of the Original Complaint, June 29, 2018. is the relevant date for statute of limitations purposes. *See, e.g.*, Fed. R. Civ. P. 15(c)(1)(B); *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) ("Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999))).

offending material refreshes the limitations period"). Thus, Defendants' statute of limitations defense is most appropriately considered on a proper record. *See, e.g.*, *Marshall v. Marshall*, No. 08 CV 1420 (KAM)(LB), 2010 WL 5477753, 2010 U.S. Dist. LEXIS 137493, at *15 (E.D.N.Y. Dec. 7, 2010) ("[W]hether a particular event constitutes a reissue or republication so as to give rise to a new cause of action with a new period of limitations is frequently difficult to determine, depending on the facts of each case." (citations and quotations omitted)), *adopted*, 2010 WL 5477152, 2010 U.S. Dist. LEXIS 137502 (E.D.N.Y. Dec. 30, 2010).

## C.    Chloe Has Stated a Tortious Interference with Business Relations Claim (Count 4)

The Court should also decline to dismiss Chloe's tortious interference claim. Chloe alleged Defendants tortiously interfered with her business relationship with the St. Roch Market, where she operates a food stall called *Chef Chloe and the Vegan Café*, by "intentionally and without justification . . . threatening unsupported legal actions against St. Roch Market if it did not stop referencing Chloe, or displaying her name or image" and that this conduct has damaged Chloe. (*See* Cmpl. ¶¶ 98-100). These allegations more than suffice to state a plausible claim.

Defendants' conclusory assertion that Chloe's pleading is insufficient because it does not allege "wrongful means" fails. Chloe alleged that Defendants engaged in "wrongful means" by intentionally sending unsupported legal threats without any justification. Contrary to Defendants' suggestion, such unsupported legal threat letters may support a tortious interference claim. *See, e.g.*, *Hofmann v. Dist. Council 37*, 2004 WL 1936242, 2004 U.S. Dist. LEXIS 17375, at *13-14 (S.D.N.Y. Aug. 31, 2004) (noting that "the definition of wrongful means under New York law includes . . . 'civil suits . . . and some degrees of economic pressure'" (quoting *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 (2d Cir. 1998))), *adopted*, 2006 WL 3476747, 2006 U.S. Dist. LEXIS

87143 (S.D.N.Y. Nov. 30, 2006).[16]

Defendants' assertion (without citation and based on extrinsic evidence) that Chloe has not suffered damages because her food stall remains open likewise lacks merit. Chloe has plausibly alleged harm to her relationship with St. Roch Market. *See, e.g.*, *Semple v. Eyeblaster, Inc.*, No. 08 Civ. 9004 (HB), 2009 WL 1457163, 2009 U.S. Dist. LEXIS 45349, at *31 (S.D.N.Y. May 26, 2009) (denying motion to dismiss tortious interference claim where the plaintiff alleged that its business "relationship [] suffered injury").[17] Put another way, her contract with St. Roch Market need not terminate to state a plausible claim for damages. As alleged, Chloe has suffered damages from Defendants' tortious conduct, which she will prove in this litigation and, if necessary, amend her complaint to add more detailed allegations of harm.

### D.   General Business Law Claims (Counts 9-10)

Although Chloe submits that her claims in Counts 9 and 10 state plausible claims, she withdraws those claims in an effort to streamline and simplify this litigation.

### E.   CKC Sales Has Stated a Copyright Infringement Claim (Count 14)

CKC Sales alleges that it is the owner, by assignment, of the registered copyrights to the cookbooks CHLOE'S KITCHEN, CHLOE'S VEGAN ITALIAN KITCHEN, and CHLOE'S VEGAN DESSERTS, as well as the individual recipes and photographs contained therein (collectively, the "Chloe Cookbooks"). (Cmpl. ¶¶ 189-90). CKC Sales also alleges that Defendants have infringed

---

[16] *See also Guzik v. Albright*, No. 16-CV-2257 (JPO), 2018 WL 4386084, 2018 U.S. Dist. LEXIS 157264, at *17-18 (S.D.N.Y. Sept. 14, 2018) (threat of litigation can constitute "improper means" where it is sent with "no belief in the merit of the litigation" or in "bad faith"); *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1238-40 (S.D. Fla. 2015) (denying motion to dismiss tortious interference claim and finding that even if defendants had privilege to interfere to protect economic interests they may be liable if interference was in bad faith); *Hamilton v. SunTrust Mortg., Inc.*, 6 F. Supp. 3d 1312 (S.D. Fla. 2014) (same); *Canadian Steel, Inc. v. HFP Capital Mkts., LLC*, No. 11-23650-CIV, 2004 WL 1936242, 2012 U.S. Dist. LEXIS 84441, at *24-26 (S.D. Fla. Jun. 19, 2012) (denying motion to dismiss tortious interference with business relationship claim, finding that defendants' intentions were questions of fact).

[17] *See also GS Plasticos Limitada v. Bureau Veritas*, No. 650242/09, 2012 WL 6060991, 2012 N.Y. Misc. LEXIS 5452, at *8, (N.Y. Sup. Ct. N.Y. Cty. Nov. 8, 2012) (suggesting that "harm to [a] business relationship" and "consequential damages resulting from harm to [] reputation" are sufficient to state a tortious interference claim).

its copyrights by publishing identical, and nearly identical, recipes and photographs from the Chloe Cookbooks on their website and social media accounts. (*Id.* ¶¶ 191-93). These allegations alone are sufficient to state a claim for copyright infringement. *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (to establish copyright infringement "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original").

