UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                              :

CHLOE COSCARELLI, CHEF CHLOE LLC, CC      :
HOSPITALITY HOLDINGS LLC, and CKC SALES,  :
LLC,                               :

                       Plaintiffs,        :                18-CV-5943 (JMF)

                                :        <u>OPINION AND ORDER</u>

       -v-                        :

ESQUARED HOSPITALITY LLC and BC         :
HOSPITALITY GROUP LLC, *formerly known as* CCSW :
LLC,                               :

                      Defendants.     :

---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       This decision addresses the most recent developments in a longstanding struggle between

celebrity vegan chef Chloe Coscarelli and father-and-daughter restauranteurs James Haber and

Samantha Wasser over control of the "by Chloe" brand.  In 2014, Coscarelli, Haber, and Wasser

established a joint venture called CCSW LLC ("CCSW") to develop what became the "by

Chloe" chain of vegan, fast casual restaurants.  *See* ECF No. 172-1 ("Partial Final Award"), at 7.

In 2017, Coscarelli and three LLCs of which she is the sole owner or member (collectively,

"Plaintiffs") were terminated from CCSW for cause.  *Id.* at 14-15.  Defendant ESquared

Hospitality LLC ("ESquared"), which was controlled at various times by Haber and Wasser, *see*

*id.* at 18-21, immediately repurchased Plaintiffs' membership interest in CCSW at no cost, *see*

*id.* at 15.  Plaintiffs challenge the validity of the repurchase.  *See* ECF No. 76 ("First Am.

Compl."), ¶¶ 101-24.  The parties' jointly selected arbitrator, the Honorable Faith S. Hochberg,

former United States District Judge for the District of New Jersey, agreed with Plaintiffs that the

repurchase violated the CCSW Operating Agreement.  *See* ECF No. 172-1 ("Partial Final

Award"), at 31-60; ECF No. 175-2.  For relief, Judge Hochberg reinstated Plaintiffs' 50%

Membership Interest in CCSW, now called BC Hospitality Group LLC ("BCHG").  *See* Partial

Final Award 87; First Am. Compl. ¶ 16.  Judge Hochberg also awarded Plaintiffs attorney's fees

and costs pursuant to a contractual cost-shifting provision.  *See* ECF No. 212-1 ("Partial Fee

Award") (citing ECF No. 175-1 ("Operating Agreement"), § 20.7); ECF No. 212-2 ("Complete

Final Award").

Now pending are Plaintiffs' motions to confirm the two arbitration awards (the

"Arbitration Awards" or "Awards"), ECF Nos. 173, 226, and Defendants' cross-motions to

vacate them, ECF Nos. 185, 208.  Complicating matters, on December 14, 2020, while these

motions were pending, BCHG filed a bankruptcy petition in the United States Bankruptcy Court

for the District of Delaware, *see* ECF No. 245, resulting in an automatic stay of the proceedings

against BCHG, *see* 11 U.S.C. § 362(a)(1).  The Court ordered the parties to submit supplemental

briefing and held a conference to explore the effect, if any, of the automatic bankruptcy stay on

the Court's power to grant relief against the non-bankrupt co-defendant, ESquared.  *See* ECF

Nos. 246-55.  Having considered the parties' arguments on that threshold issue and on the cross-

motions themselves, the Court reserves judgment on whether to confirm or vacate the remedy

portion of Judge Hochberg's Awards, but confirms the liability and fee portions of the Awards

now.

## BACKGROUND

The essential facts, which are undisputed, are drawn from the Arbitration Awards under

review.  Coscarelli is a vegan chef and cookbook author who became famous after winning the

Food Network show "Cupcake Wars" in 2010.  Partial Final Award 2, 7; *see also* First Am.

Compl. ¶ 2.  ESquared is a hospitality company founded by Haber.  Partial Final Award 2.  On

November 7, 2014, Coscarelli, Haber, and Wasser formed CCSW to develop the "by Chloe" restaurant chain. *Id.* at 7. The company was co-managed by Coscarelli and Wasser, *id.* at 9, and co-owned by ESquared and Chef Chloe, LLC ("Chef Chloe"), a limited liability company that is in turn wholly owned by Coscarelli, *id.* at 2, 9; *see also* First Am. Compl. ¶ 7. The first "by Chloe" restaurant opened on July 28, 2015, on Bleecker Street in New York, to positive reviews. ECF No. 188-1 ("2017 Arbitration Award"), at 12. In light of this early success, Coscarelli, Wasser, and Haber collectively decided to expand the "by Chloe" concept to additional locations in New York and other metropolitan areas. *Id.* Soon thereafter, however, the relationship between Coscarelli, on one hand, and Wasser and Haber, on the other, began to deteriorate and, in 2016, ESquared invoked the arbitration clause of the CCSW Operating Agreement, contending that Coscarelli had breached the agreement in several respects. Partial Final Award 13-14; *see* Operating Agreement § 20.19. On March 21, 2017, in an award that is not under review here, an arbitrator determined that Coscarelli had acted with gross negligence on two occasions and that she had misappropriated CCSW's intellectual property. 2017 Arbitration Award at 44-46. Based on these findings, Chef Chloe's membership interest in CCSW was terminated pursuant to Section 19.3(a) of the Operating Agreement, which provides that "[a] Service Member may be removed from [its] Position . . . for cause." *Id.* at 42, 46.

