UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                  :

CHLOE COSCARELLI et al.,                :

                                :

             Plaintiffs,          :                18-CV-5943 (JMF)

                                :

        -v-                      :

                                :             <u>OPINION AND ORDER</u>

ESQUARED HOSPITALITY LLC et al.,   :

                                :

             Defendants.     :

                                :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       This case involves a long-running and bitter dispute between Plaintiff Chloe Coscarelli, a

celebrity vegan chef, and her former business partners, Defendants ESquared Hospitality LLC

("ESquared") and BC Hospitality Group LLC ("BCHG"), over a chain of fast casual vegan

restaurants called "By Chloe" and related ventures.  Now pending are a slew of motions,

including, most significantly, portions of the parties' cross-motions to confirm and vacate certain

arbitration awards on which the Court previously reserved judgment, *see* ECF Nos. 173, 185;

cross-motions for summary judgment, *see* ECF Nos. 140, 146; and Plaintiffs' motion for entry of

a default judgment against BCHG, *see* ECF No. 291.  For the reasons that follow, the Court

GRANTS Plaintiffs' motion to confirm and DENIES Defendants' motion to vacate the

arbitration awards; GRANTS in part and DENIES in part Defendants' motion for summary

judgment; GRANTS in part and DENIES in part Plaintiffs' motion for summary judgment; and

DENIES Plaintiffs' motion for default judgment.

## BACKGROUND

       The facts relevant to the present motions — drawn from the pleadings, admissible

materials that the parties submitted in connection with these motions, and, to the extent relevant

to the motions to confirm and vacate the arbitration awards, the awards themselves — are either undisputed or described in the light most favorable to the relevant non-moving party. *See, e.g.*, *Simon v. City of New York*, 893 F.3d 83, 91 (2d Cir. 2018).  In addition, the Court has issued several prior decisions in this case, general familiarity with which is presumed. *See, e.g.*, *Coscarelli v. ESquared Hosp. LLC* ("*Coscarelli I*"), 364 F. Supp. 3d 207 (S.D.N.Y. 2019) (ECF No. 72); *Coscarelli v. ESquared Hosp. LLC* ("*Coscarelli II*"), No. 18-CV-5943 (JMF), 2021 WL 293163 (S.D.N.Y. Jan. 28, 2021) (ECF No. 256).

Coscarelli is a vegan chef who began receiving media attention in June 2010, when she became the first vegan chef to win Cupcake Wars, a televised cooking competition.  ECF No. 76 ("FAC"), ¶ 2.  Between 2012 and 2014, she published three vegan cookbooks, *Chloe's Kitchen*, *Chloe's Vegan Desserts*, and *Chloe's Vegan Italian Kitchen.  Id.* ¶ 3.  In 2014, she began discussing with restauranteur James Haber — Chief Executive Officer of ESquared — the possibility of establishing a chain of fast casual vegan restaurants.  ECF No. 94 ("Counterclaims"), ¶ 12.  On November 7, 2014, ESquared and Chef Chloe LLC — a limited liability company wholly owned by Coscarelli — entered into an operating agreement (the "Operating Agreement") that established BCHG,[1] a limited liability company, for the purposes of operating a chain of such restaurants under the name By Chloe.  FAC ¶ 7; *see* ECF No. 1-3 ("OA").  On the same day that the parties signed the Operating Agreement, Coscarelli and BCHG also entered into a separate agreement (the "Name, Face, and Likeness Agreement"),

---

[1]      The company established in 2014 was actually named CCSW LLC, but the name was changed on March 22, 2017 to BCHG.  ECF No. 172-1 ("Hochberg Partial Final Award"), at 16. To avoid needless confusion, the Court refers to the company as BCHG throughout this Opinion and Order, regardless of the company's formal name at the time.

through which Coscarelli licensed certain rights to use her name and other rights of publicity in connection with the business.  FAC ¶ 8; *see* ECF No. 1-2 ("NFL Agreement").

At the outset, Chef Chloe LLC and ESquared each owned 50% of the company.  FAC ¶ 7.  Pursuant to the Operating Agreement, BCHG was to be co-managed by Coscarelli and Samantha Wasser, Haber's daughter.  OA § 7.3; ECF No. 172-1 ("Hochberg Partial Final Award"), at 7.  The company opened the first By Chloe restaurant, in New York City, in July 2015.  Counterclaims ¶ 54.  Despite the restaurant's early success, the relationship between Coscarelli and ESquared quickly soured.  FAC ¶¶ 7, 9.  Between 2016 and 2017, Coscarelli and ESquared were engaged in an arbitration proceeding before Arbitrator Erica Garay, culminating in an award (the "Garay Arbitration Award") that was issued on March 21, 2017.  FAC ¶ 9; *see* ECF No. 141-6 ("Garay Final Award").  To the extent relevant here, Arbitrator Garay terminated Chef Chloe LLC for cause as a Service Member of BCHG pursuant to Section 19.3(a) of the Operating Agreement.  *See* Garay Final Award 3, 48.  The New York Supreme Court confirmed the Garay Arbitration Award on November 16, 2017, in a decision that was affirmed by the New York Appellate Division on January 29, 2019.  *See Chef Chloe, LLC v. Wasser*, 93 N.Y.S.3d 15 (1st Dep't 2019).  The day after the Garay Arbitration Award was issued, ESquared purported to exercise its Repurchase Right pursuant to Section 19.5 of the Operating Agreement, which provides for the repurchase of Chef Chloe LLC's Membership Interest in the event of its termination for cause, in exchange for the value of Chef Chloe LCC's capital account, which was then $0.  FAC ¶ 9; Counterclaims ¶ 50; *see* OA § 19.5.

On June 29, 2018, Coscarelli, Chef Chloe LLC, and two other entities also wholly owned by Coscarelli — CC Hospitality Holdings LLC and CKC Sales, LLC — brought this action against ESquared and BCHG.  *See* FAC ¶ 13-15.  In their original complaint, Plaintiffs alleged,

among other things, claims for breach of the NFL Agreement and Operating Agreement; tortious interference with a business relationship; various statutory and common law claims under California state law; federal unfair competition, trademark infringement, and cyberpiracy; common law unfair competition, unjust enrichment, and trademark infringement; federal copyright infringement; and cancellation of the By Chloe registered trademark. *See* ECF No. 1. On July 11, 2018, Plaintiffs moved for a preliminary injunction barring Defendants from selling retail packaged foods under the By Chloe name and reinstating Chef Chloe LLC's 50% Membership Interest in BCHG. *See* ECF No. 22. On July 13, 2018, Defendants moved to dismiss all of Plaintiffs' claims on the ground that they were subject to a mandatory arbitration provision or, in the alternative, to dismiss Plaintiffs' claims under California state law in light of the Operating Agreement and NFL Agreement's New York choice-of-law provisions. *See* ECF No. 28; *see also* OA § 20.18; NFL Agreement § 18.

On January 31, 2019, the Court granted Defendants' motion to dismiss as to Plaintiffs' claims under California law, denied Plaintiffs' motion for preliminary injunctive relief, and stayed the claims brought by Chef Chloe LLC pending arbitration. *See Coscarelli I*, 364 F. Supp. 3d 207. Thereafter, Plaintiffs filed an amended complaint (the "Complaint"), *see* FAC, and Defendants brought counterclaims seeking a declaratory judgment with respect to the parties' trademark rights; federal trademark infringement and unfair competition; common law trademark infringement and unfair competition; breach of the NFL Agreement and Operating Agreement; a declaratory judgment with respect to Coscarelli's purported termination of the NFL Agreement; and breach of certain loan agreements, *see* Counterclaims. The claims that were not stayed pending arbitration proceeded to discovery. *See* ECF Nos. 77, 83.

4

Meanwhile, on March 14, 2019, Coscarelli and celebrity chef Tom Colicchio filed a separate action against BCHG seeking a declaration that their then-new pop-up restaurant "Supernatural" does not violate BCHG's rights in the By Chloe trademark and that Coscarelli did not breach the NFL Agreement through her involvement in Supernatural.  *See Colicchio v. BC Hospitality Group LLC*, 19-CV-2325 (JMF), ECF No. 1.  In that action (the "Colicchio Action"), Defendants brought counterclaims against Plaintiffs for federal trademark infringement and unfair competition, common law trademark infringement and unfair competition, breach of the NFL Agreement, and a declaratory judgment with respect to Coscarelli's purported termination of the NFL Agreement.  *See Colicchio v. BC Hospitality Group LLC*, ECF No. 31.  On May 3, 2019, the Court consolidated this action and the Colicchio Action for pretrial purposes.  *See* ECF No. 98.  On January 10, 2020, Defendants moved for summary judgment on Counts One, Three, Four, Seven, Eight, and Eleven through Eighteen of the Complaint and on the declaratory judgment claims alleged in the Colicchio Action.  *See* ECF No. 140.[2]  On February 7, 2020, Plaintiffs cross-moved for summary judgment on Defendants' Counterclaims Five through Eight and Defendants' Affirmative Defenses Five and Thirteen through Seventeen.  *See* ECF No. 146.

As the parties engaged in discovery here, they proceeded to arbitration with respect to Counts Two, Five, and Six of the Complaint before the Honorable Faith S. Hochberg, former United States District Judge for the District of New Jersey.  *See Coscarelli I*, 364 F. Supp. 3d at 212; *Coscarelli II*, 2021 WL 293163, at *1.  On May 13, 2020, Judge Hochberg issued an award

---

[2]     Defendants state that they move for summary judgment on "the single Count contained in the Complaint" filed in the Colicchio action, ECF No. 140, at 2; *see also* ECF No. 143 ("Defs.' MSJ Mem."), at 25 (referring to "the single claim in the consolidated Colicchio case"), but Plaintiffs bring two separate claims for declaratory relief in that action.  *See Colicchio v. BC Hospitality Group LLC*, ECF No. 1.  The Court presumes that Defendants move for summary judgment on both claims.

(the "Hochberg Partial Final Award") in which she ruled that BCHG's purported repurchase of Chef Chloe LLC's Membership Interest following Coscarelli's termination was invalid in light of a series of intra-family transactions that had occurred with respect to ESquared on October 15, 2015. *See Coscarelli II*, 2021 WL 293163, at *2. Judge Hochberg reasoned that these transactions had extinguished the Repurchase Right that ESquared purported to exercise following Coscarelli's termination. *See id.* As a remedy, Judge Hochberg reinstated Chef Chloe LLC's 50% Membership Interest in BCHG and awarded fees and costs to Plaintiffs, as the prevailing party, pursuant to Section 20.7 of the Operating Agreement. *Id.* She also ruled that, pursuant to the Operating Agreement, Coscarelli's consent was required to use the By Chloe trademark in connection with any products or services other than fast casual vegan restaurants. *See* Hochberg Partial Final Award 22-31. Thereafter, the parties filed cross-motions to confirm and vacate the Hochberg Partial Final Award. *See* ECF Nos. 173, 185. On August 13, 2020, Judge Hochberg entered a second partial final award, *see* ECF No. 212-2, and on September 3, 2020, she entered the complete final award, *see* ECF No. 212-3 (together, the "Hochberg Arbitration Awards").

On December 14, 2020, shortly after the summary judgment and arbitration motions were fully submitted, BCHG notified the Court that it had filed a bankruptcy petition in the United States Bankruptcy Court for the District of Delaware, resulting in an automatic stay of this action against BCHG pursuant to 11 U.S.C. § 362(a)(1). *See* ECF Nos. 245-46. Shortly thereafter, on January 28, 2021, the Court confirmed the liability and fee portions of the Hochberg Arbitration Awards solely as to ESquared, concluding that such confirmation did not violate the automatic stay against BCHG, but reserved judgment on whether to confirm or vacate the remedy portion of the Awards. *See Coscarelli II*, 2021 WL 293163. While the bankruptcy stay was in effect,

BCHG's counsel moved to withdraw from this case.  *See* ECF No. 269.  The Court granted the motion to withdraw over Plaintiffs' opposition and ordered any new counsel for BCHG to enter an appearance within twenty-one days of the bankruptcy stay being lifted.  *See* ECF Nos. 273, 275.