None of Defendants' three arguments, which challenge CKC Sales' ownership of these copyrights, warrants dismissal. At this stage, the Court must assume CKC Sales' allegations with respect to ownership to be true. *See, e.g.*, *McCarthy v. Stollman*, No. 06 Civ. 2613 (DAB) (DF), 2009 U.S. Dist. LEXIS 133179, at *14 (S.D.N.Y. Feb. 26, 2009) (denying motion to dismiss copyright infringement claim where defendant argued, *inter alia*, it owned copyright at issue because "disputed issues of fact are not appropriately decided at the dismissal stage"), *adopted*, 2009 WL 1159197, 2009 U.S. Dist. LEXIS 36525 (S.D.N.Y. Apr. 29, 2009). Defendants' arguments ignore this elementary standard.

First, the Court is not bound to accept Defendants' outrageous theory (which is based on a series of unsupported assertions outside the pleadings) that *every single recipe* Chloe ever created in her life before executing the Operating Agreement (including those in the Chloe Cookbooks) is owned by BCHG. Not only does this argument strain credulity, it is contrary to the provisions of the Operating Agreement on which Defendants rely. Although Exhibit E of the Operating Agreement—which purports to list the "CC Existing Recipes that do not get modified into Company Recipes" owned by BCHG—is blank, "CC Existing Recipes" does not cover every single recipe Chloe ever created before that point. (Operating Agreement at 4, Ex. E). Rather, the parties limited the definition of "CC Existing Recipes" only to "those recipes that . . . *are the basis*

18

*for any Company Modified Recipes*"—or put another way, Plaintiffs' recipes "that have been []

modified . . . *and used in connection with the Business*." (Operating Agreement at 4-5 (emphases

added)). Thus, even accepting Defendants' theory as true, which the Court should not do at this

stage, only those of Plaintiffs' recipes that were *modified and used in connection with the "by*

*Chloe" restaurants* would meet this limited definition.[18] The Court should deny Defendants'

motion because the question of whether even a single recipe in the Chloe Cookbooks falls into this

category is fact-intensive and outside the scope of the pleadings.

Next, Defendants' contention that CKC Sales did not record copyright registrations in the

Chloe Cookbooks also does not warrant dismissal. CKC Sales alleged that it owns the copyrights

in the Chloe Cookbooks (*see* Compl. ¶¶ 15, 189), and courts require nothing more at this stage.

*See, e.g.*, *Lee v. Karaoke City*, No. 1:18-cv-03895 (PAE) (SDA), 2019 WL 2451430, 2019 U.S.

Dist. LEXIS 68883, at *8-11 (S.D.N.Y. April 22, 2019) (holding that alleging valid assignment is

sufficient, and rejecting contention that authenticated, valid assignment of copyright ownership is

required).[19]

Finally, Defendants' contention that the Chloe Cookbooks are not copyrightable is wrong.

First, because they are each registered with the Register of Copyrights (Cmpl. ¶ 189), there is a

statutory presumption that the copyrights are valid. *See* 17 U.S.C. § 410(c); *see also Fonar Corp.*

*v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) ("A certificate of copyright registration is prima

---

[18] The arbitration award is not to the contrary and, in fact, tracks this distinction. (*See* Final Arbitration Award at 11 (observing only that "[Chloe] and [Chef Chloe LLC] agreed that 'CC Existing Recipes' that were 'modified' and used in the Business, become the property of [BCHG].")).

[19] Indeed, Defendants' unsupported assertion that the Copyright Office has no record of the assignment is meaningless because *the Copyright Office does not require the recording of a copyright transfer*. *See, e.g.*, 17 U.S.C. § 205(a) ("[a]ny transfer of copyright ownership or other document pertaining to a copyright *may* be recorded in the Copyright Office" (emphasis added)). *See also* U.S. Copyright Office, Circular No. 12, "Recordation of Transfers and Other Documents," 1 (2016), https://www.copyright.gov/circs/circ12.pdf ("Recording a transfer of copyright ownership or other document pertaining to a copyright with the Copyright Office under section 205 *is voluntary*" (emphasis added)).

facie evidence that the copyright is valid."). Second, the Chloe Cookbooks are each an original literary work that qualifies for copyright protection. *See* 17 U.S.C. § 101.

None of Defendants' case law is to the contrary. Although courts have found some simple recipes that contain mere lists of ingredients and instructions not protected by copyright (like a recipe for a chicken sandwich in *Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31 (1st Cir. 2015)), the recipes within the Chloe Cookbooks contain original expressive elements, such as Chloe's commentary (*see, e.g.,* Cmpl. ¶ 192(a)), creative hints (*see, e.g., id.* ¶ 192(e)), and photographs (*see, e.g., id.* ¶ 191) that render them "sufficiently expressive to exceed the boundaries of mere fact" and render them copyrightable. *Barbour v. Head*, 178 F. Supp. 2d 758, 764 (S.D. Tex. 2001) (denying motion to dismiss copyright infringement claim where there existed a genuine issue of material fact as to whether individual recipes were copyrightable).[20] These vegan recipes are also unique, artistic, and—above all—original, and thus protected by copyright by themselves. Finally, at a minimum, the issue of whether the Chloe Cookbooks are copyrightable presents a question of fact that cannot be resolved at this stage. *See, e.g.*, *Barbour*, 178 F. Supp. 2d at 764.[21]

---

[20] *See also* U.S. Copyright Office, Circular No. 33, "Works Not Protected by Copyright," 2 (2017), https://www.copyright.gov/circs/circ33.pdf ("a recipe that creatively explains or depicts how or why to perform a particular activity may be copyrightable"); U.S. Copyright Office, "What Does Copyright Protect?," https://www.copyright.gov/help/faq/faq-protect.html (last visited June 28, 2019) ("where a recipe or formula is accompanied by substantial literary expression in the form of an explanation or directions … there may be a basis for copyright protection"); *cf. Publ'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 481 (7th Cir. 1996) ("We do not express any opinion whether recipes are or are not *per se* amenable to copyright protection, for it would be inappropriate to do so.").