On March 22, 2017, the day after the 2017 Arbitration Award was issued, ESquared exercised its "Repurchase Right" pursuant to Section 19.5(a) of the Operating Agreement, which provides that, as "long as ESquared . . . owns more than twenty[-]five percent (25%) of the issued and outstanding Membership Interests or controls the vote of the Company . . . , then upon termination of [a] Service Member . . . by the Company for Cause before March 7, 2023, . . . the Terminated Service Member . . . is deemed to have offered to sell all of its Membership Interest

to the Company."  Operating Agreement § 19.5(a); *see* Partial Final Award 15.  "If the termination occurs prior to March 7, 2019, the purchase price shall be equal to the positive value of such Member's Capital Account."  Operating Agreement § 19.5(b)(a).  Relying on these provisions, ESquared repurchased Chef Chloe's 50% Membership Interest in CCSW at no cost, because the value of Chef Chloe's capital account was then zero.  Partial Final Award 15.

It is worth pausing now to describe a series of intrafamily transactions that occurred on October 15, 2015, long before Chef Chloe's termination from CCSW, which are central to the claims at issue.  Before October 15, 2015, ESquared was held entirely by BLT Restaurant Group LLC, which Haber controlled.  *Id.* at 19.  Eighty-five percent of BLT Restaurant Group LLC was held indirectly by three trusts — one for each of Haber's children, including Wasser.  *Id.*  On October 15, 2015, BLT Restaurant Group LLC transferred its 100% membership interest in Esquared to ESquared Holdings LLC in exchange for $250,000, and ownership of ESquared Holdings was divided equally, in thirds, between Wasser outright and two newly created trusts for Haber's other two children.  *Id.* at 20-21.  The effect of these transactions was to remove Haber from the line of ownership between ESquared and his three children and to grant Wasser more direct control of the family restaurant businesses.  *Id.* at 20-21.  Haber testified at an arbitration hearing that a tax attorney had recommended the $250,000 purchase price so that the transaction would "be respected for sale purposes."  *Id.* at 35.

The October 15, 2015 series of transactions is significant because Section 19.5(e) of the CCSW Operating Agreement provides that "the Repurchase Right set forth" in Section 19.5(a) "shall automatically terminate and be of no further force or effect upon the occurrence of . . . an ESquared Hospitality Liquidity Event."  Operating Agreement § 19.5(e).  Thus, if the 2015 series of transactions was a Liquidity Event, then the Repurchase Right that ESquared exercised in

2017 — to repurchase Chef Chloe's 50% membership interest in CCSW — was void.  An "ESquared Hospitality Liquidity Event" is defined as "a sale, financing, public offering or other change of control transaction involving ESquared Hospitality (or its parent entity) and/or no less than a majority of the restaurants that ESquared Hospitality and its Affiliates have an ownership and/or management interest in." *Id.* § 1.1.  Whether the 2015 transactions qualify was the central question in the arbitration proceeding at issue.  On May 13, 2020, Judge Hochberg issued a detailed, ninety-page award, agreeing with Plaintiffs that Defendants' repurchase of Chef Chloe's 50% membership interest violated the CCSW Operating Agreement; as a remedy, she reinstated Chef Chloe's 50% membership interest in CCSW.  *See generally* Partial Final Award. Judge Hochberg also awarded attorney's fees and costs to Plaintiffs, as the prevailing party.  *See generally* Partial Fee Award; Complete Final Award.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, generally requires a reviewing court to confirm an arbitration award.  9 U.S.C. § 9; *see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011).  A court "may" vacate an award, however, "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  Significantly, the Second Circuit has "consistently accorded the narrowest of readings" to this provision.  *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (internal quotation marks omitted).  "If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated." *Id.* (internal quotation marks omitted).  Thus, a reviewing court's analysis "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain

issue, *not* whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002) (emphasis added) (internal quotation marks omitted).

The Court must confirm the arbitrator's award "as long as the arbitrator [wa]s even arguably construing or applying the contract and acting within the scope of his authority"; even "a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his [or her] decision.'" *ReliaStar*, 564 F.3d at 86 (quoting *United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  In other words, "the court may set aside an arbitration award if it was rendered in manifest disregard of the law," *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (internal quotation marks omitted), but it must enforce the award as long as there is "a barely colorable justification for the outcome reached," *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 871 (2d Cir. 2020) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)); *accord Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (internal quotation marks and emphasis omitted). Moreover, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).

## DISCUSSION

As a threshold matter, the Court must decide whether or to what extent it may consider the pending motions given the automatic bankruptcy stay as to BCHG.  For the reasons that follow, the Court concludes that it may rule now on the Arbitration Awards to the extent that they address liability and attorney's fees, but may not opine on them to the extent that they

address the proper remedy.  Within the scope of that narrowed review, the Court concludes that there are no grounds to vacate the Arbitration Awards and, thus, grants Plaintiffs' motions to confirm.

## A.  The Effect of the Bankruptcy Stay

Because BCHG, formerly CCSW, has filed a bankruptcy petition, this case is currently stayed against BCHG by operation of law.  11 U.S.C. § 362(a)(1); *see* ECF No. 245.  The automatic stay, however, applies only to any "action or proceeding *against the debtor*."  11 U.S.C. § 362(a)(1) (emphasis added).   "It is well-established that stays pursuant to § 362(a) . . . do not encompass non-bankrupt co-defendants," except in "unusual circumstances." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (collecting cases).  Courts in this district have construed the unusual circumstances exception "narrow[ly]." *Mardice v. Ebony Media Operations, LLC*, No. 19-CV-8910 (VSB), 2021 WL 146358, at *4 (S.D.N.Y. Jan. 15, 2021); *see also Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395, 398 (S.D.N.Y. 2014).  It generally applies only where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate," as with "a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) (internal quotation marks and citations omitted).  By contrast, the exception generally does not apply "where a codefendant is independently liable," such as "where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of a duty." *Thomson Kernaghan & Co. v. Glob. Intellicom, Inc.*, Nos. 99-CV-3005 & 99-CV-3015 (DLC), 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000) (internal quotation marks omitted).