The bankruptcy proceeding was dismissed on May 5, 2021.  *See* ECF Nos. 281-11.  The next day, Plaintiffs moved pursuant to Rule 54(b) of the Federal Rule of Civil Procedure for entry of partial final judgment against ESquared as to the fee award that the Court previously confirmed.  *See* ECF No. 277.  In addition to briefing that motion, the parties also filed supplemental briefs addressing the effect of the bankruptcy proceeding, if any, on the pending motions for summary judgment.  *See* ECF Nos. 266, 280, 284, 29.  Finally, after BCHG failed to obtain new counsel within twenty-one days of the conclusion of the bankruptcy proceeding, Plaintiffs filed a motion for entry of a default judgment as to BCHG.  *See* ECF No. 291.  The Court held a hearing on that motion by teleconference on June 24, 2021.  *See* ECF No. 301.

## CROSS-MOTIONS TO CONFIRM AND VACATE THE ARBITRATION AWARDS

The Court begins with the parties' cross-motions to confirm and vacate the remaining portions of the Hochberg Arbitration Awards, as to which the Court previously reserved judgment.  *See Coscarelli II*, 2021 WL 293163.

### A.  The Awards

As noted above, after concluding that the October 15, 2015 series of intrafamily transactions with respect to ESquared had terminated ESquared's Repurchase Right, Judge Hochberg ruled that the purported recapture of Chef Chloe LLC's Membership Interest in BCHG was "null and void and constitute[d] a breach of the Operating Agreement."  Hochberg Partial Final Award 60.  That left Judge Hochberg with the task of crafting a remedy to restore

Coscarelli's rightful ownership — a task complicated by the events that had occurred after the purported repurchase, including a $31 million investment by a group of outside investors to which, Judge Hochberg found, Coscarelli would not have consented "had she been given the opportunity to state her objection." *Id.* at 16, 66.  Significantly, the parties found no precedent in "New York, Delaware, or any other jurisdiction" involving "situations [where] LLC Membership Interests [were] unlawfully converted, and then granted to outside investors for investment monies." *Id.* at 68.  Given that vacuum, Judge Hochberg analyzed the Operating Agreement, the relevant testimony, and other evidence in light of equitable principles. *See id.* at 68, 79-80.

The parties disputed what equity demanded.  Defendants argued that, because Coscarelli would not have consented to the $31 million investment, giving her the benefits of that investment would be to give her a "windfall." *Id.* at 76.  Accordingly, they argued, the proper remedy was to "restore [Chef Chloe LLC's] Membership Interest as now diluted as a result of the . . . investment," *id.* at 64 (emphasis omitted), by granting Chef Chloe LLC "only half of the BCHG Inc. common shares (which constitutes approximately 20.5% of the overall ownership of BCHG Inc.), with subordinated rights to the preferred shares," *id.* at 70.  By contrast, Plaintiffs argued that it would be inequitable to "dilute[] and subordinate[]" Chef Chloe LLC's Membership Interest "as if she had consented to the transfer of her full, undiluted, and unsubordinated [interest] to BCHG Inc., and then to the economic terms of the [investment], when such consent [was] never sought . . . and never [obtained]." *Id.* at 72-73.  Thus, they proposed as a remedy "full reinstatement of [Chef Chloe LLC's] 50% Membership Interest in [BCHG], without dilution or subordination to the new class of preferred shares." *Id.* at 70.

Judge Hochberg agreed with Plaintiffs that "to force [Coscarelli] to now accept the economic terms of a transaction to which she did not consent . . . would be the height of

unfairness, and wholly unsupported by any evidence in the case or legal principle." *Id.* at 79.

She therefore ruled that Chef Chloe LLC "still owns a full 50% undiluted, unsubordinated

Membership Interest in [BCHG]." *Id.* at 85.  Judge Hochberg also ruled that the various

amendments to the Operating Agreement purportedly executed on March 22, 2017, and January

26, 2018 — including the name change to BCHG LLC — were "null and void" because they

were executed without Coscarelli's consent, in violation of Section 7.4 of the Operating

Agreement, and that the name of the company was "changed back." *Id.* at 85-86, 88.

## B.  Legal Standards

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "a party moving to

vacate an arbitration award has the burden of proof, and the showing required to avoid

confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d

68, 74 (2d Cir. 2011) (cleaned up).  A court "may" vacate an award, however, "where the

arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).

Significantly, the Second Circuit has "consistently accorded the narrowest of readings" to this

provision. *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009)

(internal quotation marks omitted).  "If it were otherwise, the ostensible purpose for resort to

arbitration, i.e., avoidance of litigation, would be frustrated." *Id.* (internal quotation marks

omitted).  Thus, a reviewing court's analysis "focuses on whether the arbitrators had the power,

based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not*

whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co.*,

304 F.3d 200, 220 (2d Cir. 2002) (emphasis added) (internal quotation marks omitted).

A court must confirm an arbitrator's award "as long as the arbitrator [was] even arguably construing or applying the contract and acting within the scope of his authority." *ReliaStar*, 564 F.3d at 86. In fact, even "a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his [or her] decision.'" *Id.* (quoting *United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). In other words, a court "may set aside an arbitration award if it was rendered in manifest disregard of the law," *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (internal quotation marks omitted), but it must enforce an award as long as there is "a barely colorable justification for the outcome reached," *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 871 (2d Cir. 2020) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)). Moreover, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).

## C. Discussion

In light of the foregoing standards, Defendants' remaining attacks on the Hochberg Arbitration Awards fall short. For starters, the liability and fee portions of the Hochberg Arbitration Awards as to BCHG are easily confirmed. The Court previously confirmed those portions of the Awards as to ESquared. *See Coscarelli II*, 2021 WL 293163, at \*5-10. It refrained from doing so as to BCHG, but only because the bankruptcy stay was in effect at the time. *See Coscarelli II*, 2021 WL 293163, at \*3. With the stay now lifted, those portions of the Hochberg Arbitration Awards can be and are confirmed as to BCHG as well.

Defendants' arguments with respect to the remedial portion of the Hochberg Arbitration Awards are more substantial, but they ultimately fail given the "very high" burden and the

conceded absence of any authority on the issue. *STMicroelectronics*, 648 F.3d at 74 (internal

quotation marks omitted).  That is, whatever the Court might have done if it had to craft a

remedy in the first instance, its task here is not to determine whether a more equitable remedy is

available.  Instead, the Court's task to determine whether "(1) the arbitrator[] knew of a

governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored

by the arbitrator[] was well defined, explicit, and clearly applicable to the case." *Wallace v.*

*Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (internal quotation marks omitted).  That standard may

well be impossible to meet here given that the parties failed to identify, and Judge Hochberg

failed to find, *any* precedent from *any* jurisdiction addressing a situation in which "LLC

Membership Interests [were] unlawfully converted, and then granted to outside investors for

investment monies."  Hochberg Partial Final Award at 68.  In any event, while the question of

whether to confirm the remedy portion of the Hochberg Arbitration Awards presents a closer

question than confirmation of the liability and fee portions, the Court concludes that Judge

Hochberg's decision to require Defendants to return to Coscarelli the "full, undiluted,

unsubordinated 50% Membership Interest in [BCHG]" that she held before the invalid

repurchase, regardless of the change in value of that interest as a result of subsequent investment,

*see* Hochberg Partial Final Award 8, readily meets the standard for judicial confirmation.

Defendants' arguments to the contrary fail to establish that Judge Hochberg overlooked

controlling legal precedent.  First, Defendants argue that Judge Hochberg misinterpreted the

word "Transfer" in Section 20.5 of the Operating Agreement, on which she relied to void the

repurchase of Chef Chloe LLC's Membership Interest.  ECF No. 187 ("Defs.' Partial Final

Award Cross-Mot. to Vacate Mem."), at 16.  It is well established, however, that the FAA's

demanding standard of review "essentially bars review of whether an arbitrator misconstrued a

contract." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

Second, Defendants contend that Judge Hochberg's remedy violated the principle that

"rescission is unavailable if substantial restoration of the *status quo ante* is impracticable due to

the considerable performance of a closed transaction."  Defs.' Partial Final Award Cross-Mot. to

Vacate Mem. 17 (emphasis altered).  But that principle is wholly inapposite here.  As Plaintiffs

note, "[r]escission is an equitable remedy through which a party to a contract can seek the

unilateral unmaking of [the] contract."  ECF No. 194 ("Pls.' Partial Final Award Opp'n &

Reply"), at 18.  Plaintiffs here seek to *enforce* the Operating Agreement, not to unmake it.  Third,

Defendants argue that the reinstatement of Plaintiffs' 50% Membership Interest in BCHG

deprives the outside investors of property rights without due process.  *See* Defs.' Partial Final

Award Cross-Mot. to Vacate Mem. 22.  To the contrary, the outside investors hold shares of

BCHG, Inc., a new entity created specifically to effectuate the transaction, not BCHG LLC.

Hochberg Partial Final Award 16.  Thus, reinstating Plaintiffs' 50% Membership Interest in

BCHG does not deprive the investors of their holdings in BCHG, Inc.  *See* Hochberg Partial

Final Award 82 ("Nothing in this Award orders that [the outside investors'] shares be removed

from [them].").  In short, the Court finds no statutory basis to vacate the equitable relief that

Judge Hochberg ordered.[3]  It follows that Plaintiffs' Count Nineteen, which was asserted

contingent on the Court's finding that Coscarelli was *not* entitled to reinstatement of her 50%

Membership Interest in BCHG, *see* FAC ¶ 248, must be and is dismissed.

---

[3]      Because the Court confirms Judge Hochberg's reinstatement of Chef Chloe LLC's
Membership Interest, it need not and does not reach Defendants' argument that Judge Hochberg
erred in ruling that Plaintiffs would control use of the By Chloe trademark even if their
Membership Interest were not restored.  *See* Defs.' Partial Final Award Cross-Mot. to Vacate
Mem. 22-25.

Finally, Defendants move for vacatur of Judge Hochberg's ruling that Coscarelli's consent was required to use the By Chloe trademark in connection with any products or services other than fast casual vegan restaurants.  Defs.' Partial Final Award Cross-Mot. to Vacate Mem. 22-24, *see* Hochberg Partial Final Award 84-85.[4]  Significantly, however, that portion of Defendants' motion is contingent on vacatur of the remedy portion of the Hochberg Arbitration Awards.  *See* Defs.' Partial Final Award Cross-Mot. to Vacate Mem. 22 ("*If* this Court vacates the 2020 Award's equitable remedies, and if Plaintiff is held not to be a member of the Company, then the Arbitrator's ruling regarding Plaintiff's continuing control over the Company's 'Approved Projects,' including its use of the 'By Chloe' mark to expand the Company's services and operations, should also be vacated." (emphasis added)).  That alone would be enough to justify confirmation.  On top of that, however, the Court concludes that Judge Hochberg's ruling — based on an interpretation of various provisions of the Operating Agreement — was at least reasonable and thus readily meets the standard for judicial confirmation.  Accordingly, all portions of the Hochberg Arbitration Awards on which the Court previously reserved judgment must be and are now confirmed in full.[5]

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Court turns next to the parties' cross-motions for summary judgment.  The parties each move for partial summary judgment, but the Court, like the parties, will focus most of its

---

[4]     In its Opinion and Order denying Plaintiffs' motion for preliminary injunctive relief, the Court had held that the provisions of the parties' contracts relevant to this issue were ambiguous. *See Coscarelli I*, 364 F. Supp. 3d at 225-26.  In her ruling, Judge Hochberg resolved the ambiguity in Plaintiffs' favor and held that, even after Coscarelli's termination, her consent to designate new "Approved Projects" was required.  *See* Hochberg Partial Final Award 22-31.