[21] Notwithstanding Defendants' contrary assertion, Plaintiffs do not contend in their motion to dismiss certain of BCHG's counterclaims that the Chloe Cookbooks are not copyrightable. Rather, Plaintiffs argue that BCHG's claim for breach of the Operating Agreement is not facially plausible because the Chloe Cookbooks, including the recipes within, were published years ago and, thus, are "publicly available information" (not "Confidential Information"). *See* Dkt. No. 100 at 14; Dkt. No. 94 ¶¶ 167-97. Making a copyrightable work public does not destroy its copyright protection. *See* 17 U.S.C. § 101 *et seq.*

F.     **Chloe and CC Hospitality Have Stated Claims for Cancellation of U.S. Registration No. 4,833,607 (the "by CHLOE mark") (Counts 17-18)**

The Lanham Act permits cancellation of the registration of a mark on the principal register by anyone "who believes that he is or will be damaged … by the registration." 15 U.S.C. § 1064. The party seeking to cancel the registration of a mark must prove two elements: "(1) that it has standing; and (2) that there are valid grounds for canceling the registration." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). Chloe and CC Hospitality have pled both elements for both counts.

With respect to Count 17, Chloe and CC Hospitality sufficiently plead a section 2(a) (15 U.S.C. § 1052(a)) claim, alleging that: (i) the by CHLOE mark is the same as, or a close approximation of, the name or identity of Chloe; (ii) the by CHLOE mark is recognized as such, in that it points uniquely and unmistakably to Chloe; (iii) Chloe is no longer connected with BCHG's business activities under the by CHLOE mark; and (iv) the fame or reputation of Chloe is such that, when the by CHLOE mark is used with BCHG's goods and services, a connection with Chloe is presumed. *See* Cmpl. ¶¶ 224-33; *Petroleos Mexicanos v. Intermix S.A.*, 97 U.S.P.Q.2D (BNA) 1403, 1405-06 (T.T.A.B. 2010) (finding a section 2(a) claim sufficiently pled to survive a motion to dismiss).

Although BCHG now asserts (by exclusively citing allegations in Defendants' answer) that the by CHLOE mark does *not* suggest a connection with Chloe, these mere denials of Chloe and CC Hospitality's allegations are insufficient to warrant dismissal at this stage. *See Hidden Values, Inc. v. Wade*, No. 3:11-CV-1917-L, 2012 WL 1836087, 2012 U.S. Dist. LEXIS 70474, at *35-36 (N.D. Tex. May 18, 2012) (dismissal of cancellation claim would be improper where pleadings alleged ground for cancellation and provided a short summary of the factual basis); *Pinpoint Publs., LLC v. Susco Media, Inc.*, No. 15cv301 AJB (NLS), 2015 WL 12670509, 2015 U.S. Dist.

LEXIS 193444, at *12-13 (S.D. Cal. May 28, 2015) (determination of whether a mark falsely suggests a connection to an institution is inappropriate at the pleading stage).[22]

With respect to Count 18, Chloe and CC Hospitality have adequately alleged a section 2(c) (15 U.S.C. § 1052(c)) claim that the record at the PTO does not include the written consent of Chloe. (Cmpl. ¶ 240). Indeed, Chloe's alleged consent to register was not disclosed in BCHG's trademark application or printed in the *Official Gazette* or on the registration certificate. *See* Trademark Manual of Examining Procedures ("TMEP") §§ 813.01(a); 1206.

BCHG's sole contrary argument—that Chloe consented to its registration of U.S. Registration No. 4,833,607 (the by CHLOE mark) pursuant to section 4.4(a) of the Operating Agreement—does not prove otherwise. First, as this Court has expressly found, Chloe *is not a party to the Operating Agreement*, and thus, it cannot serve as a basis of her consent. (Preliminary Injunction Order at 12-13; *see also* Operating Agreement §§ 4.4, 4.4(a) (stating only that "*the parties* agree" that BCHG "shall own . . . the By Chloe Mark") (emphasis added)). But even if Chloe was a party to that agreement, Defendants' argument would still fail. As set forth above, the "By Chloe Mark" is limited by the plain text of the Operating Agreement to vegan fast casual restaurants (*see supra* § II.A.2). Yet BCHG registered the by CHLOE mark in connection with the much broader category of "Restaurant and catering services."[23] (Cmpl. ¶ 236). Thus, even if

---

[22] In any event, BCHG's current assertions are directly contradicted by previous statements by BCHG's counsel that: Chloe "almost immediately became well known as 'Chef Chloe' or just 'Chloe'" in 2010 (Cmpl. ¶ 54); that "CHLOE" was featured on Chloe's Cookbooks starting in 2012 (*id.*); that BCHG intended to use the name "by Chloe" so that their restaurant could be "extensively promoted" as associated with Chloe (*id.*); and that the by CHLOE mark indicates that "Chloe" is "responsible for the services to follow" (*id.* ¶ 231).

[23] For the avoidance of doubt, more specific registration categories were available to BCHG. *See* U.S. Trademark Registration No. 5,696,290 for "Vegan and plant-based catering services; food preparation services featuring fresh, properly proportioned, vegan and plant-based meals" in Class 043, and U.S. Trademark Registration No. 5,723,787 for "Restaurant services featuring vegan food; Restaurant services, namely, providing vegan food and beverages for consumption on and off the premises; Restaurant services, including sit-down service of vegan food and take-out restaurant services featuring vegan food" in Class 043. (*See* Arenz Decl. Exs. 9-10).

section 4.4(a) could be construed as constituting consent from Chloe (which it cannot), it does not constitute consent to such a broad registration.