"The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization." *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999). The non-bankrupt co-defendant bears the burden of demonstrating the need to expand the scope of the stay. *See Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13-CV-4650 (JFK), 2014 WL 4783008, at *3 (S.D.N.Y. Sept. 25, 2014).

Although ESquared asserts in its supplemental briefing letter that the Court should temporarily stay the case in its entirety, it does not satisfy its burden of demonstrating the need to expand the stay that broadly. *See* ECF No. 251. ESquared argues that Plaintiffs' claims against ESquared and BCHG "involve a common nucleus of operative facts, legal principles and causes of action, such that they are inextricably intertwined," *id.* at 2, but that is not the relevant standard. Indeed, to the extent ESquared means to suggest that a stay is warranted because a decision against ESquared could adversely affect BCHG through the creation of adverse precedent or even collateral estoppel in a future proceeding, the Second Circuit has expressly rejected that argument. *Queenie*, 321 F.3d at 288. Moreover, as Plaintiffs point out in their supplemental briefing letter, ECF No. 249, at 2, Judge Hochberg expressly held that ESquared and BCHG breached the CCSW Operating Agreement "individually and jointly," Partial Final Award 85. Thus, ESquared's liability "rests upon [its] own breach of a duty," and it would not be appropriate to stay this action against ESquared in its entirety pending the resolution of BCHG's bankruptcy proceeding. *Thomson Kernaghan*, 2000 WL 640653, at *15.[1]

---

[1]     ESquared also contends that the Court should defer ruling on the pending cross-motions in the interest of judicial economy because the parties may reach a global settlement agreement in the context of the bankruptcy proceeding that would resolve some or all of the claims at issue. *See* ECF No. 251, at 1-2. During the conference held to address the bankruptcy issue, however, BCHG's bankruptcy counsel conceded that the parties had not yet discussed a resolution of Plaintiffs' claims against ESquared. Moreover, Plaintiffs' counsel argued that a decision on the pending motions would facilitate, rather than frustrate, the parties' settlement negotiations. On

It does not follow, however, that the Court may decide whether to confirm or vacate all aspects of Judge Hochberg's Awards with respect to ESquared.  Judge Hochberg's Awards can be divided into three parts: first, the liability finding that ESquared's repurchase of Chef Chloe's membership interest in CCSW was invalid; second, her determination that the appropriate remedy was to reinstate Chef Chloe's 50% membership interest in CCSW (now BCHG); and third, the contractual attorney's fee award to Plaintiffs.  Deciding whether to confirm or vacate the remedy portion of the Awards would plainly seem to violate the bankruptcy stay provision's purpose and effect of ensuring that "the [debtor's] assets remain within the exclusive jurisdiction of the bankruptcy court pending their orderly and equitable distribution among the creditors."  *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 76 (2d Cir. 2019) (internal quotation marks omitted).  Indeed, Plaintiffs all but concede this point.  By contrast, Plaintiffs argued at the conference, and the Court agrees, that confirming or vacating Judge Hochberg's liability determination — that is, confirming or vacating her ruling that ESquared's repurchase of Chef Chloe's membership interest in CCSW violated the CCSW Operating Agreement — would not violate the stay because it would not create a claim to any asset in BCHG's estate or otherwise infringe on the bankruptcy court's exclusive jurisdiction of those assets.  Put differently, without a remedy, confirming or vacating the liability portion of the Awards would not have any "immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd.*, 321 F.3d at 287.

The fee award presents a closer question in two respects.  First, in theory, the fee award could be premised in part on the remedy portion of the Awards, in which case the Court could

---

balance, therefore, the Court is unpersuaded that a truly global settlement is sufficiently likely to justify deferring a ruling on the cross-motions as they pertain to ESquared.

not reach the validity of the fee award without reaching the validity of the remedy.  It is readily apparent, for instance, that the Court cannot confirm the fee award without confirming Judge Hochberg's *liability* determination because the it is the latter that conferred prevailing-party status on Plaintiffs.  *See* Partial Fee Award 3 (citing Operating Agreement § 20.7).  If the amount of the fee award were tied to the remedy that Plaintiffs obtained, however, then the Court could not confirm the fee award while reserving judgment on the question of whether the remedy portion of the Awards warrants confirmation.  Along these lines, Defendants argued at the conference that Judge Hochberg adjusted the award by a lodestar multiplier to account for the extraordinary result that Plaintiffs achieved in the arbitration, namely the reinstatement of Chef Chloe's 50% membership interest in CCSW.  But that argument finds no support in the Awards themselves.  To the contrary, Judge Hochberg explained that a lodestar multiplier of 1.25 was appropriate to reflect the "risk" that Plaintiffs' counsel undertook by accepting this case under a "contingency arrangement."  Partial Fee Award 8.  To be sure, Judge Hochberg attributed some of that risk to the fact that Plaintiffs sought ownership reinstatement as "primary relief" in the event that they prevailed in the arbitration, *id.* at 15, but the inherent risk for counsel in undertaking representation must be determined *ex ante*, not *ex post* by reference to the relief that counsel actually obtained.  Because the risk of contingency-fee representation was the sole basis for the multiplier that Judge Hochberg applied, the Court cannot and does not infer that Judge Hochberg would have granted a smaller fee award had Plaintiffs prevailed on the liability determination but achieved a different remedy, such as money damages.  Accordingly, the Court concludes it can address the fee award while reserving judgment on the remedy.