[5]     Plaintiffs' Count Six, which alleges that Defendants breached the Operating Agreement by entering into an investment agreement with outside investors, was stayed pending arbitration. *See Coscarelli I*, at 226.  It is unclear, however, whether or how the Hochberg Arbitration Awards resolved the claim.  **No later than two weeks from the date of this Opinion and**

attention on the questions of whether Coscarelli validly terminated the NFL Agreement, whether

the By Chloe trademark should be canceled, and whether either party's publication of certain

recipes was improper.  The Court will then address each claim in turn.

## A.  Legal Standards

Summary judgment is appropriate when the record demonstrates that there are no genuine

disputes as to any material facts and that one party is entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute of

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving

party bears the initial burden of informing the Court of the basis for its motion and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

that demonstrate the absence of a genuine dispute regarding any material fact.  *See Celotex*, 477

U.S. at 323; Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, all evidence

must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of

Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities

and draw all permissible factual inferences in favor of the party against whom summary

judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77,

83 (2d Cir. 2004).

Where, as here, both sides move for summary judgment, "neither side is barred from

asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of

law, against it."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he

---

**Order**, each side shall file a letter brief, not to exceed four single-spaced pages, addressing that
question and, if appropriate, proposing next steps.

court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).  To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## B.  Discussion

The parties' cross-motions for summary judgment raise various disputes, including: (1) whether BCHG breached the NFL Agreement by continuing to use the By Chloe trademark after Coscarelli's purported termination; (2) whether the By Chloe trademark should be canceled for falsely suggesting an association with Coscarelli; (3) whether Coscarelli may use her name on packaged food and as a chef; (4) whether BCHG's continued use of Coscarelli's name, face, and likeliness violated her state law right to publicity; (5) whether Defendants tortiously interfered with Coscarelli's business relationship; (6) whether Defendants' publication of recipes allegedly copied from Coscarelli's published cookbooks amounts to copyright infringement; (7) whether Coscarelli's publication of her recipes breached the Operating Agreement; (8) whether Defendants' use of certain domain names and social media handles violates state or federal trademark infringement, unfair competition, or cyberpiracy laws; (9) whether Defendants' were unjustly enriched at Coscarelli's expense; (10) whether Defendants' are

entitled to reimbursement of certain legal fees; and (11) whether some of Defendants' affirmative defenses are irrelevant.  The Court will address each dispute in turn.

### 1. Breach of Contract for Use of the "By Chloe" Mark (Count One)

In Count One of the Complaint, Coscarelli brings a claim for breach of contract against BCHG, based on its continued use of the By Chloe trademark following Coscarelli's purported termination of the NFL Agreement, including in connection with retail packaged goods under the name "Sweets by Chloe."  *See* FAC ¶¶ 61-75.  Given the Court's confirmation of Judge Hochberg's Approved Projects ruling, Plaintiffs are entitled to summary judgment on their breach of contract claim to the extent it is predicated on Defendants' use of the By Chloe mark on any projects other than fast casual vegan restaurants without Coscarelli's consent.  *See, e.g.*, ECF No. 157 ("Defs.' Rule 56.1 Resp."), ¶ 16 (admitting that, "for a short time," BCHG sold "retail packaged goods" under the "By Chloe" mark); Counterclaims ¶ 62 (stating that BCHG had used its "By Chloe Mark in connection with . . . packaged meals, rice and pasta salads, and salad dressings").  Plaintiffs' claim goes further, however.  They also contend that BCHG's ownership of the By Chloe mark ceased entirely when Coscarelli purportedly terminated the NFL Agreement on March 16, 2018, and that BCHG therefore breached the Operating Agreement by continuing to operate fast casual vegan restaurants under the By Chloe name. That argument fails for two reasons: first, because no reasonable jury could conclude that Coscarelli validly terminated the NFL Agreement in March 2018 and, second, as a matter of contract interpretation.

### a. Coscarelli's Purported Termination of the NFL Agreement

Under the terms of the contract, Coscarelli can terminate the NFL Agreement if BCHG "opposes, petitions to cancel, commences a legal action, or otherwise challenges, objects to or

interferes with [Coscarelli's] ownership, use (or authorized the use by others [sic]) or registration of [her name, face, and likeness rights], except that [BCHG] may take any action permitted under the Operating Agreement." NFL Agreement § 8(a)(vi). Among the actions that the Operating Agreement expressly permits, BCHG can "take any action it deems reasonably necessary to protect the By Chloe Mark if [it] determine[s] in good faith that [Coscarelli] has violated . . . Section 4.4(c)" of the Operating Agreement. OA § 4.4(c). Section 4.4(c) of the Operating Agreement, in turn, prohibits Coscarelli from "us[ing] or permit[ting] others to use the By Chloe Word Mark or a design mark confusingly similar to the design elements of the By Chloe Design Mark," except in connection with the By Chloe business or future cookbooks, if approved in writing by BCHG. *Id.*

On February 8, 2018, BCHG filed a notice of opposition to Coscarelli's application to register the word mark "Chef Chloe" in connection with catering services and restaurant services. *See* ECF No. 151-34. BCHG argued in its opposition that the Chef Chloe mark was likely to "cause confusion" with the By Chloe mark because "the dominant portion" of both marks "is 'Chloe,'" "both marks begin with a single-syllable word" and "suggest that 'Chloe' is responsible for the services to follow," and the Chef Chloe mark was to be used in connection with "identical services" as the services for which the By Chloe mark is registered. *Id.* at 11-12.[6] On March 16, 2018, Coscarelli sent a letter through counsel to Haber, purporting to terminate the NFL Agreement, effective immediately. *See* ECF No. 151-38. The letter cited BCHG's February 8, 2018 opposition to Coscarelli's Chef Chloe trademark application and Section 8(a)(vi) of the NFL Agreement. *See id.*

---

[6]     Citations to ECF Nos. 151-34 refer to the page numbers automatically generated by the Court's ECF system.

The parties dispute whether this purported termination was effective.  As noted, the NFL

Agreement's termination provision is not triggered by any action on BCHG's part that is

"permitted under the Operating Agreement."  NFL Agreement § 8(a)(vi).  Defendants contend

that their opposition to Coscarelli's Chef Chloe trademark application was permitted under

Section 4.4(c) of the Operating Agreement, which provides that BCHG "may take any action it

deems reasonably necessary to protect the By Chloe Mark if the Company or ESquared

Hospitality determine in good faith that [Coscarelli] has violated this Section 4.4(c)."  OA

§ 4.4(c); *see* ECF No. 155 ("Defs.' MSJ Opp'n & Reply"), at 17.[7]  Plaintiffs argue persuasively

that Coscarelli's trademark registration application did not, in fact, violate Section 4.4(c),

because her application for the Chef Chloe *word mark* did not involve the use of either (1) the By

Chloe word mark or (2) a *design mark* confusingly similar to the By Chloe design mark.  *See*

ECF No. 149 ("Pls.' MSJ Mem. & Opp'n"), at 11.  Put differently, Section 4.4(c) does not

prohibit Coscarelli from using a word mark confusingly similar to the By Chloe word mark —

only from using the By Chloe word mark itself.  That said, to avoid triggering Coscarelli's right

to terminate the NFL Agreement, BCHG needed only to "determine in good faith" that

Coscarelli violated Section 4.4(c).  OA § 4.4(c).

With respect to the evidence of BCHG's subjective determination, Wasser was asked

during her deposition whether "[t]he decision by the BC Hospitality Group company to file [its]

opposition" was "made in good faith," and she responded, "I believe so."  ECF No. 151-6, at

360.  She then stated that she could not provide any information to support that conclusion that

---

[7]     Plaintiffs also cite BCHG's May 19, 2018 opposition to Coscarelli's application to
register the word mark "Chloe's Delicious" as the basis for Coscarelli's termination of the NFL
Agreement, *see* Pls.' MSJ Mem. & Opp'n 11, but that filing cannot support the March 16, 2018
purported termination because it happened later.

was not protected by attorney-client privilege.  *Id.* at 360-61.  Similarly, Haber stated during his deposition that he "rel[ied] on [his] IP counsel to tell [him]" whether the Chef Chloe mark was confusingly similar to the By Chloe mark.  ECF No. 151-20, at 309.   In subsequent email correspondence between counsel, BCHG confirmed its position that it "ha[d] *not* waived [attorney-client] privilege" as to "BCHG's decision to oppose trademark applications for . . . Chef Chloe."  ECF No. 151-39.

Plaintiffs now seem to suggest that they are entitled to an adverse inference with respect to BCHG's subjective determination that Coscarelli had violated Section 4.4(c) of the Operating Agreement because Defendants invoked attorney-client privilege to withhold relevant communications.  *See* Pls.' MSJ Mem. & Opp'n 11-12 ("ESquared Hospitality refused to waive privilege.  So ESquared cannot now rely on evidence of that subject." (citation omitted)); *see also* ECF No. 161 ("Pls.' MSJ Reply"), at 4.  The Court is unpersuaded.  Notably, Plaintiffs did not challenge Defendants' assertion of attorney-client by filing a motion to compel during discovery.  Although the Court expresses no view as to whether such a motion would have succeeded, the Second Circuit has stated that "[t]he assertion of an 'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the [attorney-client] privilege."  *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y.1996)).  Here, far from challenging Defendants' assertion of privilege, Plaintiffs submit that it is *undisputed* that "ESquared Hospitality has not waived the attorney-client privilege on advice about the trademark application[] of 'Chef Chloe.'"  Pls.' Rule 56.1 Statement ¶ 8.  Having expressly conceded that Defendants did not waive attorney-client privilege as to documents or other material that they

withheld during discovery, Plaintiffs cannot be heard to complain that they have been deprived of relevant evidence that is protected by that privilege.

Plaintiffs also point to emails from 2016 in which Haber and Wasser used profanities to describe Coscarelli and stated, "We milk till we can't!" in reference to the "Chloe" name as evidence of bad faith. *See* Pls.' MSJ Mem. & Opp'n 12; ECF No. 152-21. But these communications predate the filing of the Chef Coscarelli trademark application by at least eighteen months. *See* ECF Nos. 151-21, 152-14, 152-15, 152-19. Thus, they are not evidence that the later decision to oppose the trademark application was made in bad faith.

That means that Wasser's statement — that she "believed" the determination that Coscarelli violated Section 4.4(c) was "made in good faith" — is unrebutted by any contrary evidence in the record. It follows that no reasonable jury could find that Defendants' determination that Coscarelli breached Section 4.4(c) was made in bad faith, which is a necessary factual predicate of Plaintiffs' argument that Coscarelli validly terminated the NFL Agreement on March 16, 2018.[8]

### b. Plaintiffs' Interpretation of the Operating Agreement

Moreover, even if Coscarelli's purported termination of the NFL Agreement was valid, it would not follow that BCHG lost the right to use the By Chloe trademark to the extent permitted under the Operating Agreement. As the Court explained in its decision on Plaintiffs' motion for a preliminary injunction, BCHG's use of the By Chloe mark, "for whatever purpose, does not implicate Coscarelli's rights under the NFL Agreement" because the parties' agreements draw a

---

[8]     Plaintiffs argue in the alternative that, even if Coscarelli did not terminate the NFL Agreement, the Court "should not enforce" the agreement because it is an unreasonable restrictive covenant. Pls.' MSJ 12-14. Because the claims relevant to these motions concern only the validity of the NFL Agreement and not its enforcement, the Court need not and does not address this argument.

clear distinction between the rights to use Coscarelli's name, face, and likeness — which Coscarelli licensed to BCHG to a limited degree through the NFL Agreement and otherwise retained  — and the By Chloe mark, which BCHG "owns outright" (although the scope of its permissible use is limited by the Operating Agreement's approval requirement, as discussed above). *Coscarelli I*, 364 F. Supp. 3d at 224; *see also* OA § 4.4 ("The Company shall own all right, title and interest in and to the By Chloe Mark . . . ."); NFL Agreement § 1(b) ("All rights in and to the By Chloe Mark are reserved by the Company as stated in the Operating Agreement.").