Finally, BCHG's failure to record Chloe's purported consent (Cmpl. ¶ 240) is an independent basis to cancel the by CHLOE mark. *Cf. In re O'Neill Beverage Co., Ltd.*, Serial No. 85152684, 2013 TTAB LEXIS 454, *36-37 (T.T.A.B. Aug. 15, 2013) (refusal to register affirmed because "[t]he fact that an applicant may be the owner of the subject mark comprising the name of a particular living individual does not relieve the applicant of the statutory obligation to supply the named individual's written consent to registration."); *Krause v. Krause Publ'ns Inc.*, 76 U.S.P.Q.2d 1904, 1913 (T.T.A.B. 2005) (found no written, or implied, consent to register). Perhaps recognizing that the Operating Agreement did not constitute Chloe's consent, BCHG did not even attach that document to its trademark application. (*See* Arenz Decl. Ex. 11).

### G. For Similar Reasons, Chloe and CC Hospitality Have also Stated Claims for Federal Unfair Competition, Trademark Infringement, and Cyberpiracy (Counts 8, 15-16)

Defendants primarily argue that these claims should be dismissed because Chloe purportedly consented to BCHG's registration of the by CHLOE mark pursuant to section 4.4(a) of the Operating Agreement. However, for the reasons noted above, this argument fails because (i) Chloe is not a party to the Operating Agreement; (ii) the terms of section 4.4(a) expressly subject BCHG's rights, if any, to use and register the "By Chloe Mark" to the "terms and conditions . . . of the NFL License Agreement" (Operating Agreement § 4.4(a)); and, (iii) Chloe has terminated the license contained in the NFL Agreement (Cmpl. ¶ 66).

Moreover, the registration of the by CHLOE mark for "Restaurant and catering services," (Cmpl. ¶ 82), far exceeds any rights BCHG has to the "By Chloe Mark" (which, if any, are limited to vegan fast casual restaurants). Indeed, Chloe has never consented to BCHG's use of the by CHLOE mark (or similar marks) for retail packaged goods, cannabidiol (CBD) products, pet food,

23

non-vegan goods, clothing and accessories, or other retail products. (*See* Cmpl. ¶¶ 197-205). These goods and services are much broader, if not completely different, than those identified in the Operating Agreement. In fact, BCHG's use of the mark and similar marks infringes Chloe's name and CC Hospitality's CHEF CHLOE Mark. *See Hard Rock Cafe Int'l (USA) v. Morton*, No. 97 Civ. 9483 (RPP), 1999 WL 350848, 1999 U.S. Dist. LEXIS 8340, at *93 (S.D.N.Y. June 2, 1999) ("weighing in favor of a finding of likelihood of confusion is the fact that infringement occurred as a result of conduct by a licensee beyond the scope of a license agreement"); J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair Competition*, § 25:30 (4th ed. 2000) ("McCarthy") ("Any sales of goods or services under the mark which are outside the area of consent granted in the license are regarded as infringements of the mark.").[24]

Defendants' section 33(b)(6) prior use and registration defense (15 U.SC. § 1115(b)(6)) to CC Hospitality's claim for federal trademark infringement of its CHEF CHLOE Mark (Reg. No. 5,269,199) (Count 15) is also not applicable. The affirmative defenses listed in 15 U.SC. § 1115(b)(6) are "merely … [statutory] exceptions, which if proven, do no more than destroy the conclusive evidentiary status of the [incontestable] registration." 6 McCarthy § 32:153. Indeed, such defenses "merely reduce[e] the status of a conclusive presumption down to that of prima facie, with the [accused infringer] allowed to raise common law defenses." *Id.* at § 32:149 (listing the nine "affirmative defenses" to incontestability). CC Hospitality's CHEF CHLOE Mark, however, was registered less than five years ago. Thus, that mark is not incontestable, and for that reason, Defendants cannot invoke this defense.[25]

---

[24] For these reasons, BCHG's unsupported protestation that Chloe has "acquiesced to BCHG's continued use of its By Chloe Mark" (Dkt. 105 at 21) has no merit.

[25] Even if the Court were to convert Defendants' inapplicable statutory defense to a common law defense, such a defense would *still* not suffice. Chloe's own fame arose in 2010 and use of "CHLOE" originated in 2012—well *prior* to Defendants' use and registration of the by CHLOE Mark. (*See* Cmpl. ¶ 54). Although BCHG registered the by CHLOE mark before the CHEF CHLOE Mark, the by CHLOE mark is subject to cancellation on two different

Finally, Defendants' arguments about Count 16 for cyberpiracy fare no better. To start, Defendants' arguments that Chloe and CC Hospitality did not "object[] in any way to the registration of any of these domain names" as Defendants argue (Dkt. 105 at 21 n.8) is plainly a matter of fact that the Court should not resolve on the pleadings. Even so, and even if Defendants were correct, they would remain liable under 15 U.S.C. § 1125(d), as they have later used the domain names eatbychloe.com, sweetsbychloe.com, and chillbychloe.com with a bad faith intent to profit from Chloe's name and CC Hospitality's CHEF CHLOE Mark by diverting business from Plaintiffs. *See* Cmpl. ¶¶ 208-19; 15 U.S.C. §§ 1125(d)(1)(B)(i)(I) and (II); *see, e.g.*, *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213 (C.D. Cal. 2010) (affirming cyberpiracy verdict where domain name was put up innocently and used properly for years by a then-employee, who subsequently used the domain name post-employment with a bad faith intent to profit from the protected mark by holding the domain name for ransom).