Second, the Court could address the fee award without violating the stay against BCHG only if Defendants are jointly liable for satisfaction of the award.  As noted, Judge Hochberg

expressly found that Defendants were jointly liable for breaching the CCSW Operating

Agreement, but the Awards are silent as to apportionment of fees.  At the conference, ESquared

disputed whether it could be held liable for the full amount of the award while this case is stayed

against BCHG.  As an initial matter, ESquared could have but did not make this argument in its

supplemental briefing letter on the effect of the automatic stay on the pending cross-motions, *see*

ECF No. 251, given Plaintiffs' statement in their opening letter that they sought immediate

confirmation of the full fee award, *see* ECF No. 249, at 2 (arguing that the Court should

promptly resolve the pending cross-motions "so Chef Chloe may enforce its multi-million dollar

fee award against ESquared Hospitality").  Thus, the argument was forfeited.  *See, e.g.*, *JP*

*Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

In any event, even if ESquared had not forfeited the argument, New York law governs the

CCSW Operating Agreement, *see* Operating Agreement § 20.18, and adheres to the general rule

that "contractual rights and responsibilities are presumed to be joint unless the contract includes

severing language," *Edgewater Growth Capital Partners, L.P. v. Greenstar N. Am. Holdings,*

*Inc.*, 997 N.Y.S.2d 668 (Table), 2013 WL 9057379, at *9 (N.Y. Sup. Ct. 2013) (citing *U.S.*

*Printing & Lithograph Co. v. Powers*, 233 N.Y. 143, 152 (1922)); *see also, e.g.*, *Alexander v.*

*Wheeler*, 407 N.Y.S.2d 319, 320-21 (4th Dep't 1978) (collecting cases).  The attorney's fee

provision of the CCSW Operating Agreement contains no such severing language, stating merely

that "[i]f the Company or any holder of Membership Interests retains counsel for the purpose of

enforcing or preventing the breach or any threatened breach of any provision of this Agreement

or for any other remedy relating to it, then the prevailing party shall be entitled to be reimbursed

by the non-prevailing party for all costs and expenses so incurred (including reasonable

attorneys' fees . . . )."  Operating Agreement § 20.7.  The Court therefore concludes that

Defendants are jointly liable for satisfaction of the fee award and that it may confirm or vacate the fee award in full against ESquared without running afoul of the bankruptcy stay as to BCHG.

## B.  The Liability Portion of the Awards

Turning to the parties' motions, the Court easily concludes that the liability portion of the Awards must be confirmed.  With regard to the merits of Plaintiffs' breach-of-contract claim, Judge Hochberg ruled that the 2015 transfer of ownership of ESquared in exchange for $250,000 was a "Liquidity Event" — specifically, a "sale" — within the meaning of Section 1.1 of the Operating Agreement and, thus, extinguished the Repurchase Right that ESquared exercised on March 22, 2017.  Partial Final Award at 38, 42.  Judge Hochberg relied heavily on Haber's testimony that the 2015 transaction was designed "to be respected for sale purposes" in the tax context, reasoning that "[t]here is absolutely nothing wrong with tax planning, as long as the events structured to accomplish it are real."  *Id.* at 35.  Judge Hochberg also relied on the change in the ultimate beneficial ownership of ESquared that the transaction effected, both because the newly created trusts were "[d]istinct . . . legal entities" from the original trusts and because "Wasser went from being a mere beneficiary of the 2002 Samantha Wasser Trust to substantial outright ownership in her own name."  *Id.* at 38; *see also id.* at 37 & fig.5.  In the alternative, Judge Hochberg ruled that even if the transfer was not a sale, it was nevertheless a "change of control transaction," Operating Agreement § 1.1, because it altered both the direct and indirect control of ESquared.  *Id.* at 46.  In light of these conclusions, Judge Hochberg ruled that the Repurchase Right ESquared exercised on March 22, 2017, had terminated automatically on October 15, 2015.  *Id.* at 60 & n.23.  Thus, "the purported exercise of [the Repurchase Right] [wa]s null and void and constitute[d] a breach of the Operating Agreement," and Coscarelli's

"50% Membership Interest was never legally recaptured by CCSW, and still belong[ed] to her." *Id.* at 60.

Defendants fall well short of the demanding statutory standard to vacate this portion of Judge Hochberg's ruling. *See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) ("[T]h[e] [manifest disregard] standard [of review] essentially bars review of whether an arbitrator misconstrued a contract."). Haber's testimony that the $250,000 transaction was structured deliberately to "be respected for sale purposes" in the tax context is powerful evidence that the transaction was also a sale within the meaning of the Operating Agreement's definition of a Liquidity Event. Partial Final Award at 35. Defendants attempt to rebut that evidence by contending that the contractual Liquidity Event definition — "a sale, financing, public offering or *other* change of control transaction . . . ," Operating Agreement § 1.1 (emphasis added) — unambiguously establishes that any transaction, including a sale, must entail a change of control to fall within its scope. *See* ECF No. 187 ("Defs.' Partial Final Award Cross-Mot. to Vacate Mem."), at 13-14. But the Court is unconvinced. At a minimum, the CCSW Operating Agreement is ambiguous as to whether a sale without a change of control constitutes a Liquidity Event. *See* Partial Final Award 41. And Judge Hochberg properly applied standard principles of contract interpretation to resolve that ambiguity.