Plaintiffs nevertheless argue that "BCHG lost *any* rights to use the [By Chloe] mark as a result" of Coscarelli's "termination of the NFL Agreement."  ECF No. 280 ("Pls.' MSJ Supp. Mem."), at 6 (emphasis added); *see also* Pls.' MSJ Mem. & Opp'n 14-17.  Their argument is based on Section 4.4(a) of the Operating Agreement, which provides that "[t]he Company shall own all right, title and interest in and to the By Chloe Mark . . . *subject to* the terms and conditions of this Operating Agreement and the NFL License Agreement."  OA § 4.4(a) (emphasis added).  But Plaintiffs do not identify any term or condition of either contract providing that termination of the NFL Agreement shall result in the loss of BCHG's ownership of the By Chloe mark.  Instead, they essentially argue that "subject to the terms and conditions of this Operating Agreement and the NFL License Agreement" means "as long as both this Operating Agreement and the NFL License Agreement remain in effect."  That interpretation is unambiguously foreclosed by the plain meaning of the contractual language.  *See, e.g.*, *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (cautioning that "language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation," and that a "court

should not find [a] contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning" (cleaned up)).[9]

In short, summary judgment on Count One of the Complaint is granted in favor of Plaintiffs to the extent that it is premised on BCHG's use of the By Chloe mark in connection with products and services other than fast casual vegan restaurants, such as retail packaged goods, in light of Judge Hochberg's Approved Projects ruling.  Summary judgment on Count One is otherwise granted in favor of BCHG because no reasonable jury could conclude that Coscarelli validly terminated the NFL Agreement on March 16, 2018, much less that any such termination resulted in the loss of BCHG's right to use the By Chloe mark in connection with fast casual vegan restaurants.

### 2.  The Fifth and Sixth Counterclaims and Fifth Counterclaim in the Colicchio Action

In a footnote, Plaintiffs make a conclusory, one-sentence, argument for summary judgment with respect to Defendants' Fifth and Sixth Counterclaims.  Pls.' MSJ Mem. & Opp'n 14 n.7.  Although "[i]t is generally inappropriate to make substantive arguments in footnotes," *In re MF Holdings Ltd. Inv. Litig.*, No. 11-CV-7866 (VM), 2014 WL 81484606, at *2 (S.D.N.Y. Mar. 11, 2014), the Court's holding with respect to Plaintiffs' Count One is dispositive.  In their Fifth Counterclaim, Defendants allege that Coscarelli breached the NFL Agreement by using her name in connection with other fast casual restaurants.  Counterclaims ¶¶ 142-56.  Plaintiffs argue that the Counterclaim should be dismissed because Coscarelli validly terminated the NFL

---

[9]      Under New York law, which governs here, *see* OA § 20.18, "[e]xtrinsic evidence cannot be used to vary the terms of a facially unambiguous contract," *HOP Energy, L.L.C. v. Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012).  Accordingly, the Court cannot and does not consider the extrinsic evidence that either party side offered in support of its preferred interpretation of Section 4.4(a).  *See* Pls.' MSJ Mem. & Opp'n 17-18; Defs.' MSJ Opp'n & Reply 11-13.  Thus, Plaintiffs' motion to strike certain such extrinsic evidence is denied as moot. *See* ECF No. 158.

Agreement.  Because the Court finds that she did not, Plaintiffs' motion must be denied.

Similarly, summary judgment is granted *sua sponte* in favor of Defendants on their Sixth

Counterclaim and their Fifth Counterclaim in the Colicchio Action, both of which seek a

declaration that Coscarelli's purported termination of the NFL agreement was not effective.

Counterclaims ¶¶ 157-66; *Colicchio v. BC Hospitality Group LLC*, ECF No. 31 ¶¶ 122-31.

### 3.  Cancellation of the "By Chloe" Trademark (Counts Seventeen and Eighteen)

In Counts Seventeen and Eighteen of the Complaint, Coscarelli and CC Hospitality

Holdings LLC bring a claim against BCHG for cancellation of the By Chloe registered

trademark (U.S. Reg. No. 4,833,607) on the grounds that the trademark falsely suggests an

association with Coscarelli and that it was obtained without Coscarelli's consent.  FAC ¶¶ 220-

46.  As relevant here, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, provides for the cancellation of

a registered trademark at any time if it "was obtained . . . contrary to the provisions of" Sections

1052(a), (b), or (c).  15 U.S.C. § 1064(3).  Section 1052(a) prohibits registration of a trademark

that "falsely suggest[s] a connection with persons, living or dead," *id.* § 1052(a), and Section

1052(c) prohibits registration of a trademark that "[c]onsists of or comprises a name, portrait, or

signature identifying a particular living individual except by his [or her] written consent," *id.*

§ 1052(c).

To establish a claim for trademark cancellation based on a false suggestion of connection,

a plaintiff must prove (1) "that the defendant's mark is the same or a close approximation of

plaintiff's previously used name or identity," (2) "that the mark would be recognized as such,"

(3) "that the plaintiff is not connected with the activities performed by the defendant under the

mark," and (4) "that the plaintiff's name or identity is of sufficient fame or reputation that when

the defendant's mark is used on its goods or services, a connection with the plaintiff would be

presumed." *Lesley Hornby a/k/a Lesley Lawson a/k/a Twiggy v. TJX Companies, Inc.*, 87 U.S.P.Q.2d 1411, 2008 WL 1808555, at *13 (T.T.A.B. 2008); *accord Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 2:19-CV-02702 (VAP) (JEMx), 2020 WL 8514835, at *11 (C.D. Cal. Sept. 3, 2020). With respect to the third element, the type of association required to defeat a cancellation claim is "a commercial connection, such as an ownership interest or commercial endorsement or sponsorship of applicant's services," between the trademark applicant and the person with whom the mark suggests a connection. *In re Sloppy Joe's Int'l Inc.*, 43 U.S.P.Q.2d 1350, 1997 WL 424966, at *3 (T.T.A.B. 1997); *accord In re White*, 80 U.S.P.Q.2d 1654, 2006 WL 2049628, at *6-8 (T.T.A.B. 2006).

Defendants are entitled to summary judgment on Plaintiffs' false suggestion of connection claim because any suggestion of connection with Coscarelli was not false when the By Chloe trademark was registered. It is undisputed that, at the time of registration, Coscarelli was a part-owner — through her wholly owned LLC — of the company that registered the mark. Section 1064(3) provides for cancellation of a trademark that "*was* obtained . . . contrary to the provisions of" Section 1052(a), which bars registration of a mark falsely suggesting a connection. 15 U.S.C. § 1064(3) (emphasis added). By the statute's plain terms, therefore, the relevant inquiry is whether the suggestion of a connection was false when the trademark was registered, not when the trademark cancellation claim is filed. *See, e.g.*, *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 194 (3d Cir. 1990); *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 125 (D.D.C. 2003), *overruled on other grounds by Matal v. Tam*, 137 S. Ct. 1744 (2017); *Hornby*, 2008 WL 1808555, at *4. That conclusion is bolstered by the fact that Congress chose to use the present tense in other clauses of Section 1064(3), which provide for the cancellation of a mark that "is functional" or "has been abandoned." 15 U.S.C. § 1064(3); *see*

*Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) (noting "the presumption that the use of different words" — or, here, verb tenses — "within the same statutory scheme is deliberate" (internal quotation marks omitted)), *cert. denied*, 140 S. Ct. 2761 (2020).  In short, no reasonable jury could conclude that the By Chloe trademark *falsely* suggested a connection with Coscarelli when it was registered on October 13, 2015, because it is undisputed that Coscarelli in fact had the requisite commercial connection to the trademark applicant, BCHG, at that time.  BCHG is therefore entitled to summary judgment on Count Seventeen.

Plaintiffs' claim for cancellation of the By Chloe trademark based on the purported lack of written consent also fails as a matter of law.  That is because Coscarelli plainly consented in writing to the trademark's registration.  Section 4.4(a) of the Operating Agreement provides that "[t]he Company shall own all right, title and interest in and to the By Chloe Mark, *including the right to register the By Chloe Mark with the U.S. Patent & Trademark Office.*"  OA § 4.4(a) (emphasis added).  Coscarelli signed the Operating Agreement three times, once in her capacity as a Manager of BCHG, once on behalf of Chef Chloe LLC, and once on a separate signature line beneath the heading, "Acknowledged and Agreed as to the Rights and Obligations Set Forth Herein."  *Id.* 58.  Additionally, Haber sent an email on August 8, 2014, informing Coscarelli that counsel planned to file an application for the By Chloe trademark, and Coscarelli responded the next day, "Great news.  Thanks!"  ECF No. 141-7.  In short, Coscarelli did consent in writing to BCHG's registration of the By Chloe trademark.

Plaintiffs' arguments to the contrary are unpersuasive.  First, they note that while Coscarelli signed the Operating Agreement, she is not a party to it.  *See* Pls.' MSJ Mem. & Opp'n 29; *see also* OA 1 (providing that the Operating Agreement was "entered into by and Among ESquared Hospitality LLC . . . and Chef Chloe LLC").  To support this argument,

Plaintiffs rely on the Court's prior decision that Coscarelli was not bound to arbitrate the claims that she brought solely in her individual capacity, given that Section 20.19 of the Operating Agreement requires only arbitration of "[a]ll claims, disputes, deadlocks, and other matters in question *between the parties*," and Coscarelli is not a party to the Operating Agreement.  OA § 20.19 (emphasis added); *see Coscarelli I*, 364 F. Supp. 3d at 217-19; Pls.' MSJ Mem. & Opp'n 29 (citing *Coscarelli I*, 364 F. Supp. 3d at 217-19).  But there, the question was not whether Coscarelli consented to the arbitration clause — which she plainly did, by virtue of signing the Operating Agreement — but rather whether claims brought in her individual capacity fell within its scope.  Thus, the Court's ruling that Coscarelli was not a party to the Operating Agreement does not support Plaintiffs' argument that she did not consent to its provisions as a signatory of the Agreement.  Moreover, and in any event, Coscarelli *is* a party to the NFL Agreement.  *See* NFL Agreement 1 (providing that the NFL Agreement was "made and entered into . . . by and among Chloe Coscarelli . . . and [BCHG]"); *see also Coscarelli I*, 364 F. Supp. 3d at 218-19 (S.D.N.Y. 2019) (comparing the Operating Agreement and the NFL Agreement and noting that Coscarelli is a party to the latter).  And Section 1(b) of the NFL Agreement provides that "[a]ll rights in and to the By Chloe Mark are reserved by the Company as stated in the Operating Agreement."  NFL Agreement § 1(b).  Thus, were there any doubt that Coscarelli consented to registration of the By Chloe mark through the Operating Agreement, there is no question that she consented to it by virtue of being a party to the NFL Agreement.

Second, Plaintiffs argue that even if Coscarelli consented to BCHG's registration of the By Chloe mark, BCHG was required to record her consent with the Trademark Trial and Appeal Board and failed to do so.  *See* Pls.' MSJ Mem. & Opp'n 30.  That may be so, but it does not follow that a trademark may be cancelled where the trademark owner establishes that written

consent was obtained, even if not filed.  Plaintiffs cite no authority for that proposition, and the Court has found none.  Plaintiffs rely on *In re O'Neill Beverage Co., Ltd.*, Serial No. 85152684, 2013 WL 4635972 (T.T.A.B. Aug. 15, 2013), but that case is readily distinguishable.  For starters, in *O'Neil*, the Trademark Trial and Appeal Board did not consider a claim to cancel an existing trademark, but rather an application for registration in the first instance.  *See id.* at *1. Further, the Board affirmed the refusal to register a trademark that included the names of two living individuals where "[t]he record . . . include[d] no written document(s) or instrument(s) signed by" those individuals "which would constitute their express written consent to applicant's registration of its mark comprising their names," finding that evidence showing implied consent to the use of the mark was not sufficient.  *Id.* at *7.  By contrast, the record here includes several documents that constitute express written consent.