### H.   For the Same Reason, Chloe Has Stated Claims for Common Law Unfair Competition and Trademark Infringement (Counts 11, 13)

Chloe's common law unfair competition and trademark infringement claims are sufficiently pled for the same reason the Lanham Act claims are, as outlined in § II.G *supra*, and because Chloe has also pled the requisite bad faith element for her common law unfair competition claim (Cmpl. ¶¶ 48-52, 57-60, 174).[26] *See Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) ("the elements necessary to prevail on causes of action for

---

grounds. *See supra* § II.F. Moreover, BCHG registered the by CHLOE mark for restaurant and catering services, which is *different than* the goods and services covered by the CHEF CHLOE Mark (a website in the field of recipes and cooking). (Cmpl. ¶ 221). Accordingly, Defendants' section 33(b)(6) defense does not even suffice as a common law defense, let alone a statutory defense.

[26] To the extent Defendants dispute that Chloe sufficiently pleads bad faith, this element is "very fact intensive." *See Michele Pommier Models v. Men Women NY Model Mgmt.*, No. 97 Civ. 6837 (SAS), 1997 WL 724575, 1997 U.S. Dist. LEXIS 18294, at *11-12 (S.D.N.Y. Nov. 18, 1997) (the claim for "unfair competition requires a complex factual analysis of a variety of facts" (citations and quotations omitted)). Defendants' motion to dismiss Chloe's common law unfair competition claim should therefore be denied.

trademark infringement and unfair competition under New York common law 'mirror the Lanham Act claims,'" but "a viable common law claim for unfair competition requires an additional showing of bad faith" (citation omitted)); *see, e.g.*, *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 370-71 (S.D.N.Y. 2014) (denying motion to dismiss where Lanham Act and corresponding common law claims were sufficiently pled). Thus, the Court should not dismiss Counts 11 and 13.

## I.    Chloe Has Adequately Pled Unjust Enrichment (Count 12)

Defendants' primary argument, that the existence of a contractual relationship between the parties precludes an unjust enrichment claim, does not warrant dismissal.[27] Rather, a quasi-contract claim may be utilized to prevent unjust enrichment regarding disputes between contracting parties that are related to, but outside the scope of, the contract. *See Hotel Aquarius B.V. v. PRT Corp.*, No. 92 Civ. 4498 (MBM), 1992 WL 391264, 1992 U.S. Dist. LEXIS 19603, at *14 (S.D.N.Y. Dec. 22, 1992) (collecting cases and denying motion to dismiss where plaintiff alleged unjust enrichment for services and benefits conferred outside the express contract). Here, there is no contract precluding Chloe's recovery for unjust enrichment against Defendants where: (i) Chloe is not a party to the Operating Agreement (Preliminary Injunction Order at 12-13); (ii) Chloe has terminated the license contained in the NFL Agreement (Cmpl. ¶ 66); and (iii) Defendants' enrichment at Chloe's expense is outside the terms of the NFL Agreement (*see, e.g.*, Cmpl. ¶¶ 46-48 (use of Chloe's recipes); *id.* at ¶¶ 50, 57-60 (use of Chloe's name for packaged goods)).

Moreover, Chloe is permitted to plead her unjust enrichment claim in the alternative to her breach of contract claim (Count 1), especially where there is "a bona fide dispute" as to whether a

---

[27] Defendants' other argument in favor of dismissal, an overly technical assessment of which paragraphs are incorporated into this claim, also does not require dismissal. To the contrary, "*courts must consider the complaint in its entirety*, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added). Moreover, any such defect is easily curable on amendment.

relevant contract exists or covers the disputed issue. *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (plaintiff's unjust enrichment claim survived a motion to dismiss as an alternative to a breach of contract claim); *Net2Globe Int'l v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (same). Indeed, such alternative pleading is permissible under the liberal alternative pleading policy of the Federal Rules of Civil Procedure, and "[a] contrary holding would breach [Fed. R. Civ. P. Rules 8(d)(2) and (3)]." *See Little v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 617 (S.D.N.Y. 2016). Accordingly, for these reasons, Count 12 should not be dismissed.

### J.     Finally, Chloe Has Stated a Declaratory Judgment Claim (Count 3)

An actual controversy exists between the parties with respect to how Chloe may use her own name, both in connection with the sale of packaged food and beverages (Cmpl. ¶ 90) and as a chef, including the operation of her food stall *Chef Chloe and the Vegan Café* (*id.* ¶¶ 92-95) and her vegan pop-up "Supernatural."[28] Indeed, as detailed in the complaint, BCHG has engaged in a campaign to try to prevent Chloe *at every turn* from using her own name. (*Id.* ¶¶ 89-96; *see also* Supernatural Complaint ¶¶ 3-9). Accordingly, Chloe and CC Hospitality have stated a claim for declaratory judgment. *See, e.g.*, *Threadstone Advisors, LLC v. LXR Produits De Luxe Int'l, Inc.*, No. 17 Civ. 9255 (PGG), 2019 U.S. Dist. LEXIS 53283, at *21 n.6 (S.D.N.Y. Mar. 26, 2019) ("'[A] court must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" (quoting *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992)).

---

[28] Chloe's allegations with respect to her vegan pop-up, "Supernatural," are detailed in her complaint in a separate action that has been consolidated with this case. (*See* No. 19-cv-2325, Dkt. 1 ("Supernatural Complaint")).