For example, it is well established that "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003) (internal quotation marks and ellipsis omitted). As Plaintiffs argue, and as Judge Hochberg reasonably concluded, "if a change of control was mandatory to trigger a Liquidity Event, then the ESquared attorney who drafted the term need not have included the words 'sale, financing or public

offering.'"  Partial Final Award 41; *see also* ECF No. 194 ("Pls.' Partial Final Award Opp'n &

Reply"), at 15.  Thus, "ESquared's proffered contract construction argument renders most of the

words of the definition . . . superfluous," in violation of the canon against superfluity.  Partial

Final Award 41.  Judge Hochberg bolstered this conclusion by applying the principle that, at

least as a last resort in difficult cases of contract interpretation, "any ambiguity will be construed

against" the drafter — here, counsel for ESquared.  *Id.* (citing *RLS Assocs., LLC v. United Bank

*of Kuwait PLC*, 380 F.3d 704, 712 (2d Cir. 2004)).  The Court finds no fault in Judge

Hochberg's interpretation of the Liquidity Event clause, and certainly cannot conclude that that

she "manifest[ly] disregard[ed] . . . the clear and unambiguous terms" of the Operating

Agreement, as Defendants argue.  Defs.' Partial Final Award Cross-Mot. to Vacate Mem. 12.

Accordingly, that portion of the Awards must be confirmed.[2]

## C.  Attorney's Fees

As the prevailing party in the arbitration, Plaintiffs sought a fee award pursuant to

Section 20.7 of the Operating Agreement, which provides that "[i]f the Company or any holder

of Membership Interests retains counsel for the purpose of enforcing or preventing the breach or

any threatened breach of any provision of this Agreement or for any other remedy relating to it,

then the prevailing party shall be entitled to be reimbursed by the non-prevailing party for all

costs and expenses so incurred (including reasonable attorneys' fees . . . )."  The Agreement

further provides that "[a]ll other legal fees, costs and expenses incurred in connection with any

dispute under this Agreement shall be paid as determined/apportioned by the arbitrator."  *Id.*

---

[2]      Because the Court affirms Judge Hochberg's interpretation that a sale qualified as a
Liquidity Event regardless of whether it also entailed a change of control, the Court need not and
does not address Defendants' argument that the October 15, 2015 sale was not a change-of-
control transaction.  *See* Defs.' Partial Final Award Cross-Mot. to Vacate Mem. 15.

§ 20.19(b).  Because Plaintiffs' counsel accepted the representation pursuant to a 40%

contingency fee arrangement, Plaintiffs initially sought a fee award in the range of $12.2 to $25.2

million, reflecting 40% of the estimated value of the 50% membership interest in CCSW that the

Partial Final Award reinstated, plus $449,628.09 in costs.  Partial Fee Award 3-4.  Alternatively,

they sought a lodestar amount of $1,296,352.50, reflecting hours billed at established New York

billing rates, plus adjustment of the lodestar by a multiplier of four to reflect the risk of

representing Coscarelli on a contingency basis, as well as full costs.  *Id.*

Judge Hochberg awarded Plaintiffs $1,620,440.63 in fees — the lodestar amount

multiplied by 1.25 — and full costs of $449,628.09.  *Id.* at 15-16.  Judge Hochberg first

determined "that the lodestar, and not the contingency fee arrangement between [Plaintiffs] and

counsel, [wa]s the proper metric to use."  *Id.* at 7.  Judge Hochberg then applied a lodestar

multiplier of 1.25, finding "that counsel of the quality of [Coscarelli's] counsel would not have

undertaken this representation based purely upon a straight hourly rate, due to [Coscarelli's]

inability to pay, compounded by the risk of litigation where the primary relief sought [wa]s the

declaratory judgment issued in the Partial Final Award."  *Id.* at 15.  Judge Hochberg noted that

because of the contingency fee arrangement, Coscarelli's counsel "bore all of the risk of an

unfavorable outcome."  *Id.* at 8.  Still, she viewed the multiplier of four that Plaintiffs sought as

excessive and determined that, in her discretion, a more "modest" multiplier would "reasonably

account[] for the risk undertaken."  *Id.*

Turning to the billing records and rates that Coscarelli's counsel submitted, Judge

Hochberg found that "as a general matter, . . . the tasks listed, and the amount of hours" were

"customary and reasonable in a complex commercial dispute such as this Arbitration" and that

"[t]he time entries [we]re reasonably specific."  *Id.* at 9.  Judge Hochberg declined to exclude the

time that Plaintiffs' counsel spent unsuccessfully seeking a preliminary injunction before this Court, finding that the preliminary injunction motion, although unsuccessful, was "catalytic" of Plaintiffs' ultimate success in the arbitration. *Id.* at 11 (quoting *Gerena-Valentin v. Koch*, 739 F.2d 755, 758 (2d Cir. 1984)); *see also Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 226 (S.D.N.Y. 2019), ECF No. 72. Judge Hochberg also declined to adjust downward the New York billing rates of two members of Plaintiffs' legal team who were based in Minneapolis. Partial Fee Award 14-15. In the Partial Fee Award, Judge Hochberg invited Plaintiffs to submit an additional application for fees and costs incurred after May 27, 2020, *id.* at 16, when they had submitted their first fee application, *id.* at 3. On September 3, 2020, Judge Hochberg granted Plaintiffs' supplemental fee petition, awarding an additional $167,456.88 in fees and $28,313.00 in costs, for a total of $1,787,897.51 in fees and $477,941.09 in costs. *See* Complete Final Award 8-9; *see also* ECF No. 212-6 ("August 27, 2020 Interim Order") (addressing Defendants' objections to Plaintiffs' supplemental fee petition).