Finally, Plaintiffs argue that Defendants exceeded the scope of Coscarelli's consent by registering the By Chloe trademark in the category of "Restaurant and catering services," instead of the narrower "fast casual vegan restaurants."  *See* Pls.' MSJ Mem. & Opp'n 29.  The Court is not persuaded, particularly given that the Operating Agreement contemplates the use of the By Chloe mark in connection with "Approved Projects" other than fast casual vegan restaurants. *See* OA § 4.1 (defining "Approved Projects" as "any project related to the food and beverage industry that utilizes one or more of the NFL Rights *or the By Chloe Mark*, and which has been pre-approved in writing by [Chef Chloe LLC]" (emphasis added)).  Put differently, the Court declines to read into the Operating Agreement an implied restriction on BCHG's right to register the By Chloe trademark solely in categories of projects that were already approved.

In short, it is beyond dispute that Coscarelli consented to the registration of the By Chloe mark.  It follows that BCHG is entitled to summary judgment on Count Eighteen.

**4.    Declaratory Judgment as to Coscarelli's Rights to Use Her Name in Commercial Activities (Count Three)**

In Count Three of the Complaint, Coscarelli and CC Hospitality LLC bring a claim against ESquared and BCHG for "a declaratory judgment that [Coscarelli] may use her own name in the sale of packaged foods and beverages and use her name as a chef."  FAC ¶ 96. "While the Court has broad discretion to award declaratory relief, an exercise of that discretion must await a specific dispute over imminent activity."  *Rodriguez v. Carson*, 377 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) (internal quotation marks omitted).  Here, it is far from clear that such a dispute exists.  In the Complaint, which was filed on February 21, 2019, Plaintiffs allege that, at an unspecified time, BCHG "tried to oppose CC Hospitality's registration and use of the mark [Chloe's Delicious] in connection with 'sauces; salad dressings; savory sauces used as condiments; chutneys; packaged meals consisting primarily of pasta or rice; mixes for making baking doughs and batter.'"  FAC ¶ 90.  They also allege that, in February and May 2018, and at other unspecified times, counsel for BCHG threatened St. Roch Market with legal action if the market continued to allow Coscarelli to operate as a "chef and vendor . . . under the name 'Chef Chloe and the Vegan Café.'"  *Id.* ¶¶ 94-95.  But Plaintiffs' Rule 56.1 Statement, filed on February 7, 2020, does not contain any facts indicating whether they continue to pursue the registration or use of the Chloe's Delicious trademark, *see* Pls.' Rule 56.1 Statement, and in the same filing, Plaintiffs acknowledge that "'Chef Chloe and the Vegan Café' continues to operate at its original location in the St. Roch Market," Pls.' Rule 56.1 Resp. ¶ 25.  To be sure, they go on to state that "Defendants' unlawful actions have . . . prevented 'Chef Chloe and the Vegan Café' from expanding to other St. Roch Market food hall locations," *id.*, but they fail to specify any "specific dispute over imminent activity" that they wish for the Court to adjudicate, much less the parties' legal theories or any evidence to support them.  Accordingly, on this record, the

Court declines to grant a declaratory judgment as to Coscarelli's rights to use her name and grants summary judgment in favor of Defendants on Count Three.

### 5. Right of Publicity (Count Seven)

In Count Seven of the Complaint, Coscarelli brings a claim against ESquared and BCHG, alleging that their use of her name, face, and likeness violates her rights under Sections 50 and 51 of the New York Civil Rights Law. *See* FAC ¶¶ 131-65. Those statutory provisions bar the use of certain publicity rights "without . . . written consent." N.Y. Civ. Rights Law §§ 50-51. Because Coscarelli consented in writing to the use of her name, face, and likeness through the NFL Agreement, Plaintiffs' right of publicity claim is predicated solely on Defendants' conduct "after [Coscarelli] terminated the NFL Agreement on March 16, 2018." Pls. 56.1 Statement ¶ 20; *see also* Pls.' MSJ Mem. & Opp'n 20-21 ("Following [Coscarelli's] termination of the NFL Agreement on March 16, 2018, the Defendants violated [her] right of publicity by continuing to exploit her name, face and likeness for their commercial purposes without her consent."). Given the Court's conclusion that no reasonable jury could conclude that Coscarelli validly terminated the NFL Agreement on March 16, 2018, it follows that Defendants are entitled to summary judgment on Count Seven.

### 6. Tortious Interference (Count Four)

In Count Four of the Complaint, Coscarelli brings a claim against ESquared and BCHG for tortious interference with a business relationship. Plaintiffs allege that BCHG "intentionally and without justification interfered" with Coscarelli's business relationship with St. Roch Market, "by threatening unsupported legal actions against St. Roch Market if it did not stop referencing [Coscarelli], or displaying her name in connection with her work." FAC ¶ 99. As evidence to support their claim, Plaintiffs point to a May 9, 2018 letter from counsel to BCHG

stating that the advertising and promotion of "Chef Chloe and the Vegan Café" — a vegan restaurant on the premises of St. Roch Market in Miami — violated BCHG's rights under the NFL Agreement and infringed its rights to the By Chloe trademark.  *See* Pls.' 56.1 Statement ¶ 21; ECF No. 151-28 ("Threat Letter").  Plaintiffs also cite Coscarelli's testimony during her deposition that her relationship with St. Roch Market had been adversely affected by "the hassle and bullying of dealing with [BCHG's] legal letters."  *See* Pls.' 56.1 Statement ¶ 22; ECF No. 151-36, at 301-03.  Coscarelli testified that she had not been invited to expand Chef Chloe and the Vegan Café to additional St. Roch Market locations and that she had a "hunch" this was because St. Roch Market did not want to deal with more "frivolous threats" from BCHG.  ECF No. 151-36, at 301-03.

To establish a claim for tortious interference under New York law, "a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (internal quotation marks omitted).  Applying these standards here, Plaintiffs fail to identify any evidence that BCHG acted for a wrongful purpose or used dishonest, unfair, and improper means.  The Second Circuit has recognized "the possibility that a defendant who has harassed a plaintiff with meritless litigation may have utilized wrongful means," but only if the litigation was "frivolous, objectively unreasonable, or patently meritless."  *16 Casa Duse*, 791 F.3d at 262 (cleaned up) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 191 (2004)); *see also Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir. 1986) (holding that the threat of litigation also may constitute wrongful conduct for purposes of a claim for tortious interference, but only if the threat was made "in bad

faith, intending only to harass the third parties"). No reasonable jury could conclude that the letter that BCHG sent through counsel to St. Roch Market meets that standard. At a minimum, for the reasons discussed above, it was not frivolous to argue that the name "Chef Chloe & the Vegan Café" was confusingly similar to the By Chloe trademark or that the use of Coscarelli's name, face, and likeness violated BCHG's exclusive license to the use of those rights in connection with fast casual vegan restaurants pursuant to the NFL Agreement. *See* Threat Letter; NFL Agreement § 1(a) (providing that Coscarelli licensed to BCHG "the right to use (including the right to authorize others to use) [her NFL rights] . . . throughout the world . . . on an exclusive basis solely in connection with the operation, marketing and promotion of the Restaurants"). In the absence of any evidence of a wrongful purpose, Defendants are entitled to summary judgment on Count Four.[10]

### 7. Copyright Infringement (Count Fourteen)

In Count Fourteen of the Complaint, CKC Sales LLC brings a claim against ESquared and BCGH for copyright infringement based on Defendants' online publication of recipes that are identical or nearly identical to recipes that Coscarelli included in her copyrighted cookbooks, *Chloe's Kitchen*, *Chloe's Vegan Desserts*, and *Chloe's Vegan Italian Kitchen*. FAC ¶¶ 188-93.[11]

---

[10]   In light of that conclusion, the Court need not and does not address Defendants' alternative argument that Plaintiffs did not have a business relationship with St. Roch Market because they were not parties to the relevant vendor agreements. *See* Defs.' MSJ Mem. 9.

[11]   Images of Coscarelli's recipes, as presented in her cookbooks, are included in the Complaint, *see* FAC ¶ 192, but — strangely — she failed to introduce or authenticate the recipes as evidence at the summary judgment stage. Nevertheless, as there does not appear to be any dispute that the images are authentic, the Court will consider them. *Cf. Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc*., 969 F.2d 1384, 1389 (2d Cir. 1991) ("[W]hen the evidence offered in opposition to a motion . . . for summary judgment is defective in form but is sufficient to apprise the court that there is important and relevant information that could be proffered to defeat the motion, summary judgment ought not to be entered."); *see also I.M. v. United States*, 362 F. Supp. 3d 161, 187 n.42 (S.D.N.Y. 2019) ("[A]lthough a district court may only consider admissible evidence at the summary judgment stage, a plaintiff need not introduce evidence in a

In general, "[t]o establish a claim of copyright infringement, two elements must be proven:
(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are
original." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (cleaned up).  Further, in
order "to satisfy the second element, a plaintiff must demonstrate that: (1) the defendant has
actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity
exists between the defendant's work and *the protectible elements of* [the] plaintiff's work."  *Id.*
(second emphasis added) (cleaned up).  "The standard test for substantial similarity between two
items is whether an ordinary observer, unless he set out to detect the disparities, would be
disposed to overlook them, and regard the aesthetic appeal as the same." *Peter F. Gaito
Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (cleaned up).  "Under
certain circumstances, when the works at issue contain considerable elements from the public
domain that are unprotectible by copyright, the usual 'ordinary observer' test becomes more
discerning." *LaPine v. Seinfeld*, No. 08-CV-128 (LTS), 2009 WL 2902584, at *5 (S.D.N.Y.
Sept. 10, 2009) (internal quotation marks omitted).  In such cases, the Court "must attempt to
extract the unprotectible elements from our consideration and ask whether the protectible
elements, standing alone, are substantially similar." *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d
996, 1002 (2d Cir. 1995) (emphasis omitted).  The Second Circuit has instructed courts,
however, "not to dissect the works at issue into separate components and compare only the
copyrightable elements" because "[t]o do so would take the 'more discerning' test to an extreme,
which would result in almost nothing being copyrightable." *Boisson v. Banian, Ltd.*, 273 F.3d

---

form that would be admissible at trial in order to survive a motion for summary judgment."
(internal quotation marks omitted)).

262, 272 (2d Cir. 2001).  Instead, the Court must be "guided by comparing the total concept and

feel of the contested works."  *Id.* (internal quotation marks omitted).

Significantly, it is well established that "[n]o author may copyright facts or ideas.  The

copyright is limited to those aspects of the work — termed 'expression' — that display the stamp

of the author's originality."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991)

(quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985)); *accord*

*Peter F. Gaito Architecture*, 602 F.3d at 67.  This "fact/expression dichotomy," which derives

from Article I, section 8, clause 8 of the Constitution, "limits severely the scope of protection in

fact-based works" to the "original selection or arrangement of facts," but never "the facts

themselves."  *Feist*, 499 U.S. at 345-51.  Consistent with this constitutional limitation, the

Copyright Act of 1976 provides that "[i]n no case does copyright protection for an original work

of authorship extend to any idea, procedure, process, system, method of operation, concept,

principle, or discovery, regardless of the form in which it is described, explained, illustrated, or

embodied in such work."  17 U.S.C. § 102(b).

Applying the fact/expression dichotomy to recipes, courts have held that "the lists of

required ingredients and the directions for combining them to achieve the final products" are not

eligible for copyright protection, although original elements reflecting the author's creative

expression — such as "musings about the spiritual nature of cooking," "reminiscences [the

author] associate[s] with the wafting odors of certain dishes in various stages of preparation,"

and "suggestions for presentation, advice on wines to go with the meal, or hints on place settings

and appropriate music" — may be protectible.  *Publ'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d

473, 480-81 (7th Cir. 1996); *accord Lambing v. Godiva Chocolatier*, 142 F.3d 434 (6th Cir.