None of Defendants arguments prove otherwise. It is neither the case, as Defendants contend, that "Chloe expressly agreed" (Dkt. 105 at 22) to section 4.4(d) of the Operating Agreement, nor that this section sets forth restrictions upon Chloe. Rather, section 4.4(d) states:

> *The parties agree* that [Chloe] . . . can use any "Chloe" designation other than the By Chloe Word Mark or By Chloe Design Mark in any way except . . . in connection with [vegan fast casual] Restaurants.

(Operating Agreement § 4.4(d) (emphasis added)). As both this Court and the arbitrator found, Chloe is not a party to the Operating Agreement. (Preliminary Injunction Order at 12-13; Final Arbitration Award at 33). Thus, Chloe did not "expressly agree" to this section.

Moreover, Defendants' assertion that the "any 'Chloe' designation" phrase in section 4.4(d) prevents Chloe from using "her first name in connection with any fast casual vegan restaurant" (Dkt. 105 at 23) is *wholly inconsistent* with the NFL Agreement (*i.e.*, the only agreement to which Chloe is a party).[29] The (now-terminated) license in that agreement provides:

> Notwithstanding anything contained in . . . the Operating Agreement to the contrary except in connection with the By Chloe Mark, and for the avoidance of doubt . . . *[Chloe] shall retain the right to use the NFL Rights in any way whatsoever* except in connection with the By Chloe Mark . . . .

(NFL Agreement § 1(b) (emphasis added); *see also id.* at 1 (defining "NFL Rights" as, *inter alia*, Chloe's name)). Thus, under the plain terms of the NFL Agreement, Chloe is *not* prohibited from using her name for vegan fast causal restaurants. Indeed, because section 1 of the NFL agreement did not survive Chloe's termination of that agreement, Chloe is no longer restricted *in any way* from using her NFL Rights. (*See id.* § 9).

Finally, Defendants' assertion that Chloe's use of her first name in connection with projects

---

[29] The term "'Chloe' designation" is not defined anywhere in the Operating Agreement or the NFL Agreement, notwithstanding pages of other definitions.

other than vegan fast casual restaurants—*i.e.,* retail packaged goods—is necessarily "confusingly similar" to the "By Chloe Mark" also does not demonstrate that this claim fails. Rather, as set forth above, if BCHG still has any rights to the "By Chloe Mark" following termination of the NFL Agreement, the plain text of the Operating Agreement limits the "By Chloe Mark" to only vegan fast casual restaurants (*see supra* § II.A.2). Accordingly, because an actual controversy exists between the parties with respect to how Chloe may use her own name, Chloe and CC Hospitality have stated a declaratory judgment claim.

### III.   In the Event the Court Dismisses Any of Plaintiffs' Claims, Leave to Amend Should be Granted

For the foregoing reasons, Defendants' "cross motion" to dismiss should be denied. But if the Court is inclined to dismiss any of Plaintiffs' claims, they respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to amend would be particularly appropriate here because this is the first time Defendants have moved to dismiss these claims pursuant to Rule 12(b)(6) and/or 12(c). *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 548 (S.D.N.Y. 2008) ("[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead" (citation and quotation omitted)).

### PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS BCHG'S FIRST AMENDED COUNTERCLAIMS 1–4 AND 8 (IN PART) AND 7 (IN ITS ENTIRETY)

BCHG's opposition to Plaintiffs' motion to dismiss confirms the Court should narrow the counterclaims in this case. First, BCHG's trademark and unfair competition claims fail because the Operating Agreement limits any rights BCHG may have in the "By Chloe Mark," and expressly identifies only three prohibited uses of the mark by Chloe—none of which BCHG has alleged

Chloe has done.[30] Second, BCHG concedes it has no valid common law trademark claim with respect to *Chef Chloe and the Vegan Café*. Third, BCHG offers no challenge to established New York law that courts will not enforce confidentiality provisions covering public information. Finally, BCHG should not be allowed to re-litigate issues it lost or failed to raise in the arbitration.

## I.   BCHG's Opposition Failed to Identify Any Plausible Trademark or Unfair Competition Claim.

BCHG ignores the fundamental issue in front of this Court: whether it can plausibly assert trademark or unfair competition claims based on Chloe's use of the phrases "Chef Chloe and the Vegan Café," "Chef Chloe," and "Chloe's Delicious." Rather than focus on this issue, BCHG meanders through the Operating Agreement arguing about its views on purported contractual rights and obligations. This digression misses the point. BCHG does not dispute that Second Circuit law allows parties to limit trademark rights involving a person's name. Here, the Operating Agreement: (i) expressly limits any rights BCHG has in the "By Chloe Mark," and (ii) expressly identifies what uses of the "By Chloe Mark" by Chloe it purports to prohibit. The plain language of the Operating Agreement establishes these conclusions without dispute, and thus precludes BCHG from asserting plausible trademark and unfair competition claims against Chloe now.

### A.   The Operating Agreement Expressly Limits Any of BCHG's Rights in the "By Chloe Mark."

The plain and unambiguous language of the Operating Agreement rebuts BCHG's position that it has unlimited ownership of the "By Chloe Mark." To the contrary, Section 4.4(a) states that any ownership right is "subject to the terms and conditions of this Operating Agreement and the NFL License Agreement." Put another way, the parties agreed that any right BCHG has in the "By

---

[30] As discussed above, and as this Court has already found, Chloe is not a party to, and thus cannot be bound by, the Operating Agreement. But even assuming, *arguendo*, that she was, BCHG's claims would fail for the reasons set forth in this section.

Chloe Mark" is conditioned and limited under the Operating Agreement and NFL Agreement. BCHG provided no response about this unambiguous limitation.