Defendants move to vacate certain components of Judge Hochberg's Partial Fee Award and Complete Final Award, *see* ECF No. 208, and Plaintiffs cross-move to confirm the two Awards in their entirety, *see* ECF No. 226. According to Defendants, the Awards were unreasonably high in five respects. The Court will address each argument in turn.

### 1. Application of a Lodestar Multiplier

First, Defendants fail to establish that Judge Hochberg manifestly disregarded the law by applying a 1.25 lodestar multiplier to account for the risk that Plaintiffs' counsel incurred in accepting the representation on a contingency basis. *See* ECF No. 209 ("Defs.' Fee Award Mot. to Vacate Mem."), at 5-8. As noted, the CCSW Operating Agreement includes a choice-of-law provision requiring application of New York law. Operating Agreement § 20.18. Defendants

cite no authority for the proposition that, under New York law, attorney's fees awarded pursuant to a contractual fee-shifting provision may never be adjusted to account for the risk inherent to a contingency arrangement.  They rely instead on *City of Burlington v. Dague*, 505 U.S. 557 (1992), in which the Supreme Court held that "enhancement for contingency is not permitted under [federal] fee-shifting statutes."  *Id.* at 567.  But as Plaintiffs point out, *Dague* involved *federal* law, not *New York* law, and addressed statutory, not contractual, attorney's fees.  *See* ECF No. 230 ("Pls.' Fee Award Cross-Mot. to Confirm Mem."), at 7.  Moreover, since *Dague*, at least one New York court has awarded the full value of a contingency fee in a contractual fee-shifting case — that is, the amount actually recovered in litigation multiplied by the contingency fee percentage.  *CPMI Inc. v. Kolaj*, No. 12831/03, 2007 N.Y. Misc. LEXIS 7833, at *46-56 (N.Y. Sup. Ct. Oct. 10, 2007).  Although the parties in that case agreed that the contingency fee arrangement should be the "reference" point for the fee award, the court was still obligated to exercise its "inherent authority to determine what amount of fees are reasonable."  *Id.* at *53. Against this backdrop of authority, the Court cannot conclude that New York courts would view the application of a modest, contingency fee-based lodestar multiplier as *per se* unreasonable in a contractual fee-shifting case.

Defendants also contend that application of the lodestar multiplier was improper because the Operating Agreement's fee provision did not expressly contemplate such an enhancement. *See* Defs.' Fee Award Mot. to Vacate Mem. 6-7.  For this proposition, they rely on *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir. 1987), in which the Second Circuit, applying New York law, *id.* at 1255, held that "contractual provisions for the payment of attorneys' fees [must] be strictly construed, and general language will not be sufficient to warrant an award for a type of expense that is not customarily reimbursed," *id.* at 1263.  The problem

with Defendants' argument is that they fail to show that contingency fees are not "customarily charged or recoverable." *Id.* at 1266. *F.H. Krear* dealt with a far more unusual fee enhancement, in which the district court permitted the prevailing party's counsel to apply its hourly rates in effect at the close of the litigation to all hours worked, rather than billing at the rates in effect at the time the work was performed. *Id.* at 1267. The Second Circuit concluded that there was no basis in the record to "believ[e] that it [wa]s customary for clients to pay their attorneys for past services, done at lower rates, more than they would have paid had their bills been paid contemporaneously with such services," and therefore that "New York courts would view [the fee arrangement] as an impermissible manipulation of the actual damage incurred." *Id.* (internal quotation marks and alterations omitted). Here, by contrast, record evidence establishes that Plaintiffs and their counsel agreed to a customary contingency fee arrangement, not as a means of inflating a potential fee award, but rather because "Ms. Coscarelli, a young chef, was unable to pay the fees and costs of the case"; that is, "[w]ithout the contingent fee arrangement, a meritorious case would not have been able to be filed and tried to successful conclusion." Partial Fee Award 8 (citing ECF No. 227-2 ("Schutz Decl."), ¶ 7).

### 2. Application of the Forum Rule

The Court also rejects Defendants' challenge to Judge Hochberg's application of New York billing rates to work performed by two members of Coscarelli's legal team who were based in Minneapolis. *See* Defs.' Fee Award Mot. to Vacate Mem. 8-11. The Second Circuit's "forum rule" provides that, "[w]hile the district court should generally use the prevailing hourly rate in the district where it sits . . . the district court may adjust this base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel, just as it may adjust the base hourly rate to account for other case-specific variables." *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 111-112 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008); *see also* Partial Fee Award 14 (citing *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011)).[3] In *Arbor Hill*, the Second Circuit addressed whether to apply the lower billing rate of the litigation forum or the higher billing rate of the district where counsel was based.  *See* 493 F.3d at 112-13; *see also Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009) (same). In this case, Judge Hochberg was faced with the inverse question: whether to apply the higher billing rate of the arbitration forum (New York) or the lower billing rate of the district where counsel were based (Minneapolis).  Examining relevant "case-specific variables," *Arbor Hill*, 493 F.3d at 112, Judge Hochberg concluded that the higher, forum billing rates properly applied given that the arbitration was "against . . . New York-based LLCs pursuant to an Operating Agreement with a New York forum selection clause" and that ESquared was "represented by a team of New York Litigation counsel."  Partial Fee Award 15.  Moreover, Plaintiffs' law firm customarily bills for work performed on a given matter at the rates of the office where that matter originated, and this matter originated in the New York office.  Schutz Decl. ¶ 9.