1998); *see also* 37 C.F.R. § 202.1(a) (providing that the "mere listing of ingredients or contents"

is "not subject to copyright"); *see also LaPine*, 2009 WL 2902584, at *7 (noting that "individual recipes do not necessarily qualify for copyright protection" (citing *Publ'ns. Int'l*, 88 F.3d at 481)), *aff'd*, 375 F. App'x 81 (2d Cir. 2010) (summary order).

These principles doom Plaintiffs' claims here. That is because the elements that Defendants allegedly copied from Coscarelli's cookbooks are primarily lists of ingredients and directions for combining them. For example, Plaintiffs allege that Defendants copied, nearly verbatim, the ingredients and steps in the recipe for peanut butter dog treats that Coscarelli published in her *Chloe's Kitchen* cookbook. But — critically — they make no argument that the commentary (stating, "Now, something for our furry friends! There's a whole lot of tail-waggin' and lip-smackin' when my pups smell these all-natural treats baking. These also make great gifts: Wrap these treats and, when you tie them off, attach a dog-bone cookie cutter and a copy of this recipe") was copied. FAC ¶¶ 192(e), 192(f). Whereas the latter may be entitled to copyright protection, the former plainly is not.

Plaintiffs seek to distinguish Coscarelli's "exciting, unique — and above all — original" recipes from the cases cited above, arguing that her recipes "bear no resemblance" to the "simple — and unoriginal — recipes not protected by copyright." Pls.' MSJ Mem. & Opp'n 28. But the Supreme Court has held that "[n]o matter how much original authorship the work displays, the facts and ideas it exposes are free for the taking. The very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas." *Feist*, 499 U.S. at 349 (cleaned up). It is the "selection and arrangement" of factual materials that may be subject to copyright. *Id*. Here, the layout and color scheme of the two sets of publications of recipes are entirely different. Defendants' online version of the recipes features a two-column layout with the

34

ingredients shown on the left and the steps on the right and black and white lettering, while Plaintiffs' version uses a single column and colorful lettering for the title and section headers. *Cf. Boisson*, 273 F.3d at 274 ("In particular, the overwhelming similarities in color choices lean toward a finding of infringement"). And Plaintiffs' failure to submit complete copies of her cookbooks and Defendants' online recipe collection prevents a reasonable jury from making the requisite finding of substantial similarity between the collections to support a claim based on the selection or arrangement of a compilation. *See Matthew Bender & Co.. v. West Pub. Co.*, 158 F.3d 674, 681-82 (2d Cir. 1998) ("If originally combined, a selection or arrangement of underlying materials that are themselves unoriginal may support copyright protection.").

Plaintiffs therefore fail to allege that Defendants copied any protectible elements of Coscarelli's recipes. *Cf. Barbour v. Head*, 178 F. Supp. 2d 758, 764 (S.D. Tex. 2001) (denying summary judgment on a claim of copyright infringement with respect to "recipes [that] contain[ed] *more than* mechanical listings of ingredients and cooking directions," including original "commentary" and "suggestions on the presentation of food" (emphasis added)).

In short, Count Fourteen does not survive summary judgment because Plaintiffs fail to allege that Defendants copied any protectible material. *See, e.g.*, *Peter F. Gaito Architecture*, 602 F.3d at 63 ("[I]t is entirely appropriate for a district court to resolve [the] question [of substantial similarity] as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." (internal quotation marks omitted).[12] Moreover, to the extent the copyright infringement claim is predicated on

---

[12]    In light of that conclusion, the Court need not and does not address Defendants' alternative argument that Plaintiffs' copyright infringement claim fails because BCHG owns Coscarelli's preexisting recipes pursuant to the Operating Agreement, *see* Defs.' MSJ Mem. 12-

Coscarelli's purported termination of the NFL Agreement on March 16, 2018, the claim also fails for the third independent reason, discussed above, that no reasonable jury could conclude that purported termination was valid. *See* Coscarelli Decl. ¶ 14 ("I was shocked to discover the extent of recipes, texts, and pictures from my cookbooks that were on the By Chloe website after I terminated the NFL Agreement."); *id.* ¶ 15 ("I never provided any consent or license for ESquared Hospitality and [BCHG] to use this copyrighted material for By Chloe . . . after I terminated the NFL Agreement.").

### 8.  Breach of the Operating Agreement (Counterclaim Seven)

Defendants' Counterclaim Seven — for breach of the Operating Agreement — also concerns the recipes published in Coscarelli's cookbooks. *See* Counterclaims ¶¶ 167-97. Defendants allege that, pursuant to the Operating Agreement, all recipes that Coscarelli developed before entering into the Agreement are confidential information proprietary to BCHG and that Coscarelli's subsequent publication of recipes that are "identical to, inspired by, or substantially adapted from" such recipes in her 2018 cookbook *Chloe Flavor* violated the Operating Agreement's confidentiality provisions. Counterclaims ¶ 186; *see* OA § 8.1. Counterclaim Seven rests on a veritable web of contractual definitions, beginning with Section 8.1 of the Operating Agreement, which provides that "[n]o [Member and Manager] shall, directly or indirectly, disclose, use or make known for his or another's benefit any Confidential Information or use such Confidential Information in any way except in the best interest of [BCHG and its affiliates] in performance of the [Member and Manager's] duties under this Agreement." OA § 8.1(b). These obligations survive any Manager's removal or resignation, as

---

14 — although the Court addresses that contractual dispute to some extent in connection with Plaintiffs' motion for summary judgment on Counterclaim Seven.

well as the sale, exchange, transfer, or forfeiture of any Member's Membership Interest. *See id.*

§ 8.1(e).

With respect to the scope of Coscarelli's surviving confidentiality obligations,

"Confidential Information" is defined to include "Company Recipes, whether or not made

publicly available." *Id.* § 8.1(a). "Company Recipes" are defined, in turn, as "the aggregate of

(a) the Company Modified Recipes, and (b) all of the food and beverage recipes developed by or

on behalf of the Company for use in connection with the Business." *Id.* § 1.1. Meanwhile,

"Company Modified Recipes" are defined as "recipes resulting from any modification of any

kind of any CC Existing Recipes that have been so modified (once or more than once for any

particular recipe) and used in connection with the Business; provided, however, that for the

avoidance of doubt the Company Modified Recipes shall not include the unmodified CC

Existing Recipes." *Id.* That leads to the definition of "CC Existing Recipes" as those recipes

that are "the basis for any Company Modified Recipes," *id*. § 1.1, and "that are included in the

CC Entity Pre-Existing IP" — meaning "any intellectual property rights that were developed by

or on behalf of [Coscarelli or her entity or affiliates] prior to the Effective Date [of the Operating

Agreement], or independently from ESquared Hospitality or its Affiliates, all of which are

proprietary to [Coscarelli or her entity or affiliates] and shall remain [their] property," although

"Company IP may include derivatives of . . . CC Entity Pre-Existing IP," *id.* § 4.3(b). "The

initial Members acknowledge," the Operating Agreement continues, "that, in connection with the

development of the [fast casual vegan restaurants] and commercializing of recipes, the CC

Existing Recipes have been modified into Company Modified Recipes. If there are any CC

Existing Recipes that do not get modified into Company Modified Recipes," the Operating

Agreement continues, "the Members shall create and attach a schedule of such recipes and attach

the same hereto as *Exhibit E* (which exhibit may be modified by the Members from time to time

as appropriate)." *Id.* § 1.1. It is undisputed that no recipes were ever added to Exhibit E. *See*

Defs.' 56.1 Statement ¶ 32; Pls.' 56.1 Resp. ¶ 32; *see also* OA Ex. E (listing "None" under

"Unmodified CC Existing Recipes" (capitalization altered)).

Defendants argue that because no recipes were ever added to Exhibit E, *all* recipes that

Coscarelli developed before the Operating Agreement took effect are Company Modified

Recipes, which Coscarelli may not disclose except in the best interests of BCHG, even after her

termination and the recapture of her Membership Interest. *See* ECF No. 143 ("Defs.' MSJ

Mem."), at 12-14; Defs.' MSJ Opp'n & Reply 27.  In light of that, Defendants allege that

Coscarelli breached her confidentiality obligations pursuant to Section 8.1 of the Operating

Agreement by publishing such recipes in *Chloe Flavor*. *See* Counterclaims ¶¶ 173-74, 176, 178-

80, 186, 188, 195.  Plaintiffs dispute Defendants' interpretation of the Operating Agreement and

contend that Coscarelli's preexisting recipes are subject to the confidentiality provisions of

Section 8.3 only to the extent that they were actually modified for BCHG's use. *See* Pls.' MSJ

Mem. & Opp'n 25-26.  For this argument, Plaintiffs rely on Section 4.3(b), which provides, in

part, that "any intellectual property rights that were developed" by Coscarelli before the

Operating Agreement took effect "or independently from ESquared or its Affiliates . . . shall

remain [her] property." *See id.*; OA § 4.3(b).  The parties also dispute whether a footnote in the

Garay Arbitration Award that seems to adopt Defendants' interpretation of the Operating

Agreement should be given collateral estoppel effect, as Defendants contend, or is mere dictum,

as Plaintiffs contend. *See* Defs.' MSJ Mem. 14 & n.6; Pls.' MSJ Mem. & Opp'n 27; *see also*

Garay Final Award 11 n.4.

Ultimately, the Court need not resolve these disputes, because even assuming that Defendants are correct that all of Coscarelli's preexisting recipes are subject to the confidentiality agreements set forth in Section 8.3 of the Operating Agreement — whether by virtue of collateral estoppel or otherwise — Defendants fail to adduce any evidence to support their allegation that Coscarelli breached her contractual confidentiality obligations.  That is, they point to no evidence to support their contention that any of the recipes that Coscarelli published in *Chloe Flavor* are, in fact, confidential information by virtue of their similarity to recipes that she developed before the Operating Agreement took effect.  Plaintiffs are therefore entitled to summary judgment on Counterclaim Seven.[13]

### 9. Trademark Infringement, Unfair Competition, and Cyberpiracy Claims (Counts Eight, Eleven, Thirteen, Fifteen, and Sixteen)

In Counts Eight, Fifteen, and Sixteen of the Complaint, Coscarelli and CC Hospitality bring claims against ESquared and BCHG for violation of the Lanham Act's unfair competition, trademark infringement, and cyberpiracy provisions, 15 U.S.C. §§ 1114, 1125(a), 1125(d).  FAC ¶¶ 166-68, 194-219.  In Counts Eleven and Thirteen of the Complaint, Coscarelli brings analogous claims for New York common law unfair competition and trademark infringement. *Id.* ¶¶ 173-74, 177-87.  "A plaintiff asserting either a trademark infringement claim under federal or New York law or a federal claim of unfair competition must establish a likelihood of consumer confusion as to the source or sponsorship of defendant's products." *Joules Ltd. v. Macy's Merch. Grp., Inc.*, 695 F. App'x 633, 636 (2d Cir. 2017) (summary order) (citing cases).  Similarly, to establish a claim for cyberpiracy under the Lanham Act, a plaintiff must establish

---

[13]     In light of that conclusion, the Court need not and does not address Plaintiffs' argument that the confidentiality provisions of the Operating Agreement constitute an impermissible restrictive covenant as to public information.  *See* Pls.' MSJ Mem. & Opp'n 36-37; Pls.' MSJ Reply 6-7.

that the defendant used a domain name that is "identical or confusingly similar" to a distinctive mark.  15 U.S.C. § 1125(d)(1)(A)(ii)(I).