Section 4.4(b) is one example of a term limiting any of BCHG's rights. It provides: "The Company's *rights* to the By Chloe Word mark *is limited* solely to the exact lettering of the By Chloe Word Mark and not to any similar or derivative mark[.]" (Operating Agreement § 4.4(b) (emphasis added)). An owner's right in a trademark is its *exclusive* right to use that mark. *See, e.g.*, *Scandinavia Belting Co. v. Asbestos & Rubber Works of America*, 257 F. 937, 955 (2d Cir. 1919), *cert. denied*, 250 U.S. 644 (1919). This right of exclusivity both: (i) allows the owner to use the mark, and (ii) excludes others from using the mark. Thus, by definition, a limitation on an owner's "rights," such as that contained in § 4.4(b), affects both how an owner may use the mark, *and* how he may prevent others from using the mark. BCHG's concession that it has narrow rights to use the "By Chloe Word Mark," (Dkt. 103 at 11), while maintaining broad rights to exclude others (including Chloe), reveals the flawed and inconsistent nature of its position.

**B.    Chloe's Alleged Infringement Does Not Fall Within the Prohibited Uses of the "By Chloe Mark" in the Operating Agreement.**

As set forth in the opening brief on Plaintiffs' motion to dismiss, Section 4.4(c) of the Operating Agreement explicitly lists three—and only three—purported prohibitions on Chloe's actions vis-à-vis the "By Chloe Mark." (Dkt. 100 at 9-13). BCHG has not alleged that any of the three phrases the use of which is challenged in Counterclaims 1-3 (*i.e.*, "Chef Chloe," "Chef Chloe and the Vegan Café," and "Chloe's Delicious") fall within any of these three prohibitions. This omission alone establishes that the Court should grant the motion to dismiss these counterclaims.

Section 4.4(c) would be meaningless if BCHG could broadly exclude Chloe from using names outside the three stated prohibitions. Under New York law, courts prefer to construe contracts to avoid rendering provisions meaningless or superfluous. *Galli v. Metz*, 973 F.2d 145,

149 (2d Cir. 1992). Here, if BCHG may exclude Chloe from using names more broadly than the three prohibited uses in Section 4.4(c), then 4.4(c) has no meaning. Such a conclusion violates established canons of construction, and does not meet the Second Circuit's requirements for a party to relinquish rights in her name.

BCHG does not address the plain language of Section 4.4(c). Rather, BCHG contends that it has unfettered discretion to take any action based on the last sentence: "Company and ESquared Hospitality may take any action it deems reasonably necessary to protect the By Chloe Mark if the Company or ESquared Hospitality determine in good faith that CC or CC Entity has violated this Section 4.4(c)." (Operating Agreement § 4.4(c)). But for Section 4.4(c) to be violated, and thus for BCHG to invoke the last sentence thereof, Chloe must use a name prohibited by one of the three categories. BCHG has not alleged that she has done so, and thus the last sentence is inapplicable.

BCHG also ignores Section 4.4(e). The plain language of Section 4.4(e) confirms the clear intent of the parties that not only would Chloe retain all rights to use her name, "Chloe," other than in the specific phrase "by CHLOE," but that Defendants would be required to refrain from interfering with any such use by Chloe. This section provides:

> In furtherance of the foregoing and except as permitted under Section 4.4(c), the Company and ESquared Hospitality on behalf of itself and its Permitted Transferees, hereby agrees that they will not oppose, petition to cancel, commence a legal action, or otherwise challenge, object to or interfere with CC or CC Entity's ownership, use (or authorized the use by others) or registration of any "Chloe" designation other than the By Chloe Mark.

(Operating Agreement § 4.4(e)). Thus, Defendants agreed not to challenge any use or registration by Chloe of "any 'Chloe' designation" other than the "By Chloe Mark." Again, this provision is meaningless under BCHG's interpretation that it can use the by CHLOE mark to prevent Chloe from using her first name, "Chloe," in a restaurant name.

Finally, BCHG's reliance on Section 4.4(d) in their opposition is misplaced, as that

provision is inconsistent with both the NFL Agreement—to which, unlike the Operating Agreement, Chloe is a party—and the Preliminary Injunction Order. In particular, Section 1(b) of the NFL Agreement provides that "[n]otwithstanding anything contained in . . . the Operating Agreement to the contrary except in connection with the By Chloe Mark, and for the avoidance of doubt, . . . *[Chloe] shall retain the right to use the NFL Rights in any way whatsoever except in connection with the By Chloe Mark . . . ."* (NFL Agreement § 1(b) (emphasis added)). Similarly, this Court held in the Preliminary Injunction Order that "[BCHG] received *limited rights* to use Coscarelli's name, face, and likeness; *Coscarelli retained the rest.*" Preliminary Injunction Order at 23 (emphasis added). To the extent there is an inconsistency between the Operating Agreement and the NFL Agreement regarding restrictions purportedly imposed on Chloe's right to use her own name, the NFL Agreement—*i.e.*, the *only* agreement to which Chloe is actually a party—must control.