On these facts and in light of the highly deferential standard of review, the Court cannot conclude that application of New York billing rates to Minneapolis-based counsel's time reflects a manifest disregard of the law.  Defendants rely on *Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 633 (S.D.N.Y. 2012), which stated that "the appropriate billing rate should be the rate where the attorney works or the forum rate, whichever is lower."  But, of course, *Ryan* is a

---

[3]     Because both parties invoked the federal-law forum rule in their submissions to Judge Hochberg, *see* Partial Fee Award 14-15, and because Defendants do not now challenge its application, the Court assumes for present purposes that the federal-law forum rule governs, notwithstanding the Operating Agreement's choice-of-law provision.

district court case and therefore is not binding on this court or the arbitrator. *Cf. Wallace*, 378 F.3d at 190 ("[E]xplicit rejection of *controlling precedent* constitute[s] manifest disregard of the law." (emphasis added)).  Moreover, the case did not contemplate the specific scenario presented here, where the law firm's billing rates are determined by the office where the case originated rather than the location where counsel are based.  While the Court expresses no view on the proper application of the forum rule under such circumstances, it can readily discern at least a "colorable basis" for Judge Hochberg's decision to award fees at New York rates. *Wallace*, 378 F.3d 193.  Indeed, Defendants themselves argue that "the 'reasonableness' of [Plaintiffs'] counsel's fees is based on its lawyers' actual . . . rates," ECF No. 235 ("Defs.' Fee Award Opp'n & Reply"), at 9.  The evidence shows that Plaintiffs' counsel's "actual" rates for this matter were its New York rates. *See* Schutz Decl. ¶¶ 9-10.

### 3.  Fees for the Motion for a Preliminary Injunction

Defendants fare no better in challenging Judge Hochberg's award of fees for the hours spent on Plaintiffs' unsuccessful motion for a preliminary injunction in this Court. *See* Defs.' Fee Award Mot. to Vacate Mem. 11-15.  Judge Hochberg reasoned that the preliminary injunction motion "was 'catalytic' of the claims ultimately heard and resolved in this Arbitration," given the "factual and legal ties between the issues presented" in the two phases of the proceeding.  Partial Fee Award 11 (quoting *Gerena-Valentin*, 739 F.2d at 758).[4]

There is no basis to disturb that conclusion.  It is well established that, "[t]o justify an award of [attorney's] fees, the prevailing party must show a causal connection between the relief obtained and the litigation in which fees are sought." *Gerena-Valentin*, 739 F.2d at 758.  "A

---

[4]     *Gerena-Valentin* applied federal law. *See id.* at 758.  Because no party challenges its application here, notwithstanding the Operating Agreement's choice-of-law provision, the Court assumes that federal law is at least relevant to this issue.

causal connection exists if the plaintiff's lawsuit was a catalytic, necessary, or substantial factor in attaining the relief," and "[t]he inquiry into causality is largely factual." *Id.* at 758-59 (internal quotation marks omitted). Here, Defendants offer no compelling argument to disturb Judge Hochberg's fact-specific conclusion that the work that Plaintiffs' counsel performed in seeking a preliminary injunction — even though unsuccessful in the immediate — was catalytic of their subsequent success on the same claims in arbitration. Nor is the Court persuaded that the award of fees for the preliminary injunction motion was improper merely because "the same adjudicator" did not preside over the preliminary injunction motion and the arbitration proceeding — a proposition that Defendants advance but for which they provide no legal support or reasoning. *See* Defs.' Fee Award Mot. to Vacate Mem. 14 (emphasis omitted).

### 4. Fees for the Motion to Confirm the Partial Final Award

The Court is similarly unpersuaded by Defendants' challenge to Judge Hochberg's award of fees for the time Plaintiffs' counsel spent on their motions to confirm the Awards. New York courts have awarded attorney's fees for confirmation proceedings, in addition to underlying arbitration proceedings, where the fee-shifting agreement between the parties so permits. *See, e.g.*, *N.Y. Merchants Protective Co. v. RW Adart Poly, LLC*, 968 N.Y.S.2d 552, 557 (2d Dep't 2013); *Citrin Cooperman & Co., LLP v. Skyline Risk Mgmt., Inc.*, No. 650241/2018, 2019 WL 295236, at *2 (N.Y. Sup. Ct. Jan. 23, 2019). Here, Judge Hochberg reasonably interpreted the contractual fee provision to extend to "*all* costs and expenses . . . incurred" where "any holder of Membership Interests retains counsel for the *purpose of enforcing . . . the breach . . .* of any provision of this Agreement," including the proceedings before this Court to confirm that Defendants breached the Agreement. August 27, 2020 Interim Order 3-4 (first emphasis added) (quoting Operating Agreement § 20.7 (albeit erroneously cited as § 20.19(b)).