Defendants are entitled to summary judgment on the Lanham Act claims because Plaintiffs cite no evidence suggesting a likelihood of confusion between Defendants' allegedly infringing uses and the Chef Chloe trademark.  Plaintiffs argue that "likelihood of confusion is established as a matter of law" when "an ex-licensee continues to use a mark after its license expires," Pls.' MSJ Mem. & Opp'n 32 n.16 (quoting *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009)), but that proposition is irrelevant in light of the Court's conclusion that Plaintiffs did not terminate either the NFL Agreement or the Operating Agreement as a matter of law.  Instead, to survive summary judgment, Plaintiffs must establish that a reasonable jury could find a "a probability of confusion affecting numerous ordinary prudent purchasers," *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (cleaned up), in light of the eight-factor balancing test first articulated by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961); *see, e.g.*, *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 327-28 (2d Cir. 2020).  Because Plaintiffs fail to identify *any* evidence that could support a finding of likelihood of confusion under that test, their claims must be and are dismissed.  *See, e.g.*, *I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, No. 20-1988-CV, 2021 WL 3625342, at *2 (2d Cir. Aug. 18, 2021) (amended summary order) (granting summary judgment on a trademark infringement claim because the non-moving party "fail[ed] to adduce evidence showing that there is a disputed factual issue as to whether there is a likelihood of confusion between the marks").

Moreover, with respect to Defendants' use of the "bychefchloe" domain name and social media handles, Defendants are also entitled to summary judgment on Plaintiffs' Lanham Act and

analogous state law claims because Coscarelli indisputably consented to their use.  To establish a

claim for unfair competition or trademark infringement, a plaintiff must prove, among other

things, that the defendant used the mark "without the plaintiff's consent."  *1-800 Contacts, Inc. v.*

*WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (emphasis added) (addressing trademark

infringement under the Lanham Act); *see also, e.g.*,  *Lopez v. Nike, Inc.*, No. 20-CV-905 (PGG)

(JLC), 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021) (addressing unfair competition under

the Lanham Act); *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 400 (2d Cir. 2021)

(summary order) (noting that "New York common law claims for trademark infringement are

analyzed under the same framework as . . . Lanham Act claims"); *Coty Inc. v. Excell Brands,*

*LLC*, 277 F. Supp. 3d 425, 440 (S.D.N.Y. 2017) (noting that "[c]ourts use the same standards to

evaluate unfair competition claims under New York law" as under the Lanham Act, "except that

a plaintiff must prove 'bad faith' in order to prevail under New York common law").  Relatedly,

to establish a claim for cyberpiracy under the Lanham Act, a plaintiff must prove that the

defendant "ha[d] a bad faith intent to profit from [the plaintiff's] mark," and the statute provides

that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the

person believed and had reasonable grounds to believe that the use of the domain name was a

fair use or otherwise lawful."  15 U.S.C. §§ 1125(d)(1)(A)(i), 1125(d)(1)(B)(ii).

    Here, Plaintiffs do not dispute that Coscarelli herself "suggested" that BCHG "try[] to

secure @bychefchloe as a Twitter handle" and "believed it was a 'fine idea' that [BCHG] use

bychefchloe as an internet domain and for its social media handles, given the unavailability of

'bychloe' for such purposes."  Pls.' 56.1 Resp. ¶¶ 47-48.  To the extent Plaintiffs argue that

Coscarelli later withdrew her consent by terminating the NFL Agreement on March 16, 2018, *see*

Pls.' MSJ Mem. & Opp'n 32-33; Coscarelli Decl. ¶ 12, that argument necessarily fails in light of

the Court's conclusion that no reasonable jury could find the purported termination valid.

Because lack of consent is a required element of an unfair competition or trademark infringement

claim, those claims fail as a matter of law to the extent they are predicated on Defendants' use of

the "bychefchloe" name online.  Similarly, with respect to Plaintiffs' cyberpiracy claim, no

reasonable jury could find that Defendants acted with the requisite bad faith intent given

Plaintiffs' consent; indeed, at least with respect to the Twitter handle, the undisputed record

reflects that Coscarelli herself *suggested* Defendants' use of "@bychefchloe."

In short, Plaintiffs' unfair competition, trademark infringement, and cyberpiracy claims

fail as a matter of law because no reasonable jury could find a likelihood of confusion, and — at

least with respect to Defendants' use of the domain name and social media handle "bychefchloe"

online — because there is no dispute that Coscarelli consented to the allegedly infringing use.

**10. Unjust Enrichment (Count Twelve)**

Count Twelve of the Complaint consists of just two allegations: (1) Plaintiffs

"incorporate[] by reference" prior paragraphs of the Complaint; and (2) that "[t]hrough the acts

described above, Defendants have become unjustly enriched at [Coscarelli's] expense."  FAC

¶¶ 175-76.  In their Rule 56.1 Statement, Plaintiffs do not identify any evidence to support their

unjust enrichment claim.  *See generally* Pls.' Rule 56.1 Statement.  Moreover, in responding to

Defendants' argument that Plaintiffs' unjust enrichment claim must be dismissed as duplicative

of their claims for breach of contract, *see* Defs.' MSJ Mem. 11, Plaintiffs state that their unjust

enrichment claim "is not premised on unauthorized use of [Coscarelli's] publicity rights," Pls.'

MSJ Mem. & Opp'n 25, but they fail to explain what it *is* premised on.  In light of Plaintiffs'

failure to make any particularized factual allegations with respect to their unjust enrichment

claim, much less to identify any evidence to support it, Defendants are entitled to summary

judgment on Count Twelve. *See, e.g.*, *Fobbs v. City of New York*, No. 15-CV-6736 (PKC), 2017 WL 2656207, at *6 (S.D.N.Y. June 19, 2017) (granting summary judgment and dismissing the plaintiff's claim because he "failed to come forward with evidence that would preclude summary judgment . . . and in any event, the complaint itself fails to state a plausible claim for relief as it is entirely devoid of any factual support").

### 11. Legal Fees (Counterclaim Eight)

In Counterclaim Eight, to the extent relevant here, Defendants seek reimbursement from Coscarelli for $5,000 in legal fees that they allegedly incurred as a result of an endorsement deal that Coscarelli made with Belvedere Vodka, which "put the liquor license of ESquared in jeopardy," and $25,515 in legal fees that they allegedly incurred as a result of an "overbroad, cumulative, unduly burdensome, vexatious, [and] oppressive" subpoena that Coscarelli served on BCHG's public relations firm, Sunshine Sachs, for which BCHG reimbursed the firm. *See* Counterclaims ¶¶ 204-215. Plaintiffs move for partial summary judgment on Counterclaim Eight to the extent it is predicated on these legal fees because, they argue, "such amounts were or could have been sought by BCHG in the prior arbitration between the parties" before Arbitrator Garay. Pls.' MSJ Mem. & Opp'n 38. Therefore, Plaintiffs argue, Counterclaim Eight is barred by res judicata to the extent it is predicated on such fees. *See id.*

The Court agrees. Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that prior action." *EDP Med. Comp. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007). It applies when "an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Hecht v. United Collections Bureau, Inc.*, 691 F.3d 218,

221-22 (2d Cir. 2012). It is well established that "res judicata . . . appl[ies] to issues resolved by arbitration where there has been a final determination on the merits." *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267-68 (2d Cir. 1997) (internal citations omitted). "Under New York law," however, "an arbitral award has preclusive effect only when it is final, *i.e.*, when (a) the award has been confirmed, (b) vacatur has been denied on the merits, or (c) no vacatur motion is pending and the time limit in which to file a vacatur motion has expired." *Glob. Gold Mining, LLC v. Ayvazian*, 612 F. App'x 11, 13 (2d Cir. 2015) (summary order) (internal quotation marks and citations omitted).

Here, the requirements for application of res judicata have been met. The Garay Arbitration Award is a final judgment on the merits, confirmed by the Supreme Court of New York and affirmed by the Appellate Division. *See Chef Chloe, LLC v. Wasser*, 168 A.D. 3d 610 (1st Dep't 2019). In it, Arbitrator Garay expressly decided the claims raised by Defendants. She found that Coscarelli's "endorsement of the vodka brand [was] a violation of her duty of due care," Garay Final Award 39 n.10, but concluded that Defendants "did not establish what monetary harm, if any, was caused thereby" and therefore "award[ed] no damages." *Id*. at 40. Defendants' claim for reimbursement for their legal fees associated with a subpoena served on BCHG's public relation firm was likewise considered by Arbitrator Garay. In the Final Award, Garay addressed Defendants' claims for "costs and expenses of the arbitration and its attorney's fees." *Id*. at 46. Garay ordered a re-allocation of the arbitrator compensation and fees, but "decline[d] to award legal fees to [Defendants]," noting that while Defendants prevailed on "most, but not all of [their] claims[,] . . . the award of fees should be just and equitable." *Id*. at 47. Accordingly, Plaintiffs are entitled to partial summary judgment on Counterclaim Eight to the extent that Defendants seek reimbursement of legal fees.

To avoid preclusion, Defendant argue first that they did not demand reimbursement from Coscarelli until after the arbitration hearings.  Defs.' MSJ Opp'n & Reply 28.  The date of Defendants' demand, however, is of no legal significance.  Instead, the question is whether Defendants raised or could have raised the claim in the arbitration.  Here, Defendants did make a claim for attorneys' fees, which was considered and denied by Arbitrator Garay.  Second, Defendants argue that because Coscarelli was not a party to the Operating Agreement, they could not have brought their claims against her in arbitration.  *Id.*  But, as previously discussed, although Coscarelli was not a party to the Operating Agreement, she consented to the arbitration clause by signing the Agreement and in fact participated in the arbitration.  Finally, Defendants allege that they demanded that Coscarelli reimburse BCHG for the relevant fees on several occasions and that she "never disputed or contested her obligation to pay."  Counterclaims ¶¶ 216-26.  That may be, but Defendants do not cite, nor has the Court found, any precedent establishing that failure to dispute a payment demand, by itself, creates an enforceable obligation to pay.  *Cf. The Texas Maru*, 13 F.2d 538, 541 (2d Cir. 1926) ("A man does not create obligations by even the most formal admission of their validity.").

### 12. Affirmative Defenses Five, Thirteen, Fifteen, Sixteen, and Seventeen

In a single paragraph of their brief, Plaintiffs also move for summary judgment on Defendants' Fifth, Thirteenth, Fifteenth, Sixteenth, and Seventeenth Affirmative Defenses, on the ground that "[t]hey are argumentative and irrelevant ink blots."  Pls.' MSJ Mem. & Opp'n 39-40.  Defendants respond that "[t]his Court's decision on Count 1 will, one way or the other, eliminate the need for the Fifth Affirmative Defense at trial" and that the Thirteenth Affirmative Defense is relevant only to Plaintiffs' claim for tortious interference in Count Four of the Complaint and to claims involving allegations of bad faith.  Defs.' MSJ Opp'n & Reply 29.

They further respond that the Fifteenth and Sixteenth Affirmative Defenses are relevant only to Coscarelli's infringement claims.  *See id.* (stating that "these defenses will be relevant on the amount of damages, if any, Coscarelli may be entitled to if any of Coscarelli's Counts that BCHG has somehow infringed her name survive").  As the Court has now resolved Defendants' motion for summary judgment on Count One, granted summary judgment to Defendants on Count Four, and granted summary judgment to Defendants on all of Plaintiffs' claims that require an element of bad faith and all of her infringement claims, Plaintiffs' motion for summary judgment as to Affirmative Defenses Five, Thirteen, Fifteen, and Sixteen is moot.

With respect to Affirmative Defense Seventeen, which alleges that "Plaintiffs' Complaint has been filed in bad faith and contains allegations which have been presented solely for the purpose of harassing BCHG, ESquared and Haber . . . , all in violation of FRCP Rule 11," Counterclaims ¶ 252, Defendants all but concede that "the time to make a Rule 11 motion with respect to the Complaint [has] passed," Defs.' MSJ Opp'n & Reply 30 n.23.  Defendants fail to establish how Affirmative Defense Seventeen is relevant to any of Plaintiffs' claims, must less identify any evidence that supports it.  In light of that, Plaintiffs' motion for summary judgment on Affirmative Defense Seventeen must be and is granted.

### 13. Declaratory Judgment Claims in Colicchio Action

Finally, Defendants are entitled to summary judgment on Plaintiffs' claims for declaratory relief in the Colicchio Action in light of Plaintiffs' abandonment of the claims.  In their opposition brief, Plaintiffs did not oppose, or even address, Defendants' motion for summary judgment as to those claims.  *See generally* Pls.' MSJ Mem. & Opp'n.  Thus, the Court deems the claims alleged by Plaintiffs in the Colicchio Action abandoned and dismisses them. *See, e.g.*, *Jackson v. Federal Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response

arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citing cases)).