***

Neither the plain language of the Operating Agreement nor the intent of the parties granted BCHG broad rights in any trademark to preclude Chloe from using her first name as a chef. The Operating Agreement limited any rights BCHG may have in the By Chloe Mark, and identified only three prohibitions on Chloe's use of that mark. BCHG's trademark and unfair competition claims—which are also unusually weak on the merits[31]—

---

[31] The PTO has already determined that no likelihood of confusion exists between "Chef Chloe" or "Chloe's Delicious" and "by CHLOE." With both Chloe marks, the PTO explained that "[t]he trademark examining attorney has searched the USPTO's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). TMEP § 704.02; *see* 15 U.S.C. § 1052(d)." *See* Arenz Decl. Exs.12-13. Put another way, the PTO determined that Chloe was entitled to marks for CHEF CHLOE and CHLOE'S DELICIOUS, despite the existence of BCHG's registration for by CHLOE. The PTO's determination is entitled to "great weight" on the issue of likelihood of confusion here. *Syntex Labs. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971) (holding USPTO's refusal to register mark is entitled to "great weight"); *see also Joules Ltd. v. Macy's Merch. Grp. Inc.*, No. 15-CV-3645 (KMW), 2016 WL 4094913, 2016 U.S. Dist. LEXIS 101151, *at 34 n.4 (S.D.N.Y. Aug. 2, 2017) (collecting cases) (courts "accord weight to the initial conclusions of the USPTO, in light of

do not survive a threshold plausibility analysis.

II.     **BCHG Concedes that the Court Should Dismiss Counterclaim 4 for Common Law Trademark Infringement and Unfair Competition as it Relates to *Chef Chloe and the Vegan Café*.**

BCHG lacked any basis to allege common law trademark infringement and unfair competition in Counterclaim 4 with respect to *Chef Chloe and the Vegan Café*. Indeed, BCHG offers no response in its opposition, and even concedes that the Court should dismiss this counterclaim as it relates to *Chef Chloe and the Vegan Café*. (Dkt. 103 at 3 n.3). Thus, Chloe asks the Court to dismiss Counterclaim 4 as it relates to *Chef Chloe and the Vegan Café* with prejudice.

III.    **The Court Should Dismiss Counterclaim 7 Because BCHG Offered No Legal Support for its Claim that New York Law Permits Enforcement of a Confidentiality Provision that Covers Public Information.**

In her opening brief, Chloe set forth established case law that New York does not enforce confidentiality provisions that cover public information. (Dkt. 100 at 13). BCHG responded to none of it, and offered no case to the contrary. (*See id.*) Nor did BCHG even dispute that many recipes it contends were misappropriated confidential information were publicly available long before "by CHLOE" ever even existed. (*See id.*) Thus, the Court should dismiss BCHG's claim because the confidentiality provision is unenforceable.

Rather than responding to the undisputed facts and clear case law, BCHG argued that Counterclaim 7 should survive because Chloe argued that her published recipes are protected by copyright. (*See* Dkt. 103 at 20). This argument is a non-sequitur. A copyrighted work does not lose its protection when it becomes publicly available. *See* 17 U.S.C. §§ 101 *et seq.* Indeed, copyright law would not protect newspapers, books, and television shows, among many other artistic works, if that were the case. But whether copyright law covers a particular work does not affect whether

---

the expertise of the trademark examiners, which entitle[s] their views to respectful consideration" (internal quotation marks omitted)).

a contract prohibiting the disclosure of confidential information may cover public information.

**IV.    BCHG Identified no Case Law, and Challenged no Element of Chloe's *Res Judicata* Analysis, in Opposition to Chloe's Motion to Dismiss Counterclaim 8 In Part.**

Chloe detailed why *res judicata* bars the portion of BCHG's Counterclaim 8 that seeks damages for issues disputed during the earlier arbitration. BCHG's opposition relied on no case law—let alone a single case that disputes Chloe's application of *res judicata* here. BCHG's opposition similarly failed to challenge even a single element of the *res judicata* analysis. Indeed, the record is undisputed that Defendants sought their legal fees and costs in the arbitration, along with monetary damages for their dispute about the Belvedere vodka endorsement, and the arbitrator denied that relief. The Court should grant Chloe's motion to dismiss this portion of Counterclaim 8 to preclude BCHG from re-litigating that same issue now.

Neither of BCHG's arguments in opposition affects the *res judicata* analysis. First, when BCHG first "demanded" these particular fees is irrelevant. All that matters is that BCHG sought all fees and costs incurred in the arbitration; that the fees it now seeks were incurred in the arbitration; and that the arbitrator denied its request for fees. Second, whether Chloe had to participate in the earlier arbitration does not affect the undisputed fact that she *did* participate in the arbitration, and that the arbitrator denied relief that BCHG now seeks against her.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendants' "cross motion" to dismiss claims 1, 3-4 and 7-18 should be denied and Plaintiffs' motion to dismiss BCHG's first amended counterclaims 1-4 and 8 (in part) and 7 (in its entirety) should be granted.

Dated: July 2, 2019                    Respectfully submitted,


By: /s/ Ronald J. Schutz
     **ROBINS KAPLAN LLP**
     Ronald J. Schutz
     Lisa M. Coyle
     Frederick A. Braunstein
     Reena Jain
     Alexander D. Newman
     399 Park Avenue, Suite 3600
     New York, NY 10022
     (212) 980-7400

     Patrick M. Arenz *(pro hac vice)*
     800 LaSalle Ave, Suite 2800
     Minneapolis, MN 55402
     (612) 349-8591

     *Attorneys for Plaintiffs*
     *Chloe Coscarelli, Chef Chloe LLC,*
     *CC Hospitality Holdings LLC, and*
     *CKC Sales, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, Ronald J. Schutz, certify that on the 2nd day of July, 2019, I caused a true and correct copy of the foregoing PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' "CROSS MOTION" TO DISMISS CLAIMS 1, 3-4 AND 7-18 AND REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO DISMISS BCHG'S FIRST AMENDED COUNTERCLAIMS 1–4 AND 8 (IN PART) AND 7 (IN ITS ENTIRETY) to be served via this Court's Electronic Case Filing system upon counsel for all parties.

Dated:  July 2, 2019                    Respectfully submitted,


                                        /s/ Ronald J. Schutz_____
                                        Ronald J. Schutz