The authority on which Defendants rely in arguing otherwise is wholly inapposite.  *See* Defs.' Fee Award Mot. to Vacate Mem. 15-17.  For example, in *Magid v. Waldman*, No. 19-CV-11516 (JMF), 2020 WL 4891218 (S.D.N.Y. Aug. 19, 2020), this Court vacated an arbitrator's award of fees for enforcement proceedings after the arbitration because the contract governing the dispute did not contain any fee-shifting provision.  *See id.* at *6.  Likewise, in *Menke v. Monchecourt*, 17 F.3d 1007 (7th Cir. 1994), the Seventh Circuit addressed a scenario in which the district court enhanced an arbitration board's statutory award of attorney's fees to account for time spent on judicial confirmation proceedings, where there was no "contractual agreement between the parties" regarding fees.  *Id.* at 1009.  Neither of these cases is remotely relevant here, where the parties included a fee-shifting clause in their contract, and this Court does not seek to enhance or otherwise modify the fee award ordered by the arbitrator.

### 5. Fees for Implementation Plan Compliance

Finally, Defendants fail to establish that Judge Hochberg's award of attorney's fees for time that Plaintiffs spent developing a plan to implement the equitable relief that she ordered warrants vacatur.  As an initial matter, the Court concludes that it can confirm or vacate the award of these fees while reserving judgment on the portion of the Awards addressing remedy because the fee award concerns an independent obligation of ESquared and does not implicate any asset of BCHG's bankruptcy estate.  Further, Plaintiffs, as the prevailing party by virtue of the now-confirmed liability portion of the Awards, are contractually entitled to fees for the time they spent enforcing a breach of the CCSW Operating Agreement, regardless of whether the plan for implementation that Judge Hochberg ordered is ever effectuated.  Defendants argue that Judge Hochberg lacked jurisdiction to order such a plan and that, accordingly, Plaintiffs' efforts to comply with that unlawful order cannot serve as the basis for a fee award.  *See* Defs.' Fee

Award Mot. to Vacate Mem. 17-20.  Assuming without deciding that the second premise follows

from the first, the Court rejects Defendants' contention that the August 14, 2020 Interim Order

exceeded Judge Hochberg's authority.  Defendants rely on two well-established but irrelevant

principles of arbitration law.  *See* Complete Final Award 4-5.  First, the *functus officio* doctrine

provides that, under the FAA, "the authority of arbitrators terminates with the making of a valid,

final award."  *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) (internal quotation marks

omitted).  "Thus, if the parties have asked the arbitrators to make a final partial award as to a

particular issue and the arbitrators have done so, the arbitrators have no further authority, absent

agreement by the parties, to redetermine that issue."  *Trade & Transp., Inc. v. Nat. Petroleum

Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).  Here, however, the Partial Final Award did

not purport to finally resolve the issue of the planning for compliance; to the contrary, it

expressly granted "the parties 90 days to implement the Declaratory Judgments and equitable

relief awarded herein, with the right to seek such other relief as may be necessary and

appropriate under Section 20.6 [of the Operating Agreement] after that 90-day period has

elapsed."  Partial Final Award 88-89.  Judge Hochberg plainly was not yet *functus officio* with

respect to implementation plans.

Second, an arbitration award "is inchoate until enforced by judgment."  *Fotochrome, Inc.

v. Copal Co.*, 517 F.2d 512, 516 (2d Cir. 1975).  In other words, "[b]ecause [a]rbitration awards

are not self-enforcing, they must be given force and effect by being converted to judicial orders

by courts."  *D.H. Blair*, 462 F.3d at 104 (second alteration in original) (internal quotation marks

omitted).  But Judge Hochberg did not purport to enforce the Partial Final Award.  Instead, as

she explained in the Complete Final Award, "[t]he plan of implementation was clearly stated as a

forward-looking plan for use in the event of confirmation, and not as an enforcement mechanism

prior to confirmation." Complete Final Award 7. Indeed, the interim order itself acknowledged that "the Partial Final Award remain[ed] subject to confirmation/vacatur proceedings," but stated that "it [wa]s the Arbitrator's duty to ensure that the parties [we]re fully ready to implement a plan to effectuate the declaratory relief awarded to [Plaintiffs]." ECF No. 212-3, at 3-4. In sum, Defendants do not establish that Judge Hochberg was *functus officio* when she issued the Interim Order or that the Order trenched on the Court's exclusive authority to enforce the Partial Final Award. Accordingly, Defendants offer no basis vacate Judge Hochberg's decision on this score either.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions to confirm the Partial Final Award, Partial Fee Award, and Complete Final Award are GRANTED in part, and Defendants' motions to vacate these Awards are DENIED in part. In particular, the portions of Judge Hochberg's Awards holding Defendants liable for breaching the CCSW Operating Agreement and awarding attorney's fees and costs to Plaintiff are confirmed against non-bankrupt Defendant ESquared. In view of the automatic stay arising from BCHG's bankruptcy, the Court reserves judgment on the motions to the extent they seek confirmation and vacatur of the remedy devised in the Arbitration Awards. Additionally, in view of the bankruptcy proceedings, all dates and deadlines currently in effect are suspended. *See* ECF Nos. 182, 224. No later than **March 12, 2021**, the parties shall confer and file a joint status letter not to exceed five pages, addressing any relevant topics including but not limited to: (1) any developments in the BCHG bankruptcy proceeding; (2) the parties' views on whether the Court should proceed to the pending cross-motions for summary judgment; and (3) if so, a proposed briefing schedule for supplemental briefing on the pending cross-motions for summary judgment, if any.

Although the Court has deferred judgment on a portion of the parties' pending motions, the Clerk of Court is directed to administratively terminate ECF Nos. 173, 185, 208, and 226.

SO ORDERED.

Dated: January 28, 2021
New York, New York

JESSE M. FURMAN
United States District Judge