## MOTION FOR PARTIAL JUDGMENT AND DEFAULT JUDGMENT

The Court now turns to Plaintiffs' motions for entry of partial judgment against ESquared, *see* ECF No. 277, and for entry of default judgment as to all claims against BCHG, which Plaintiffs filed after BCHG's counsel withdrew from the case and new counsel did not enter an appearance by the deadline set by the Court, *see* ECF Nos. 275, 291.  The Court held a conference in connection with the latter motion on June 24, 2021, and reserved judgment.  *See* ECF No. 301.

The Court need not dwell long on either motion.  This Opinion and Order has changed the landscape of the litigation in material ways.  That renders the motion for entry of partial judgment stale, if not moot.  And it plainly affects evaluation of whether entry of default judgment is warranted, as the decision whether to enter default judgment requires consideration of whether there is a "meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001).  In light of the Court's analysis and conclusions above, BCHG plainly has "meritorious defenses" as to at least some of Plaintiffs' claims; indeed, many of them fail as a matter of law.  Accordingly, both motions are denied without prejudice to renewal.

## DOCUMENTS FILED UNDER SEAL

One housekeeping matter remains.  Several documents filed in relation to the present motions were filed under seal or in redacted form.  *See* ECF Nos. 149, 151-6, 151-13, 151-14,

151-15, 151-19, 151-20, 151-24.  Over Plaintiffs' objection, *see* ECF No. 145, the Court granted

Defendants' request to maintain the documents under seal or in redacted form on a temporary

basis, pending a decision on the underlying cross-motions, *see* ECF Nos. 153, 154.

"The common law right of public access to judicial documents is firmly rooted in our

nation's history."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see*

*also Brown v. Maxwell*, 929 F.3d 41, 47-52 (2d Cir. 2019).  A presumption of public access

attaches to any "judicial document," defined as "a filed item that is 'relevant to the performance

of the judicial function and useful in the judicial process.'"  *Bernstein v. Bernstein Litowitz*

*Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch*, 435 F.3d at

119).  The presumption is "at its strongest" when "the information at issue forms the basis of the

court's adjudication."  *Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.*, No.

04-CV-5044 (NRB), 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005).  "Conversely, the

presumption of access is at its weakest in documents that have only a negligible role in the

performance of Article III duties."  *Id.* (internal quotation marks omitted).  "[A]fter determining

the weight of the presumption of access, the court must balance competing considerations against

it.  Such countervailing factors include but are not limited to the danger of impairing law

enforcement or judicial efficiency and the privacy interests of those resisting disclosure."  *Mut.*

*Marine Office, Inc. v. Transfercom Ltd.*, No. 08-CV-10367 (PGG), 2009 WL 1025965, at *4

(S.D.N.Y. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Lugosch*, 435 F.3d at 120).

The party seeking to maintain information filed under seal bears "the burden . . .  to demonstrate

that the interests favoring non-access outweigh those favoring access."  *United States v. Amodeo*,

44 F.3d 141, 148 (2d Cir. 1995).

Here, the information that Defendants wish to maintain under seal or redacted consists of (1) "pejorative terms that the Defendants' principals used to refer to [Coscarelli]" and (2) a "valuation of [BCHG] . . . from March 2017."  ECF No. 145, at 2-3.  Defendants maintain that the first category of information is irrelevant and that Plaintiffs "wish to make [it] public" for the purpose of "embarrass[ing] two non-parties."  ECF No. 154, at 1.  They maintain that the second category of information contains "highly confidential financial and business information."  *Id.* With respect to the pejorative terms, the Court concludes that the presumption of public access outweighs the non-parties' interests in protecting information that may be embarrassing, particularly given that the Court expressly discussed Plaintiffs' arguments with respect to the pejorative terms above and the information is either already public or subject to a somewhat stronger presumption of public access.  Moreover, "[c]ourts generally reject negative publicity [or potential embarrassment] as a basis for overcoming the strong presumption of public access to the allegedly prejudicial items."  *Julian v. Metro. Life Ins. Co.*, No. 17-CV-957 (AJN) (BCM), 2020 WL 5913739, at *4 (S.D.N.Y. Oct. 6, 2020) (cleaned up) (citing cases).  By contrast, the interest in maintaining the confidentiality of sensitive commercial information outweighs the interest in public access to information related to BCHG's March 2017 valuation, which has no bearing on the Court's consideration of the instant motions and therefore is subject only to a weak presumption of public access.  *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2014 WL 12772236, at *2 (S.D.N.Y. Nov. 5, 2014) (noting that "[t]he need to protect sensitive commercial information from disclosure to competitors seeking an advantage may constitute" an interest outweighing the presumption of public address).  Accordingly, Plaintiffs' request to unseal documents that include pejorative

terms is granted, while their request to unseal documents that reference the March 2017

valuation of BCHG is denied.

## CONCLUSION

For the foregoing reasons:

- Plaintiffs' motions to confirm the Hochberg Arbitration Awards are GRANTED in their entirety;

- Defendants' cross-motions to vacate the Hochberg Arbitration Awards are DENIED in their entirety;

- Defendants' motion for summary judgment is DENIED with respect to Count One, to the extent it is premised on BCHG's use of the By Chloe trademark in connection with goods or services other than fast casual vegan restaurants (and summary judgment as to liability is GRANTED to Plaintiffs on that portion of the claim) and is otherwise GRANTED;

- Plaintiffs' cross-motion for summary judgment is GRANTED with respect to Counterclaims Seven and Eight and Affirmative Defense Seventeen and DENIED as moot with respect to Affirmative Defenses Five, Thirteen, Fifteen, and Sixteen; and

- Plaintiffs' motions for entry of partial judgment and entry of default judgment are DENIED without prejudice to renewal.

For avoidance of doubt, Appendix A to this Opinion and Order is a table summarizing the status

of the myriad claims in this litigation.  If either side believes that the chart misstates the status of

a claim or counterclaim, it shall confer with the other side and advise the Court by letter **within**

**two weeks from the date of this Opinion and Order.**  By the **same date**, each side shall file a

letter, not to exceed three single-spaced pages, addressing the status of Plaintiffs' Count Six and,

if appropriate, next steps with respect to the claim.  *See supra* note 5.

The Court will hold a telephone conference to discuss the next steps in this long-running

and bitter-contested litigation, including whether there is a way to facilitate a resolution of the

remaining claims without the need for a trial, on **December 15, 2021** at **2:15 p.m.**  To join the

conference, counsel should call the Court's dedicated conference call line at (888) 363-4749 and

use access code 542-1540 followed by the pound (#) key.

In light of the foregoing, the Clerk of Court is directed to terminate ECF Nos. 277, 278, and 291; and to unseal (that is, convert to public view, with no restrictions) ECF Nos. 150, 151-6, 151-13 151-14, 151-15, 151-19, 151-20.

SO ORDERED.

Dated: November 24, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge

# __Appendix A__

For avoidance of doubt, the following table summarizes the status of the myriad claims in this litigation.  As noted in the Opinion and Order, if either side believes that the chart misstates the status of a claim or counterclaim, it shall confer with the other side and advise the Court by letter **within two weeks from the date of the Opinion and Order.**

| Claim | Description | Status |
|---|---|---|
| Plaintiffs' Count One | Breach of contract (NFL Agreement) for use of By Chloe Name | Summary judgment GRANTED in favor of Plaintiffs to the extent based on use of By Chloe mark on products/services other than fast causal vegan restaurants, and otherwise GRANTED in favor of Defendants |
| Plaintiffs' Count Two | Breach of contract (OA) for use of By Chloe name | Addressed in Hochberg Partial Final Award, CONFIRMED |
| Plaintiffs' Count Three | Declaratory judgment regarding Coscarelli's naming rights | Summary Judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Four | Tortious Interference | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Five | Declaratory judgment regarding Coscarelli's ownership of BCHG | Addressed in Hochberg Partial Final Award, CONFIRMED |
| Plaintiffs' Count Six | Breach of contract (OA) for entering into investment agreements with Bain investors | UNCLEAR: Each side to file a letter brief **within two weeks of the date of this Opinion & Order** |
| Plaintiffs' Count Seven | N.Y. Civ. Rights Law §§ 50-51 (right of publicity) | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Eight | 15 U.S.C. § 1125 (Lanham Act unfair competition) | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Nine | N.Y.G.B.L. § 349 (deceptive business practices) | WITHDRAWN, *see* ECF No. 119, at 17 |
| Plaintiffs' Count Ten | N.Y.G.B.L. § 350 (false advertising) | WITHDRAWN, *see* ECF No. 119, at 17 |
| Plaintiffs' Count Eleven | New York State unfair competition | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Twelve | Unjust enrichment | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Thirteen | New York State trademark infringement | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Fourteen | 15 U.S.C. § 1116 (copyright infringement) | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Fifteen | 15 U.S.C. § 1114 (trademark infringement) | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Sixteen | 15 U.S.C. § 1125(d) (cyberpiracy) | Summary judgment GRANTED in favor of Defendants |

| | | |
|---|---|---|
| Plaintiffs' Count Seventeen | Cancellation of registration under 15 U.S.C. § 1052(a) | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Eighteen | Cancellation of registration under 15 U.S.C. §§ 1064, 1052(c) | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Nineteen | Breach of contract (NFL) for failure to pay royalty (contingent) | Summary judgment GRANTED, *sua sponte* in favor of Defendants |
| Defendants' Counterclaim One | Declaratory judgment regarding Coscarelli's naming rights | REMAINS |
| Defendants' Counterclaim Two | 15 U.S.C. § 1114 (trademark infringement) | REMAINS |
| Defendants' Counterclaim Three | 15 U.S.C. § 1125(A) (Lanham Act unfair competition) | REMAINS |
| Defendants' Counterclaim Four | New York State trademark infringement and unfair competition | REMAINS |
| Defendants' Counterclaim Five | Breach of Contract (NFL Agreement) for use of Chloe name | REMAINS |
| Defendants' Counterclaim Six | Declaratory judgment that Coscarelli's purported termination of the NFL Agreement was ineffective | Summary judgment GRANTED *sua sponte* in favor of Defendants |
| Defendants' Counterclaim Seven | Breach of Contract (OA) for reproduction of recipes | Summary judgment GRANTED in favor of Plaintiffs |
| Defendants' Counterclaim Eight | Breach of contract for failure to repay certain loans and legal fees | Summary judgment GRANTED in favor of Plaintiffs to the extent predicated on the Bacardi and Sunshine Sachs legal fees |
| Plaintiffs' Count One in Colicchio Action | Declaratory judgement regarding Chloe's naming rights (trademark) | Summary judgment GRANTED in favor of Defendants |
| Plaintiffs' Count Two in Colicchio Action | Declaratory judgment regarding Chloe's naming rights (NFL Agreement) | Summary judgment GRANTED in favor of Defendants |
| Defendants' Counterclaim One in Colicchio Action | 15 U.S.C. § 1114 (trademark infringement) | Duplicates counterclaim two in lead case; REMAINS |
| Defendants' Counterclaim Two in Colicchio Action | 15 U.S.C. § 1125(A) (Lanham Act unfair competition) | Duplicates counterclaim three in lead case; REMAINS |
| Defendants' Counterclaim Three in Colicchio Action | New York State trademark infringement and unfair competition | Duplicates counterclaim four in lead case; REMAINS |
| Defendants' Counterclaim Four in Colicchio Action | Breach of contract (NFL Agreement) for use of Chloe name | Duplicates counterclaim five in lead case; REMAINS |
| Defendants' Counterclaim Five in Colicchio Action | Declaratory judgment that Coscarelli's purported termination of the NFL Agreement was ineffective | Duplicates counterclaim six in lead case; summary judgment GRANTED *sua sponte* in favor of Defendants |